Case No. 23-2367 (Cons.)

# In the United States Court of Appeals for the Federal Circuit

BACKERTOP LICENSING LLC,

Plaintiff-Below/Appellant,

v.

CANARY CONNECT, INC., et al.,

Defendant-Below/Appellee.

Appeal from the United States District Court
for the District of Delaware
in Case Nos. 22-572 and 22-573, The Hon. Colm F. Connelly

## APPELLANTS' OPENING BRIEF

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
(302) 573-2525
dfinger@delawgroup.com
Attorney for Appellants Backertop
Licensing LLC and Lori LaPray

Dated: December 4, 2023

## <u>CERTIFICATE OF INTEREST</u>

Pursuant to Federal Circuit Rule 47.4, counsel for Appellants certifies that:

(1) The full name of every entity represented in the case by the undersigned: Backertop Licensing LLC and Lori LaPray.

(2) For each entity, the name of every real party in interest, if that entity is not the real party in interest: N/A.

(3) For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock. None.

(4) The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (a) appeared for the entity in the lower tribunal; or (b) are expected to appear for the entity in this court: Alan Richard Silverstein, Connolly Gallagher LLP, Wilmington, Delaware; Mark K. Suri, Hinshaw & Culbertson LLP, Chicago, Illinois, Counsel for Defendant Canary Connect, Inc. Jeremy Douglas Anderson, Fish & Richardson, P.C., Wilmington, Delaware; Ricardo J. Bonilla, Fish & Richardson, P.C., Dallas, Texas, Counsel for Defendant August Home, Inc.

(5) An indication as to whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5: Related appeals in this Court, Nos. 23-2367, 23-2368, 24-1016, and 24-1017, have all been consolidated.

(6) All information required by Federal Rule of Appellate Procedure 26.1(b) and

(c) that identifies organizational victims in criminal cases and debtors and trustees

in bankruptcy cases: N/A

Dated: December 4, 2023

*/s/ David L. Finger*

David L. Finger (ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
(302) 573-2525
dfinger@delawgroup.com
Attorney for Appellants Backertop
Licensing and Lori LaPray

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................ iii

TABLE OF AUTHORITIES ......................................................... iv

JURISDICTIONAL STATEMENT............................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................... 2

STATEMENT OF THE CASE ...................................................... 2

SUMMARY OF ARGUMENT ..................................................... 15

ARGUMENT.............................................................................. 16

   I.  THE DISTRICT COURT'S ORDER COMPELLING A NON-PARTY TO APPEAR BEYOND THE GEOGRAPHIC LIMITATIONS OF FEDERAL RULE OF CIVIL PROCEDURE 45(c) TO TESTIFY WAS IN EXCESS OF ITS JURISDICTION AND SO CANNOT SERVE AS THE BASIS FOR A FINDING OF CONTEMPT ...................................................................... 16

      A.  SCOPE OF REVIEW ................................................... 16

      B.  THE UNDERLYING ORDER WAS IN EXCESS OF THE DISTRICT COURT'S JURISDICTION ..................................... 17

  II.  THE APPEAL BEFORE THIS COURT IS PROPER. ....................... 21

      A.  APPELLANTS DID NOT WAIVE THIS ARGUMENT ............. 21

      B.  THE MERITS OF THE UNDERLYING ORDER COULD BE ARGUED IN THE CONTEMPT PROCEEDING ....................... 25

CONCLUSION........................................................................... 27

CERTIFICATE OF COMPLIANCE ............................................. 28

# TABLE OF AUTHORITIES

CASES:

*Alexander v. United States*, 201 U.S. 117 (1906) ....................................................22

*Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 3182084 (D. Del. May 1, 2023) ....................................................................................9, 10

*Backertop Licensing LLC v. Canary Connect, Inc.,* 2023 WL 3736766 (D. Del. May 31, 2023), *recons. denied*, 2023 WL 4420467 (D. Del. July 10, 2023)......................................................................................................12, 22

*Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 4420467 (D. Del. July 10, 2023)........................................................15, 17, 18, 22, 23

*Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 5348827 (D. Del. Aug. 21, 2023) ....................................................................................15

*Backertop Licensing LLC v. Canary Connect, Inc.,* 2023 WL 6442270 (D. Del. Oct. 3, 2023) .....................................................................................21

*Bagot v. Ashcroft*, 398 F.3d 252 (3d Cir. 2005)......................................................25

*Bank of Nova Scotia v. U.S.*, 487 U.S. 250 (1988) ..........................................18, 19

*Bessette v. W.B. Conkey Co.*, 194 U.S. 324 (1904) ....................................................1

*Brumfiel v. U.S. Bank, N.A.*, 2014 WL 7005253 (D. Colo. Dec. 11, 2014) .............25

*Carlisle v. U.S.,* 517 U.S. 416 (1996) .......................................................................18

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)..................................................18, 19

*Cobbledick v. United States*, 309 U.S. 323 (1940) ............................................22, 26

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) ...................................................................1

*Dietz v. Bouldin*, 579 U.S. 40 (2016) .......................................................................19

*Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283 (Fed. Cir. 2016) ...............26

*G2 Database Marketing, Inc. v. Stein*, 2020 WL 6484788 (S.D. Iowa Oct. 15, 2020)...............................................................................................................26

*Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005)........................................24

*Harris v. City of Philadelphia*, 47 F.3d 1311 (3rd Cir. 1995) ..................................26

*Hicks v. Miranda,* 422 U.S. 332 (1975) ....................................................................25

*Hormel v. Helvering*, 312 U.S. 552 (1941)...............................................................25

iv

*In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722 (9th Cir. 1989)......................................................................................24

*In re Flat Glass Antitrust Litig.*, 288 F.3d 83 (3d Cir. 2002) ...................................26

*In re: Nimitz Technologies LLC,* 2022 WL 17494845 (Fed. Cir. Dec. 8, 2022)………………… .........................................................8, 10, 11, 14, 2

*Independent Federation of Flight Attendants v. Cooper*, 134 F.3d 917 (8th Cir. 1998)........................................................................................1

*Langevine v. District of Columbia*, 106 F.3d 1018 (D.C. App. 1997) ....................24

*Lassiter v. City of Philadelphia*, 716 F.3d 53 (3rd Cir. 2013)................................17

*Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO*, 545 F.2d 1336 (3rd Cir. 1976) .................................................................................20

*Maggio v. Zeitz*, 333 U.S. 56 (1940) ................................................................25, 26

*Marshak v. Treadwell,* 595 F.3d 478 (3d Cir. 2009) ..............................................26

*McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991), *overruled on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).......................................19

*Micro Motion Inc. v. Exac Corp.,* 876 F.2d 1574 (Fed. Cir. 1989).........................22

*Miller v. U.S.*, 868 F.2d 236 (7th Cir. 1989) .........................................................25

*Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893 (8th Cir. 2010).............................24

*Nisus Corp. v. Perma-Chink Systems, Inc.*, 497 F.3d 1316 (Fed. Cir. 2007)............1

*Page v. Schweiker*, 786 F.2d 150 (3rd Cir. 1986) .................................................24

*Palmer v. Ellsworth,* 1992 WL 498010, *reported at* 12 F.3d 1107 (9th Cir. 1993)........................................................................................17

*Racher v. Lusk*, 2016 WL 67799 (W.D. Okla. Jan. 5, 2016)...................................19

*Riff v. Police Chief Elmer Clawges*, 158 F.R.D. 357, (E.D. Pa. 1994) ...................19

*Texas v. Department of Labor*, 929 F.3d 205 (5th Cir. 2019) ...................................1

*U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72 (1988) ...........................................................................................1

*U.S. v. Cutler*, 58 F.3d 825 (2nd Cir.1995) ..........................................................24

*U.S. v. Grooms*, 6 Fed. Appx 377 (7th Cir. 2001) ..................................................17

*U.S. v. Horn*, 29 F.3d 754 (1st Cir. 1994)............................................................20

*U.S. v. Ryan*, 402 U.S. 530 (1971) ................................................................22, 26

*United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481 (3rd Cir. 2017)......23

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1947)................20, 23

*Vakalis v. Shawmut Corp.*, 925 F.2d 34 (1st Cir. 1991) ..........................................24

*Walker v. Birmingham*, 388 U.S. 307 (1967)....................................................24, 25

*Wilson v. Principi*, 391 F.3d 1203 (Fed. Cir. 2004) ..................................................25

*Wolfe v. Safecard Services, Inc.,* 873 F.Supp. 648 (S.D. Fla. 1995) .......................26

*Yancheng Baolong Biochemical Products Co., Ltd. v. U.S.*, 406 F.3d 1377 (Fed. Cir. 2005) .........................................................................................16

## STATUTES AND RULES:

Fed. R. Civ. P. 7.1...................................................................................................3, 8

Fed. R. Civ. P. 41(a)(1)(A)(i) ......................................................................................4

Fed. R. Civ. P. 41(a)(1)(A)(ii) .....................................................................................9

Fed. R. Civ. P. 45 ...............................................................................................14, 17

Fed. R. Civ. P. 45(c) ..........................................................................2, 15, 16, 17, 19

Fed. R. Civ. P. 45(c)(1)(B)(i) ............................................................................12, 17, 22

Fed. R. Crim. P. 52(a)................................................................................................18

## OTHER AUTHORITIES:

https://assignment.uspto.gov/patent/index.html#/patent/search ................................2

# JURISDICTIONAL STATEMENT

Appellants Lori LaPray ("LaPray") and Backertop Licensing LLC ("Backertop") (collectively, "Appellants") filed a Notice of Appeal of the Contempt Order in both cases on August 23, 2023, which were docketed on October 5, 2023. On August 31, 2023, Appellants filed a Notice of Appeal of the underlying Order compelling her appearance in both cases, which was docketed on September 8, 2023. All four cases were consolidated on October 18, 2023.

As a non-party who has been found to be in contempt, LaPray is entitled to appeal as of right. *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76-77 (1988) ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned. The order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action"); *Devlin v. Scardelletti*, 536 U.S. 1, 8 (2002); *Nisus Corp. v. Perma-Chink Systems, Inc.*, 497 F.3d 1316, 1319 (Fed. Cir. 2007). Such a finding of contempt is deemed to be a final order as to the contemnor for purposes of appellate jurisdiction. *See Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 338 (1904); *Nisus Corp.*, 497 F.3d at 1319. *See also Texas v. Department of Labor*, 929 F.3d 205, 209 n.9 (5th Cir. 2019); *Independent Federation of Flight Attendants v. Cooper*, 134 F.3d 917, 919 (8th Cir. 1998).

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

1. Does the issuance of an Order compelling a non-party to come from Texas to Delaware to testify at a post-dismissal hearing violate that non-party's rights under Federal Rule of Civil Procedure 45(c)?

2. Does Federal Rule of Civil Procedure 45(c) prohibit a court from utilizing its inherent authority to compel a non-party who is a resident of Texas to come to Delaware to testify in a post-dismissal hearing?

3. Did the District Court err in holding a non-party who resides in Texas in contempt of court for disregarding an Order requiring that non-party to come to Delaware to testify in a post-dismissal hearing?

## **STATEMENT OF THE CASE**

Backertop in the lawful assignee of U.S. Patents Nos. 9,332,385; 9,654,617; 10,477,011; and 10,728,382 (the "Backertop Patents").[1] On April 28, 2022, Backertop filed actions for infringement of those patents against Canary Connect, Inc. ("Canary Connect") (22-cv-00572-CFC ("572")) and August Home, Inc. ("August Home") (22-cv-00573-CFC ("573")) in the United States District Court for the District of Delaware.

---

[1] https://assignment.uspto.gov/patent/index.html#/patent/search.

Ten days prior, the District Court issued two standing orders. The first Standing Order is a "Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1" and reads as follows:

> At Wilmington on this Eighteenth day of April in 2022, it is HEREBY ORDERED in all cases assigned to Judge Connolly where a party is a nongovernmental joint venture, limited liability corporation, partnership, or limited liability partnership, that the party must include in its disclosure statement filed pursuant to Federal Rule of Civil Procedure 7.1 the name of every owner, member and partner of the party, proceeding up the chain of ownership until the name of every individual and corporation with a direct or indirect interest in the party has been identified.

(Appx37).

The second order is entitled "Standing Order Regarding Third Party Litigation Funding Arrangements" and requires disclosure of third-party funders "where a party has made arrangements to receive from a person or entity that is not a party (a 'Third-Party Funder') funding for some or all of the party's attorney fees and/or expenses to litigate this action on a non-recourse basis in exchange for (1) a financial interest that is contingent upon the results of the litigation or (2) a non-monetary result that is not in the nature of a personal loan, bank loan, or insurance." (Appx38-39).

Backertop filed its 7.1 statements upon the filing of these cases. (Appx 58, 59). On September 2, 2022, Backertop amended its 7.1 disclosure statements to disclose LaPray as the owner of Backertop. (Appx60-61).

Regarding the standing order on third-party funding, Backertop receives third-party funding on a recourse basis, not on a non-recourse basis. (Appx66-70). Accordingly, this Standing Order did not require any action from Backertop.

On September 12, 2022, the District Court *sua sponte* issued a Memorandum Order setting a hearing to determine if Appellant had "complied with the Court's standing order regarding third-party litigation funding," ordering Lori LaPray ("LaPray"), the owner of Appellant, to attend the hearing to be subject to questioning by the Court. (Appx 64-65).

On September 14, 2022, prior to the filing of an answer or motion for summary judgment, Appellant filed Notices of Dismissal under Fed. R. Civ. P. Rule 41(a)(1)(A)(i) in each of the cases, dismissing the cases without prejudice. (Appx62-63).

On October 5, 2022, Appellant Backertop filed a letter to the Honorable Colm F. Connolly in both cases explaining that it "does not receive from a person or entity that is not a party funding for some or all of the party's attorneys' fees and/or expense[s] to litigate this action on a non-recourse basis. All funding received by Plaintiff for this litigation, including the advance of any expenses, is provided on a recourse basis." (Appx66-67). In the letter, Appellant sought clarification and guidance from the Court so it can bring any additional documents or evidence to the evidentiary hearing, so it may be fully responsive and ensure that the requested

information is available to the District Court. (*Id.*). The District Court did not respond to Appellant's disclosure regarding there being no non-recourse funding, did not respond to Backertop's request for clarification, did not cancel the evidentiary hearing, and did not terminate the already dismissed cases.

LaPray flew to Delaware, attended the evidentiary hearing on November 10, 2022, and testified, without objection, in a good faith attempt to satisfy the Court's concerns. (Appx70-123).

Although the stated purpose for the hearing was to determine whether Appellant had complied with the third-party funding order, the District Court never questioned LaPray as to whether Backertop received funding on a recourse or non-recourse basis. The District Court also never questioned Backertop's counsel about whether Backertop received funding on a recourse or non-recourse basis, but only asked counsel to confirm his understanding of the difference between recourse and non-recourse funding. (Appx74-80). LaPray confirmed that Backertop would be responsible for costs and liabilities. (Appx99-100).

Despite the Order for the hearing stating that the purpose of the hearing was to investigate third-party litigation funding, most of the District Court's questioning of LaPray had nothing to do with litigation funding. Instead, the District Court's questions covered topics such as LaPray's employer, her role at work, her husband, her husband's line of work, how she became owner of Backertop, the formation of

Backertop, communications with Mavexar, the consulting agreement between Backertop and Mavexar, the patent purchase agreement Backertop entered into, assets owned by Backertop, communications with Backertop's counsel, how costs and fees are covered in the litigation, liabilities of Backertop, financial information relating to Backertop, parties having a financial interest associated with Backertop settlements, Backertop's address information, the complaints in the lawsuit, details regarding her travel arrangements to come to Delaware for the hearing, and communications regarding preparing for the hearing itself. (Appx81-116).

LaPray testified that her husband had been an independent contractor for Mavexar, and he presented her with an opportunity to own assets, and she agreed. (Appx83). LaPray testified that she is the 100% sole owner of Backertop (Appx at 102) and the final decisionmaker regarding all settlement agreements into which Backertop enters and all lawsuits filed on behalf of Backertop. (Appx91). LaPray testified that she read and signed the Patent Purchase Agreement on behalf of Backertop. (Appx99).

At the hearing, the District Court stated to Backertop's counsel that it was "not going to be asking for privileged information…, but if you have any concerns you may stand up." (Appx80). Counsel for Backertop later objected to a line of questioning directed to LaPray's preparation for the hearing itself on the grounds of the common interest privilege, which the District Court overruled. (Appx112). At

one point during the District Court's questioning, the Judge commented to LaPray "You don't need to look at your lawyers," and declined a request from Backertop's counsel to address the Court on the point. (Appx97).

At the conclusion of the hearing, the District Court did not voice any concern that LaPray's testimony or any of the documents submitted to the Court during the hearing evidenced any third-party funding for some or all of the party's attorney fees and/or expenses to litigate this action on a non-recourse basis, which was the ostensible issue for which the hearing was ordered. Instead, the Court lamented a dissatisfaction raised in "parallel proceedings." (Appx122).

While being critical of what it asserted was an abuse of the judicial system, the District Court did not specifically identify that concern or its applicability to the action before it, and, more importantly, did not cite to any laws or rules that the Court thought might have been breached by Backertop.

On March 31, 2023, the Court entered a Memorandum Order ("the Production Order"). This Production Order began as follows:

> [w]hereas the testimony of witnesses and representations of counsel at the November 10, 2022 hearing and other conduct by counsel and entities in this case and other cases in this Court give rise to concerns about the accuracy of statements in filings made by Plaintiff Backertop Licensing LLC (Backertop), whether counsel complied with the Rules of Professional Conduct and orders of this Court; whether there are real parties in interest such as Mavexar and IP Edge and have been hidden from the Court and Defendants, whether those real parties in interest perpetrated a fraud on the court by fraudulently conveying to a shell LLC patents asserted in this court and filing fictitious patent

assignments with the United States Patent and Trademark Office designed to shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court, see Nimitz Techs. LLC v. CNET Media, Inc., No. 21-1247, D.I. 32.

(Appx124-29).

The Production Order requested documents including those which Backertop claimed were subject to the attorney-client privilege, attorney work product doctrine, and common interest privileges. The Production Order requested documents that were beyond the scope of the District Court's Standing Orders regarding 7.1 disclosure statements and third-party funding, including attorney retention agreements, the formation of Backertop, the acquisition of patents by Backertop, communications regarding risk and liability, the settlement of the cases, the dismissal of the cases, communications regarding the November 10, 2022 hearing, including travel expenses and arrangements, monthly statements of bank accounts, documents regarding Backertop's address information, and a request for a declaration regarding assets owned by Backertop on various dates. (*Id.*).

On April 3, 2023, Backertop filed a motion to set aside the Production Order. (D.I. 26; 573, D.I. 29). Backertop argued that the cases were dismissed, and, thus, the Court lacked jurisdiction to issue the Production Order; that the Court has not articulated any recognized collateral issues that support issuance and enforcement of the Production Order; and that the Order seeks information that is protected by the Attorney-Client Privilege, namely that the Court only has authority to order the

8

production of privileged documents for *in camera* inspection for the purpose of determining privilege, but not for use in its own investigation, as the Production Order requires.

Although both cases were voluntarily dismissed in September 2022, on April 21, 2023, Backertop and Appellee Canary Connect filed a joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (Appx130-31). Later, on June 20, 2023, Backertop and Appellee August Home filed a joint stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (Appx283-84).

On April 28, 2023, Backertop filed a Motion to Stay Compliance with the Order Pending Ruling on Plaintiff's Motion to Set Aside the Court's March 31, 2023, Order. (572, D.I. 30; 573, D.I. 32). On May 1, 2023, the District Court denied the Motion to Set Aside the Court's March 31, 2023, Order, mooted the Motion to stay Compliance, and required compliance with the Production Order no later than May 9, 2023. *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 3182084 (D. Del. May 1, 2023) (Appx1-8 ("May Order")). In this May Order, the District Court noted that counsel for Backertop were seeking to withdraw from these actions and set an in-person hearing on the motions to withdraw for June 8, 2023. *Id.* WL Op. at *7 (Appx 6). The District Court ordered counsel, as well as LaPray (again), to attend the hearing in person. *Id.* (Appx6-8). Additionally, the District Court gave reasons for denying the motion to set aside, but notably did not address the argument

that the Court lacks the authority to order privileged documents to be produced for use in its own investigation and did not rule whether a crime/fraud exception applied to justify the production. *Id.* WL Op. at *4-7 (Appx4-6).

On May 9, 2023, Backertop delivered to the Court all responsive documents within its custody, control, and possession in compliance with the District Court's Production Order, as amended on May 1, 2023. (Appx132-33). Following the Federal Circuit guidance in its denial of the *Nimitz* petition for writ of mandamus, In re: Nimitz Technologies LLC, 2022 WL 17494845 (Fed. Cir. Dec. 8, 2022), and the District Court's representation in the *Nimitz* Order (which was incorporated by the Court in the Backertop cases) that it would keep privileged documents *in camera*, the cover pleading for this production stated, in part: "Some documents are marked 'Confidential,' others 'Confidential Attorney-Client Privilege,' and/or others are marked 'Confidential - Common Interest Attorney Client Privilege.' Backertop respectfully requests that all such documents and their content remain *in camera* and not be made public."

At the same time, Backertop filed a Notice of Unavailability of Ms. Lori LaPray Regarding the June 8, 2023, Hearing and Request to Appear Telephonically (Appx134-39, the "Notice"). In the Notice and attached sworn declaration, she explained that, due to her work, family obligations, and pre-set travel that she cannot attend the June 8, 2023, hearing, nor can she attend a hearing in Delaware at any

point in the foreseeable future. Additionally, she respectfully asked the Court to allow her to appear telephonically. She also noted, for the record, that her position concerning the withdrawal motions is "simply that [Backertop] cannot be left without counsel to represent Backertop in these matters. Backertop needs to have an attorney who can provide counsel, appear at hearings, and file documents. Other than this, Backertop has no opinion on the respective motions to withdraw." (Appx138-39).

On May 31, 2023, the District Court issued an Order in response to Backertop's May 9, 2023, Notice excusing LaPray from attending the June 8, 2023 hearing and denying her request to appear telephonically, and set an additional hearing for July 20, 2023. The District Court noted that now the hearing would be not only concerning withdrawal, but also regarding Backertop's May 9, 2023, document production. The District Court again ordered that LaPray appear in person in Delaware. The Court noted that if she is unavailable to travel to Delaware to appear on July 20, 2023, that "she needs to submit to the Court no later than June 7, 2023 affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates in July for a hearing." Additionally, the Court took the unusual step of sending a copy of that order, an order from the *Nimitz Technologies LLC v. CNET Media, Inc*. case and an order issued in the Backertop cases on May 1, 2023, to her employer, Mr. Ronald L. Holmes. The Court stated,

"[d]oing so will ensure that Ms. LaPray receives notice of this Memorandum Order; and I suspect that Mr. Holmes will explain to Ms. LaPray that, contrary to the assertions in her declaration, his firm does not in fact 'require [her] physical presence' somewhere other than Delaware 'throughout the entire summer' such that she cannot a hearing before this Court." *Backertop Licensing LLC v. Canary Connect, Inc.,* 2023 WL 3736766 (D. Del. May 31, 2023) (Appx9-11).

On June 7, 2023, Backertop filed its Motion for Reconsideration of the Court's May 31, 2023, Order and Leave for Ms. LaPray to Appear at the Court's July 20, 2023, Hearing via Videoconference. (Appx140-172). The Motion argued that the District Court lacks authority to order LaPray's in-person appearance as the District Court must issue a subpoena to compel her attendance, and that under the "party officer" rule of Federal Rule of Civil Procedure 45(c)(1)(B)(i), can only compel her physical attendance to a hearing in the State of Texas. It further argued that in any event, LaPray is unavailable to attend the July 20 hearing in person and is unable to travel to Delaware; that she already testified in person before the District Court; that the District Court permits telephone and videoconference hearings and LaPray is available to appear by videoconference; that the District Court has made a general accusation of "fraud" without any specificity; and that the District Court contacted a non-party, LaPray's employer, in the hopes of the employer influencing her to attend a hearing in Delaware that she cannot attend in person. LaPray also submitted

a sworn declaration in support of this Motion, notifying the Court that its unauthorized communication with her employer has disrupted her place of employment, and caused her panic and fear that she could lose her job. She further noted concern that Judge Connolly would continue communication with her employer in a manner that would jeopardize her employment and potential employability, and that she is living in a sense of fear and intimidation by the District Court. (Appx168-72).

On June 8, 2023, the District Court held a hearing open to the public for the stated purpose of considering the motions to withdraw. (Appx173-282). After a brief opening about withdrawal, the Court made it clear that the remainder of the hearing would be for a different purpose: "And what I'm going to focus on this morning, since I have you all here, and Ms. LaPray isn't, issues of attorney conduct that clearly fall within the Court's inherent authority. And then I also need to explore the inadequacy, or the, I should say, the apparent inadequacy of the production. And I don't expect you to be able to answer all those questions today, but at least you can explore it further when you leave here." (Appx189). The Court then proceeded to focus the remainder of the hearing on topics that were never noticed to Backertop, including topics covering Backertop's document production.

The District Court discussed at length documents marked by Backertop as privileged. The District Court stated "If you're going to say any of these are

privileged -- and I have to say, reading them, I don't see how anything in here is privileged -- but if you're going to do that, you need to identify them, you need to have a log that goes through each and every document and explains why you believe it's privileged, who the participants are, and cite case law and explain why you think these are privileged." (Appx32).

Instead of giving Appellant the opportunity to do so, however, it began reading aloud excerpts from documents marked as privileged. The District Court did not keep them *in camera* as it stated it would do in the *Nimitz* order (which the Court incorporated in *Backertop*) and as to which Backertop followed the same outlined procedure. (Appx192-93, 197, 200, 202-03, 205-09, 213-16, 219, 236-37, 242, 244-45, 252, 265).

On June 12, 2023, the Court made the transcript from the June 8, 2023, hearing available to the public. (572, D.I. 41; 573, D.I. 41). On June 14, 2023, Backertop filed a motion to seal the June 8, 2023, transcript. (572, D.I. 42; 573, D.I. 45). On June 20, 2023, the District Court denied the motion as moot as it had already made the transcript public at a public terminal in the Courthouse on June 12, 2023, and Backertop's counsel did not ask during the hearing for an opportunity to redact the transcript. (572, D.I. 43; 573, D.I. 43).

On July 10, 2023, the District Court denied Backertop's Motion for Reconsideration, relying solely on its inherent authority to order LaPray to appear

in person to Delaware, and holding that Fed. R. Civ. P. 45 does not apply to a District Court judge issuing *sua sponte* an Order to compel a person's attendance in court. *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 4420467 (D. Del. July 10, 2023) (Appx12-23). The District Court also denied LaPray's request to appear via videoconference, citing to the Court's need to be in the best position to assess her credibility, and discounting her childcare and financial burdens associated with traveling to Delaware, and ordered her to appear in Delaware. *Id.* WL Op. at *4-6.

As the distance between Delaware and Texas is beyond the geographic limits for compelling a witness to travel set forth in Federal Rule of Civil Procedure 45(c), LaPray declined. On July 12, 2023, LaPray filed in both cases a Notice of Objection and Non-Participation in Judicial Inquisition in which she stated her objection to the Order for her to appear in Delaware and advised that she would not appear as Ordered. (572, D.I. 48; D.I. 573, D.I. 52).

Consequently, on August 23, 2023, the District Court issued an Opinion and Order holding her in civil contempt and issued a sanction of $200 per day until she appears. *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 5348827 (D. Del. Aug. 21, 2023) ("Contempt Order") (Appx24-33).

This appeal followed.

## SUMMARY OF ARGUMENT

Federal Rule of Civil Procedure 45(c) provides that an officer of an entity-party can only be compelled to attend a court proceeding in the State where the officer resides, works, or does substantial business. The United States Supreme Court has stated on several occasions that the procedural rules create a limitation on a court's inherent powers. Thus, the District Court's Order requiring that LaPray travel to Delaware from Texas to testify is void on its face and cannot provide the basis for a finding of contempt.

LaPray was entitled to raise the validity of the underlying Order at the contempt proceeding, as it was an unappealable interlocutory order, the collateral bar doctrine does not apply to civil proceedings, and the Order is transparently invalid. Moreover, this Court has the power to address pure questions of law to prevent injustice.

## ARGUMENT

**I.     THE DISTRICT COURT'S ORDER COMPELLING A NON-PARTY TO APPEAR BEYOND THE GEOGRAPHIC LIMITATIONS OF FEDERAL RULE OF CIVIL PROCEDURE 45(c) TO TESTIFY WAS IN EXCESS OF ITS JURISDICTION AND SO CANNOT SERVE AS THE BASIS FOR A FINDING OF CONTEMPT.**

### A.   SCOPE OF REVIEW.

In an appeal from a finding of contempt, questions of law are reviewed *de novo. Yancheng Baolong Biochemical Products Co., Ltd. v. U.S.*, 406 F.3d 1377,

1380 (Fed. Cir. 2005). Whether the District Court exceeded its authority by issuing an Order requiring a non-party to travel from Texas to Delaware to appear before it, and then use it as a basis for finding LaPray in contempt, is a question of law. *See Lassiter v. City of Philadelphia*, 716 F.3d 53, 55 n.1 (3rd Cir. 2013) ("Questions of law—including the scope of a district court's authority under the Federal Rules of Civil Procedure—are subject to plenary review").

## B. THE UNDERLYING ORDER WAS IN EXCESS OF THE DISTRICT COURT'S JURISDICTION.

A non-party witness that is an officer of an entity can be compelled to appear at a hearing only "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(B)(1). It is undisputed that LaPray does not reside in, is not employed in and does not regularly transact business in Delaware. As such, she is not subject to being compelled to come to Delaware to testify.

The District Court initially distinguished Rule 45 on the ground that it refers to subpoenas, and not to court orders. *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 4420467 at *2-3 (D. Del. July 10, 2023). This, however, is a distinction without a difference, as subpoenas are court orders. *U.S. v. Grooms*, 6 Fed. Appx 377, 381 (7th Cir. 2001); *Palmer v, Ellsworth,* 1992 WL 498010 at *5, *reported at* 12 F.3d 1107 (9th Cir. 1993) (TABLE).

The District Court then stated that in any event it was not relying on Rule 45(c) as the authority for its Order. Instead, the District Court invoked its inherent authority to compel LaPray to travel from Texas to Delaware. *Backertop Licensing LLC*, 2023 WL 4420467 at *2-3. However, that pronouncement directly contradicts decisions of the United States Supreme Court.

In *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 255 (1988), the Supreme Court reasoned that "[i]n the exercise of its supervisory authority, a federal court 'may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress.' Nevertheless, it is well established that '[e]ven a sensible and efficient use of the supervisory power ... is invalid if it conflicts with constitutional or statutory provisions.' To allow otherwise 'would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing.'" *Id.* at 254 (citations omitted). Based on this reasoning, the Supreme Court ruled that "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)." *Id.*

In a subsequent case, the Supreme Court reiterated that "[w]hatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle v. U.S.,* 517 U.S. 416, 426 (1996).

18

Although *Bank of Nova Scotia* and *Carlisle* dealt with the Federal Rules of Criminal Procedure, the Supreme Court has stated the rule in civil cases. In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court described the holding in *Bank of Nova Scotia* as "a district court could not rely on its supervisory power as a means of circumventing the clear mandate of a procedural rule." *Id.* at 52.

Similarly, in *Dietz v. Bouldin*, 579 U.S. 40 (2016), the Court stated again that "[t]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id.* at 45. As in *Chambers*, the Supreme Court referred to "a rule" without restriction or limitation.

Lower courts have also recognized that the federal rules create a limitation on the use of a court's inherent power such that the courts cannot compel a witness to appear where the witness is outside the court's subpoena power. *E.g., McGill v. Duckworth*, 944 F.2d 344, 354 (7th Cir. 1991), *overruled on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994); *Racher v. Lusk*, 2016 WL 67799 (W.D. Okla. Jan. 5, 2016); *Riff v. Police Chief Elmer Clawges*, 158 F.R.D. 357, 358 (E.D. Pa. 1994).

In its Memorandum Opinion denying the Motion to Dismiss Contempt Proceedings, the District Court made no reference to any of those decisions. Instead, the Court made a policy judgment that:

> her interpretation of the rule would effectively strip a district court of its ability to exercise its inherent powers over corporate parties that are owned and operated by a single individual who does not reside within the state of the court's location or within 100 miles of that location. Rule 45(c) in no way limits a court's inherent power to issue an order compelling the attendance of a party's principals at a hearing.

*Stay Opinion,* WL Op. at *1. The District Court added "Backertop's reading of Rule 45 is not only at odds with the Rule's text, but in countless cases it would also severely hamper if not nullify a court's inherent powers." *Id*. WL Op. at *2.

However, the "policy" decision limiting inherent authority was made by Congress in adopting Rules of Procedure, and by the Supreme Court in determining the effect of those rules on a court's inherent power. "Congress has wide-ranging authority to limit supervisory powers generally." *U.S. v. Horn*, 29 F.3d 754, 767 (1st Cir. 1994). Any issue with the scope of that authority is within the purview of the Legislative Branch.

The District Court, with full knowledge of the Supreme Court decisions, decided that its goals transcended the will of Congress and the Supreme Court. The District Court's interpretation and application of its inherent power is clearly erroneous and transparently invalid. As the Order underlying the civil contempt proceeding is void, so too the finding of contempt is void. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 295 (1947); *Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO*, 545 F.2d 1336, 1343 (3rd Cir. 1976) ("The general rule is that whether a contempt judgment survives the avoidance of an

20

underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls").

## II.   THE APPEAL BEFORE THIS COURT IS PROPER.

### A.   APPELLANTS DID NOT WAIVE THIS ARGUMENT.

The District Court, in denying LaPray's request for a stay pending appeal, first said that the argument set forth above was waived because it was raised for the first time in a Motion for Reconsideration. *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 6442270 at *1 (D. Del. Oct. 3, 2023) ("Stay Opinion") (Appx34-36). After the District Court issued an Order requiring LaPray to attend a hearing scheduled on a motion to withdraw by counsel for Backertop, LaPray submitted a Notice of Unavailability explaining she could not come to Delaware on the day requested by the Court because of work, family and pre-set travel plans she could not come to Delaware and requested that she be allowed to testify telephonically. On May 31, 2023, the Court issued an Order in response to Backertop's May 9, 2023, Notice, excusing Ms. LaPray from attending the June 8, 2023 denying her request to appear telephonically and setting a new hearing date of July 20, 2023. This time, the Court noted that the hearing would be not only concerning withdrawal, but also regarding Backertop's May 9, 2023, document production. The Court again ordered that she appear in person in Delaware. The Court noted that if she is unavailable to travel to Delaware to appear on July 20, 2023, that "she needs to submit to the Court

no later than June 7, 2023 affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates in July for a hearing." Additionally, the Court noted that it would (and in fact did) send a copy of that Order, as well as an Order from another case, *Nimitz Technologies LLC v. CNET Media, Inc*. and an Order issued in the *Backertop* cases on May 1, 2023, to her employer, Mr. Ronald L. Holmes, in the hope that Mr. Holmes would assist in compelling LaPray to attend. *Backertop Licensing LLC v. Canary Connect, Inc.,* 2023 WL 3736766 (D. Del. May 31, 2023), *recons. denied*, 2023 WL 4420467 (D. Del. July 10, 2023) (Appx9-11, Appx12-23).

That Order was interlocutory and non-appealable. *Alexander v. United States*, 201 U.S. 117, 121-22 (1906); *Micro Motion Inc. v. Exac Corp.,* 876 F.2d 1574, 1576-78 (Fed. Cir. 1989) (collecting authorities). Therefore, the issue of the validity of the Order could be raised at the contempt proceeding. *U.S. v. Ryan*, 402 U.S. 530, 532-33 (1971); *Cobbledick v. United States*, 309 U.S. 323, 326 (1940).

On June 7, 2023, Backertop filed its Motion for Reconsideration of the Court's May 31, 2023, Order and Leave for Ms. LaPray to Appear at the Court's July 20, 2023, Hearing via Videoconference. The Motion argued that (i) the Court lacked authority to order Ms. LaPray's in-person appearance as the Court must issue a subpoena to compel her attendance, and (ii) under the "party officer" rule

of Fed. R. Civ. P. 45(c)(1)(B)(i), the Court could only compel her physical attendance to a hearing in the State of Texas. Backertop further argued that in any event LaPray was unavailable to attend the July 20 hearing in person and is unable to travel to Delaware; that she has already testified in-person before the Court; that the Court permits telephone and videoconference hearings and Ms. LaPray is available to appear by videoconference; and that the Court contacted a non-party, Ms. LaPray's employer, in the hopes of the employer influencing her to attend a hearing in Delaware that she cannot attend in person. Ms. LaPray also submitted a sworn declaration in support of this Motion, notifying the District Court that its unauthorized communication with her employer has disrupted her place of employment, and caused her panic and fear that she could lose her job. She further noted concern that Judge Connolly would continue communication with her employer in a manner that would jeopardize her employment and potential employability, and that she is living in a sense of fear and intimidation by the court. The District Court rejected those arguments. *Backertop Licensing LLC v. Canary Connect, Inc.,* 2023 WL 4420467 (D. Del. July 10, 2023) (Appx12-23).

Even if, under the circumstances, raising the issue of mandatory Supreme Court authority can be and was waived for that purpose, that did not preclude raising the issue later at the contempt proceeding. Interlocutory orders do not constitute the

23

law of the case and may be raised at a later stage. *United States v. United Mine Workers*, 330 U.S. 258, 289-95 (1947) (contempt); *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3rd Cir. 2017); *Murphy v. FedEx Nat. LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010); *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005); *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. App. 1997). As such, it was proper for LaPray to raise the issue as part of the contempt proceeding, and an abuse of discretion for the District Court judge to ignore or reject mandatory precedent from the U.S. Supreme Court.

Further, the "collateral bar" doctrine, which prohibits reconsideration of the underlying Order in a contempt proceeding, applies only in criminal contempt cases, not civil contempt cases. *Page v. Schweiker*, 786 F.2d 150, 154 (3rd Cir. 1986); *In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 726 n.11 (9th Cir. 1989).

Even if this Court were to disagree, this Court can consider the Order under the doctrine of "transparent invalidity," which permits an appellate court to consider the underlying order in a contempt proceeding, notwithstanding the fact that there was no valid challenge to it at the time. *Walker v. Birmingham*, 388 U.S. 307, 315 (1967) (suggesting that a contemner might be allowed to challenge contempt citation on ground that underlying court order was "transparently invalid"); *Vakalis v. Shawmut Corp.*, 925 F.2d 34, 37 (1st Cir. 1991); *U.S. v. Cutler*, 58 F.3d 825, 832

(2nd Cir.1995).[2] An Order which flatly contradicts decisions of the U.S. Supreme Court clearly is transparently invalid. *See Hicks v. Miranda,* 422 U.S. 332, 344 (1975) (lower court was not free to disregard a pronouncement of the Supreme Court); *Miller v. U.S.*, 868 F.2d 236, 241 (7th Cir. 1989). This is so no matter the point at which it is brought to a court's attention. *E.g., Brumfiel v. U.S. Bank, N.A.*, 2014 WL 7005253 at *3 (D. Colo. Dec. 11, 2014).

Moreover, even if not properly asserted below, this Court has the authority to consider an issue not raised (or not properly raised) below where the issue is purely one of law, and injustice might otherwise result. *Hormel v. Helvering*, 312 U.S. 552, 556-57 (1941); *Wilson v. Principi*, 391 F.3d 1203, 1211 (Fed. Cir. 2004); *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005).

### B.    THE MERITS OF THE UNDERLYING ORDER COULD BE ARGUED IN THE CONTEMPT PROCEEDING.

In its ruling denying the Motion to Dismiss the Contempt, the District Court cited several cases standing for the proposition that a litigant may not challenge merits of the underlying order in a contempt proceeding. Those cases, however, are inapt, as they all involved findings of contempt of final, not interlocutory, orders. In *Maggio*, the Supreme Court stated that "the turnover proceeding is a separate one

---

[2] The District Court rejected the doctrine of transparent invalidity, citing *Maggio v. Zeitz*, 333 U.S. 56 (1940), a decision predating *Walker* and its progeny by 27 years.

and, when completed and terminated in a final order, it becomes res judicata and not subject to collateral attack in the contempt proceedings." 333 U.S. at 69. Both *Marshak v. Treadwell,* 595 F.3d 478 (3d Cir. 2009) and *Harris v. City of Philadelphia*, 47 F.3d 1311 (3rd Cir. 1995), also cited by the District Court, were contempt claims arising from consent decrees, which are final orders. *G2 Database Marketing, Inc. v. Stein*, 2020 WL 6484788 at *2 (S.D. Iowa Oct. 15, 2020); *Wolfe v. Safecard Services, Inc.,* 873 F.Supp. 648, 649 (S.D. Fla. 1995). As such, those final orders became *res judicata* and not subject to attack in a contempt proceeding.

By contrast, the Order in this case, as noted above, was a non-appealable interlocutory order. Therefore, the issue of the validity of the Order could be raised in the contempt proceeding. *Ryan*, 402 U.S. at 532-33; *Cobbledick*, 309 U.S. at 326. *Cf. In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 89 (3d Cir. 2002) ("appellants may decline to comply with the [non-appealable] discovery order. If they are found in contempt, they may appeal the citation and argue the discovery order was flawed"); *Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1303 (Fed. Cir. 2016) (applying *In re Flat Glass*).

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Appellants respectfully request that this Honorable Court find that the Order requiring LaPray to come to Delaware to testify is unlawful and reverse the citation for contempt issued against her by the District Court.

Respectfully submitted,

*/s/ David L. Finger*
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
(302) 573-2525
dfinger@delawgroup.com
Attorney for Appellants

Dated: December 4, 2023

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed Cir. R. 32(b)(1) because this brief contains 6,348 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements to Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced Times New Roman font size 14.

Dated:  December 4, 2023

*/s/ David L. Finger*
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
(302) 573-2525
dfinger@delawgroup.com
Attorney for Appellants

Case No. 23-2367 (Cons.)

# In the United States Court of Appeals for the Federal Circuit

BACKERTOP LICENSING LLC,

Plaintiff-Below/Appellant,

v.

CANARY CONNECT, INC., et al.,

Defendant-Below/Appellee.

Appeal from the United States District Court
for the District of Delaware
in Case Nos. 22-572 and 22-573, The Hon. Colm F. Connelly

## ADDENDUM TO APPELLANTS' OPENING BRIEF

David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th fl.
Wilmington, DE 19801
(302) 573-2525
dfinger@delawgroup.com
Attorney for Appellants

Dated: December 4, 2023

# Exhibit A

2023 WL 3182084
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

BACKERTOP LICENSING LLC, Plaintiff,
v.
CANARY CONNECT, INC., Defendant.
Backertop Licensing LLC, Plaintiff,
v.
August Home, Inc., Defendant.

Civil Action No. 22-572-CFC,
Civil Action No. 22-573-CFC
|
Signed May 1, 2023

**Attorneys and Law Firms**

Jimmy C. Chong, CHONG LAW FIRM, PA, Wilmington, Delaware; Ronald W. Burns, FRESH IP PLC, Frisco, Texas, Counsel for Plaintiff Backertop Licensing LLC

Alan Richard Silverstein, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Mark K. Suri, HINSHAW & CULBERTSON LLP, Chicago, Illinois, Counsel for Defendant Canary Connect, Inc.

Jeremy Douglas Anderson, FISH & RICHARDSON, P.C., Wilmington, Delaware; Ricardo J. Bonilla, FISH & RICHARDSON, P.C., Dallas, Texas, Counsel for Defendant August Home, Inc.

## MEMORANDUM OPINION

COLM F. CONNOLLY, CHIEF JUDGE

**\*1** Pending before me in these actions are three related motions: (1) "Plaintiff's Motion to Set Aside Memorandum Order of March 31, 2023" (No. 22-572, D.I. 26; No. 22-573, D.I. 29); (2) "Plaintiff's Motion to Stay Compliance with [the] Court's March 31, 2023 [Memorandum] Order Pending Ruling on Plaintiff's Motion to Set Aside the Court's March 31, 2023 [Memorandum] Order" (No. 22-572, D.I. 30; No. 22-573, D.I. 32); and (3) "Motion and Order for Withdraw[al] of Jimmy Chong, Esq[.] as Counsel for Plaintiff" (No. 22-572, D.I. 29; No. 22-573, D.I. 31).

## I. Background

Mr. Chong filed these and two other patent infringement cases on behalf of Backertop Licensing LLC on April 28, 2022. Ronald Burns was later admitted *pro hac vice* and now also represents Backertop in these cases. No. 22-572, D.I. 17; No. 22-573, D.I. 20.

For reasons detailed in *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022), by early September 2022, I had developed concerns that certain LLC plaintiffs, including Backertop, in several patent infringement cases filed by Mr. Chong in this Court, may have had undisclosed financial relationships with the patent monetization firm IP Edge and may not have complied with my April 18, 2022 standing order regarding third-party litigation funding. (I adopt and incorporate here *Nimitz*.) To address those concerns and similar concerns I had about Nimitz (which was not represented by Mr. Chong), I issued on September 12 and 13, 2022 in 12 cases, including these two cases, orders convening a series of evidentiary hearings to determine whether the LLC plaintiffs in the 12 cases had complied with the third-party litigation funding standing order. *Id.* at \*11. I also directed the owners of the LLC plaintiffs to attend the hearings in person. *Id.*

On September 14, 2021, Backertop filed in both these cases a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). No. 22-572, D.I. 21; No. 22-573, D.I. 24. Backertop stated in each notice that it was dismissing the respective case without prejudice and that "[e]ach party shall bear its own costs, expenses and attorney's fees." No. 22-572, D.I. 21 at 1; No. 22-573, D.I. 24 at 1. Seven days later, Backertop filed "corrected" notices of dismissal (No. 22-572, D.I. 22; No. 22-573, D.I. 25). The "corrected" notices were identical to the original notices except that they deleted the provision that "[e]ach party shall bear its own costs, expenses and attorney's fees."

On November 4, 2022, I convened the first of the scheduled evidentiary hearings—a consolidated proceeding for cases filed by Nimitz; Mellaconic IP, LLC; and Lamplight Licensing LLC. As I explained in detail in *Nimitz*, the evidence adduced at that hearing raised serious concerns that the parties may have made inaccurate statements in filings with the Court; that counsel, including Mr. Chong, may have failed to comply with the Rules of Professional Conduct; that real parties in interest, such as IP Edge and a related entity called Mavexar, may have been hidden from the Court and the defendants; and that those real parties in interest may have perpetrated a fraud on the court by fraudulently conveying

APPX1

2023 WL 3182084

the patents asserted in this Court to a shell LLC and filing fictitious patent assignments with the United States Patent and Trademark Office (PTO), all designed to shield the real parties in interest from the potential liability they would otherwise face by asserting in litigation the patents in question. *Nimitz*, 2022 WL 17338396, at *26.

**\*2** Believing that I needed more information to decide whether further action was warranted to address these four concerns, I issued in each of the Nimitz, Mellaconic, and Lamplight cases on November 10, 2022 a memorandum order requiring the plaintiffs in those cases to produce certain records (the November 10 Memorandum Order). *Nimitz Techs. LLC v. CNET Media, Inc.*, No. 21-1247, D.I. 27; *Nimitz Techs. LLC v. BuzzFeed, Inc.*, No. 21-1362, D.I. 21; *Nimitz Techs. LLC v. Imagine Learning, Inc.*, No. 21-1855, D.I. 22; *Nimitz Techs. LLC v. Bloomberg L.P.*, No. 22-413, D.I. 18; *Mellaconic IP LLC v. TimeClock Plus, LLC*, No. 22-244, D.I. 22; *Mellaconic IP LLC v. Deputy, Inc.*, No. 22-541, D.I. 15; *Lamplight Licensing LLC v. ABB Inc.*, No. 22-418, D.I. 24; *Lamplight Licensing LLC v. Ingram Micro, Inc.*, No. 22-1017, D.I. 17.

On that same day, I convened the evidentiary hearing in these two cases that I had ordered on September 12, 2022. The evidence adduced at the hearing only heightened the concerns I had discussed in *Nimitz*. For example, Lori LaPray, whom Backertop had identified as its sole owner in a disclosure statement filed with the Court, testified at the hearing that Mavexar formed, named, and paid for the formation of Backertop, Tr. of Nov. 10, 2022 Hr'g [1] 14:3–15:21; that LaPray had no idea what, if anything, Backertop paid to assume ownership of the patents asserted in these cases, Tr. 24:12–17; that Backertop receives only five percent of any settlements obtained from the assertion of patents held in Backertop's name and Mavexar "gets the other 95 percent," Tr. 41:6–10; that LaPray is "not aware" of any bank accounts held by Backertop, Tr. 32:8–33:5; that "any settlements that come in [to Backertop] go[ ] into [LaPray's] personal [bank] account," Tr. 32:20–23; and that LaPray understands that Backertop and not LaPray personally would be liable for any fees, costs, or other liabilities incurred from asserting in litigation patents titled in Backertop's name, Tr. 30:17–31:24, 35:20–38:7. When I asked Ms. LaPray, "What, if any assets did Backertop have when it filed the [22-]572 lawsuit [against Canary Connect, Inc.]," she replied: "That's what I have Mavexar and my attorneys for." Tr. 33:22–24. And when I asked her, "[I]f Backertop were held liable to pay money to Canary Connect, where would it get its money?"; she replied:

"I'm not sure" and "I guess we'd have to cross that bridge when we come to it." Tr. 39:3–8.

At the conclusion of the November 10 hearing, I had the following exchange with Mr. Burns:

THE COURT: ... [B]y structuring this litigation the way you have with Mavexar, you've basically put a plaintiff in this court asserting a patent, and the plaintiff has no assets. So you've immunized, effectively, the plaintiff from the consequences of a frivolous lawsuit, for instance.

Mavexar, who's driving the train, isn't formally a party here, so you've insulated it, assuming nobody wanted to look into this.

Fair?

MR. BURNS: I wouldn't completely agree with that, Your Honor. The client here, Backertop [w]as formed as an LLC, which does provide a level of insulation for Ms. LaPray personally.

I did not inquire as to Backertop's finances or banking accounts or anything of that nature before the proceedings began, so I had no knowledge of that prior.

But it's a good faith — in our estimation, it was a good faith claim, good faith basis for filing the suits. We had a plaintiff that owned patents. We had defendants that we had good faith claim of infringement. So we considered it fair basis for filing.

**\*3** THE COURT: Anything else you want to say?

MR. BURNS: No, Your Honor.

THE COURT: Okay. Thank you.

Mr. Chong?

MR. CHONG: No, Your Honor.

THE COURT: All right. I need to look further into this and think about it more. You're invited, if you want, either of you, to submit any briefing.

I've already raised in, I'll call them parallel hearings, concerns I have. I've articulated some further concerns because I think some of the testimony here has only added to the concerns.

**APPX2**

Tr. 51:24–53:7. I also told counsel during the hearing that I would be issuing an order along the lines of the November 10 Memorandum Order to require Backertop to produce certain relevant documents. Tr. 50:25–51:3.

Before I was able to issue that order, Nimitz filed with the United States Court of Appeals for the Federal Circuit a petition for a writ of mandamus to reverse the November 10 Memorandum Order. *In re Nimitz Techs. LLC*, No. 23-103, D.I. 2 at 3 (Fed. Cir. Nov. 16, 2022). On November 17, the Federal Circuit stayed the November 10 Memorandum Order "pending further action of" that court. No. 23-103, D.I. 5 at 2 (Fed. Cir. Nov. 17, 2022). Accordingly, I refrained from issuing an order requiring the parties to produce documents in these cases.

On December 8, the Federal Circuit denied Nimitz's petition and lifted the stay in the Nimitz actions. *In re Nimitz Techs. LLC*, 2022 WL 17494845, at *3 (Fed. Cir. Dec. 8, 2022). In doing so, the Court held that the four concerns I had identified as the basis for the November 10 Memorandum Order

> [a]ll ... relate[ ] to potential legal issues in the case, subject to the "principle of party presentation," *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (discussing the principle and its limits), or to aspects of proper practice before the court, over which district courts have a range of authority preserved by the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 83(b); *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). The district court did not seek information simply in order to serve an interest in public awareness, independent of the adjudicatory and court-functioning interests reflected in the stated concerns.

*Id.* at *2.

Nimitz thereafter filed a combined petition for panel rehearing and rehearing en banc in the Federal Circuit. No. 23-103, D.I. 55 (Fed. Cir. Dec. 28, 2022). On January 31, 2023, the Federal Circuit denied that petition. No. 23-103, D.I. 58 at 2 (Fed. Cir.

Jan. 31, 2023). On February 3, Nimitz filed a motion asking the Federal Circuit "to stay issuing the mandate ... pending the filing of a petition for mandamus and/or writ of certiorari in the United States Supreme Court." No. 23-103, D.I. 61 at 1 (Fed. Cir. Feb. 3, 2023). Nimitz argued in its motion that "there [wa]s ... good cause for a stay" of the issuance of the mandate because "[i]f the mandate is not stayed, Nimitz would be required to disclose its privileged communications." No. 23-103, D.I. 61 at 2 (Fed. Cir. Feb 3, 2023). On February 7, the Federal Circuit issued a written order denying Nimitz's motion to stay the issuance of the mandate. No. 23-103, D.I. 62 at 2 (Fed. Cir. Feb. 7, 2023).

**\*4** On March 31, I issued in this case a Memorandum Order, the recital clause of which reads:

> [T]he testimony of witnesses and representations of counsel at the November 10, 2022 hearing and other conduct by counsel and entities in this case and other cases in this Court give rise to concerns about the accuracy of statements in filings made by Plaintiff Backertop Licensing LLC (Backertop), whether counsel complied with the Rules of Professional Conduct and orders of this Court, whether there are real parties in interest such as Mavexar and IP Edge that have been hidden from the Court and Defendants, whether those real parties in interest perpetrated a fraud on the court by fraudulently conveying to a shell LLC patents asserted in this Court and filing fictitious patent assignments with the United States Patent and Trademark Office designed to shield those parties from the potential liability they would otherwise face in asserting patents in litigation in this Court, *see Nimitz Techs. LLC v. CNET Media, Inc.*, No. 21-1247, D.I. 32.

No. 22-572, D.I. 25 at 1–2; No. 22-573, D.I. 28 at 1–2. Like the November 10 Memorandum Order, the March 31 Memorandum Order calls for production of certain records relevant to the concerns raised by the November 4 and November 10 evidentiary hearings. The categories of documents covered by the two Memorandum Orders are identical in all material respects. Specifically, the March 31 Memorandum Order required Backertop to produce no later than April 30, 2023 documents and communications that Ms. LaPray and Messrs. Burns and Chong and their respective law firms had with Mavexar, IP Edge, and certain individuals associated with Mavexar and IP Edge relating to: the formation of Backertop; Backertop's assets; Backertop's retention of Messrs. Burns and Chong and their law firms; the patents asserted in these cases; Backertop's potential scope of liability resulting from the acquisition of those patents; the settlement, potential settlement, and dismissal of these cases; and the November 10 evidentiary hearing. The March 31 Memorandum Order also requires the production of (1) monthly statements for any bank accounts held by Backertop between April 1, 2022 through the November 10 evidentiary hearing; (2) documents relating to the use, purchase, or lease of the suite address for Backertop identified in the complaints filed in the actions; and (3) a sworn declaration of Ms. LaPray that identifies any and all assets owned by Backertop as of the date the complaints were filed in these actions.

## II. Motion to Set Aside the March 31 Memorandum Order

Backertop has moved to set aside the March 31 Memorandum Order. Its primary contention is that I lack jurisdiction to issue and enforce the Memorandum Order because Backertop voluntarily moved to dismiss the cases and because the defendants did not present the concerns that I identified as the bases for the issuance of the Memorandum Order. This argument is easily dismissed.

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). The Court offered in *Cooter* this list of "example[s]" of such collateral issues:

**\*5** For example, district courts may award costs after an action is dismissed for want of jurisdiction. *See* 28 U.S.C. § 1919. This Court has indicated that motions for costs or attorney's fees are "independent proceeding[s] supplemental to the original proceeding and not a request

for a modification of the original decree." *Sprague v. Ticonic National Bank*, 307 U.S. 161, 170, 59 S.Ct 777, 781, 83 L.Ed. 1184 (1939). Thus, even "years after the entry of a judgment on the merits" a federal court could consider an award of counsel fees. *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451, n. 13, 102 S.Ct. 1162, 1166, n. 13, 71 L.Ed.2d 325 (1982). A criminal contempt charge is likewise " 'a separate and independent proceeding at law' " that is not part of the original action. *Bray v. United States*, 423 U.S. 73, 75, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975), quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 445, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911). A court may make an adjudication of contempt and impose a contempt sanction even after the action in which the contempt arose has been terminated. *See United States v. Mine Workers*, 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947) ("Violations of an order are punishable as criminal contempt even though ... the basic action has become moot"); *Gompers v. Buck's Stove & Range Co., supra*, 221 U.S., at 451, 31 S.Ct., at 502 (when main case was settled, action became moot, "of course without prejudice to the power and right of the court to punish for contempt by proper proceedings").

*Id.* at 395–96 (alterations in the original).

The Court specifically held in *Cooter* that a voluntary dismissal under Rule 41(a)(1) does not deprive a district court of jurisdiction over a Rule 11 motion. *Id.* at 398. But as the Third Circuit (whose law governs this Court's exercise of its inherent powers) recognized in *Haviland v. Specter*, 561 F. App'x 146, 150 (3d Cir. 2014), there is no "principled reason why the Court's decision [in *Cooter*] would not apply equally to sanctions imposed pursuant to a district court's inherent authority."

What I said *Nimitz* bears repeating here:

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of of all others.' " *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

APPX4

The Supreme Court has expressly held that a federal court's inherent powers include the powers I have exercised here: "the power to control admission to its bar and to discipline attorneys who appear before it," *id.*, the power to enforce compliance with court orders, *see id.*, and "the power to conduct an independent investigation in order to determine whether [the court] has been the victim of fraud." *Id.* at 44. These powers extend to nonparties. *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a nonparty as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices." (citations omitted)).

*Nimitz*, 2022 WL at 17338396 (alterations in the original).

It makes no sense that a party could deprive a court of its inherent powers simply by filing a notice (or stipulation[2]) of dismissal. *Haviland*, 561 F. App'x at 150. To hold otherwise would render district courts impotent to manage their cases in an orderly fashion and would foster abuse of our judicial system by unethical litigants and their attorneys.

**\*6** For these same reasons, it is also not necessary that a party—as opposed to the court—raise the concerns that necessitate the exercise of the court's inherent powers. As the Supreme Court held in the seminal case, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), "it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants."

In sum, I neither lacked jurisdiction to issue the March 31 Memorandum Order nor lack jurisdiction to enforce it now.

Backertop next argues that the categories of information sought by the March 31 Memorandum Order are "overly broad" because they "necessarily include communications and correspondence relating to other Backertop cases and lawsuits that were not filed in the District of Delaware." No. 22-572, D.I. 27 at 11–12; No. 22-573, D.I. 30 at 11–12. But the fact that a category of documents relevant to the concerns raised in these cases happens also to touch on issues in other cases does not render the demand to produce

that category of documents overly broad. Backertop also faults the Memorandum Order for "repeat[ing] three times" the categories of communications and documents it directs Backertop to produce. No. 22-572, D.I. 27 at 12; No. 22-573, D.I. 30 at 12. The repetition, however, is intentional—and necessary—as it ensures that the relevant documents and communications of (1) Ms. LaPray, (2) Mr. Chong and his firm, and (3) Mr. Burns and his firm are produced. Backertop also argues that the Memorandum Order's requirement that Backertop produce monthly bank account statements for the period between April 1, 2022 and November 10, 2022 is overly broad because "any financial activity in any account owned by Backertop during that time frame would be included in the scope of production, and would reasonably include transactions wholly unrelated to these two cases." No. 22-572, D.I. 27 at 12–13; No. 22-573, D.I. 30 at 12–13. The information sought, however, is relevant to ascertaining whether Backertop was a purposefully empty vessel that was fraudulently formed to insulate Mavexar, IP Edge, and their principals and/or Ms. LaPray from liability they could otherwise face by accusing others of infringing the asserted patents. (The irony that Backertop's lawyers have challenged a demand to produce statements for bank accounts that Backertop's owner does not believe exist is not lost on me.)

Finally, Backertop argues that the March 31 Memorandum Order should be set aside because it "is geared toward disclosing" attorney-client privileged communications and attorney work product. No. 22-572, D.I. 27 at 13–15; No. 22-573, D.I. 30 at 13–15. Backertop, however, cites, and I know of, no case that precludes a court from requiring a party to produce *to the court* materials that the party claims are privileged or covered by the work-product doctrine. There is also good reason to doubt Backertop's privilege and work-product assertions. The premise of those assertions is that Mavexar is an agent of Backertop. *See* No. 22-572, D.I. 27 at 14; No. 22-573, D.I. 30 at 14. But the evidence adduced to date suggests that Ms. LaPray and Backertop are doing Mavexar's bidding; not the other way around. The "principal" here appears to be Mavexar and/or IP Edge; not Backertop or Ms. LaPray. Moreover, as Backertop concedes, "[d]ocuments may also be submitted to a court to determine whether they may be subject to the crime/fraud exception" to the privilege and attorney work product doctrines. No. 22-572, D.I. 27 at 15; No. 22-573, D.I. 30 at 15. Although I am far from making any definitive conclusions here, it is abundantly clear that there is evidence to suggest that Mavexar and its principals may have used Backertop and Ms. LaPray, along with other

LLC plaintiffs and their nominal owners, to perpetrate a fraud on this Court, the PTO, and numerous defendants.

 **\*7**  For these reasons, I will deny Backertop's motion to set aside the March 31 Memorandum Order. And I will order Backertop to comply with the March 31 Memorandum Order no later than May 9, 2023.

### III. Motion to Stay Compliance with the March 31 Memorandum Order

Backertop requests in its second motion that I "stay compliance with the March 31, 2023 Memorandum Order until [I] ha[ve] ruled on [Backertop's] Motion to Set Aside" that Memorandum Order. No. 22-572, D.I. 30 at 2; No. 22-573, D.I. 32 at 2. I will deny this motion as moot since I have decided to deny the motion to set aside the March 31 Memorandum Order.

### IV. Motion for Jimmy Chong to Withdraw as Attorney

Finally, Mr. Chong filed in both of these cases on April 25, 2023 a motion to withdraw as Backertop's counsel. No. 22-572, D.I. 29; No. 22-573, D.I. 31. Mr. Chong states in the motion that "[g]ood cause exists for the withdrawal of Jimmy Chong of the Chong Law Firm, P.A. as counsel, in that attorney is unable to effectively communicate with Client in a manner consistent with good attorney-client relations" [sic]. No. 22-572, D.I. 29 at 1–2; No. 22-573, D.I. 31 at 1–2. Backertop and August Home oppose the motion; Canary Connect's position on the motion is not known. No. 22-572, D.I. 29 at 2; No. 22-573, D.I. 31 at 2.

Also on April 25, in an email to the Court's clerk's office, Mr. Burns stated that he had "started a new job, and do[es] not and

cannot represent the plaintiff any longer." No. 22-572, D.I. 31 at 1; No. 22-573, D.I. 33 at 1. Mr. Burns attached to his email two pdfs titled "Withdrawal of Attorney Ronald W[.] Burns" (one for each case) and stated in his email that he was "sending [the clerk's office] my Local Rule 83.7 Withdrawals for filing, due to the fact that I cannot get a response from my local counsel." No. 22-572, D.I. 31 at 1; No. 22-573, D.I. 33 at 1. (As Mr. Burns is not Delaware counsel, he cannot file, and the Court will not docket, these documents. *See* D. Del. LR 83.5(d).)

To sort through this morass, I will convene a hearing on June 8, 2023 at 10:00 a.m. and require Messrs. Chong and Burns and Ms. LaPray to attend the hearing in person. I will refrain from ruling on the motion to withdraw Jimmy Chong as attorney until after that hearing.

### V. CONCLUSION

For the reasons discussed above, I will deny Backertop's motion to set aside the March 31, 2023 Memorandum Order and its motion to stay compliance with that Memorandum Order, and I will order Backertop to comply with the March 31 Memorandum Order no later than May 9, 2023. I will also order Ms. LaPray and Messrs. Chong and Burns to appear at a hearing on June 8, 2023, at which time I will hear argument and, if necessary, adduce evidence with respect to the motion to withdraw Mr. Chong as Backertop's counsel.

The Court will issue an Order consistent with this Memorandum Opinion.

### All Citations

Slip Copy, 2023 WL 3182084

---

### Footnotes

1       The transcript is docketed at No. 22-572, D.I. 24 and No. 22-573, D.I. 27.

2       On April 21, 2023—almost three weeks after filing its motion to set aside the March 31 Memorandum Order —Backertop filed in the Canary Connect action a joint stipulation of dismissal pursuant to Rule 41(a)(1)(A)(ii). No. 22-572, D.I. 28. Although the "corrected" notice of dismissal filed by Backertop in the Canary Connect action last year deleted the original notice's provision that "[e]ach party shall bear its own costs, expenses and attorney's fees," No. 22-572, D.I. 22 at 1, that provision is included in the joint stipulation of dismissal, *see* No. 22-572, D.I. 28 at 1.

---

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-572-CFC |
| | ) | |
| CANARY CONNECT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BACKERTOP LICENSING LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-573-CFC |
| | ) | |
| AUGUST HOME, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

At Wilmington on this First day of May in 2023:

For the reasons set forth in the Memorandum Opinion issued this day, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Set Aside Memorandum Order of March 31, 2023 (No. 22-572, D.I. 26; No. 22-573, D.I. 29) is **DENIED**;

2. The parties shall **COMPLY** with the March 31, 2023 Memorandum Order (No. 22-572, D.I. 25; No. 22-573, D.I. 28) no later than May 9, 2023;

3.   Plaintiff's Motion to Stay Compliance with Court's March 31, 2023 Order Pending Ruling on Plaintiff's Motion to Set Aside the Court's March 31, 2023 Order (No. 22-572, D.I. 30; No. 22-573, D.I. 32) is **DENIED** as **MOOT**;

4.   The Court will convene a hearing in Courtroom 4B on June 8, 2023 at 10:00 a.m. to address Motion and Order for Withdraw of Jimmy Chong, Esq as Counsel for Plaintiff (No. 22-572, D.I. 29; No. 22-573, D.I. 31).  Jimmy Chong, Ronald Burns, and Lori LaPray **SHALL ATTEND THE HEARING IN PERSON.**

_____
CHIEF JUDGE

**APPX8**

# Exhibit B

2023 WL 3736766
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

BACKERTOP LICENSING LLC, Plaintiff,

v.

CANARY CONNECT, INC., Defendant.
Backertop Licensing LLC, Plaintiff,

v.

August Home, Inc., Defendant.

Civil Action No. 22-572-CFC,
Civil Action No. 22-573-CFC,
|
Filed May 31, 2023

**Attorneys and Law Firms**

Jimmy C. Chong, Chong Law Firm, PA, Wilmington, DE,
Ronald W. Burns, Jr., Pro Hac Vice, Dallas, TX, for Plaintiff
in Nos. 22-572, 22-573.

Alan Richard Silverstein, Connolly Gallagher LLP,
Wilmington, DE, Mark Suri, Pro Hac Vice, Chicago, IL, for
Defendant in No. 22-572.

Jeremy Douglas Anderson, Fish & Richardson, P.C.,
Wilmington, DE, Ricardo J. Bonilla, Pro Hac Vice, for
Defendant in No. 22-573.


**MEMORANDUM ORDER**

Colm F. Connolly, CHIEF JUDGE

 *1 Pending before me is the request of Plaintiff Backertop
Licensing LLC for Ms. Lori LaPray to participate by
telephone in the hearing in these actions scheduled for June
8, 2023. No. 22-572, D.I. 35 at 2; No. 22-573, D.I. 38 at 2.


I.

On May 1, 2023, I ordered Ms. LaPray, Mr. Jimmy Chong
(Backertop's Delaware counsel), and Mr. Ronald Burns
(Backertop's outside counsel) to attend a hearing in person on
June 8, 2023 to address Mr. Chong's motion to withdraw as
counsel. No. 22-572, D.I. 33 at 2; No. 22-573, D.I. 35 at 2.
Mr. Chong represented in the motion that good cause exists

to permit him to withdraw as counsel because he has been
"unable to effectively communicate with Client in a manner
consistent with good attorney-client relations." No. 22-572,
D.I. 29 at 1–2; No. 22-573, D.I. 31 at 1–2. Mr. Chong filed
the motion on April 25, 2023. That same day, in an email
sent to the Court's clerk's office, Mr. Burns stated that he also
"cannot represent the plaintiff any longer," and, further, that
he "cannot get a response from" Mr. Chong. No. 22-572, D.I.
31 at 1; No. 22-573, D.I. 33 at 1. Backertop has no employees,
No. 22-572, D.I. 24 at 33:11–16; No. 22-573, D.I. 27 at 33:11–
16, and it has represented to the Court that Ms. LaPray is its
managing member and sole owner, No. 22-572, D.I. 23-1 at 1;
No. 22-573, D.I. 26-1 at 1. I scheduled the June 8 hearing and
ordered all three individuals to attend the hearing in person
"[t]o sort through this morass." No. 22-572, D.I. 32 at 16; No.
22-573, D.I. 34 at 16.

I also ordered Backertop on May 1 to submit to the Court
no later than May 9 the documents required to be produced
by the Memorandum Order issued on March 31, 2023 (No.
22-572, D.I. 25; No. 22-573, D.I. 28). No. 22-572, D.I. 33 at
1; No. 22-573, D.I. 35 at 1. On May 9, Backertop submitted
to my chambers 473 pages of documents. Backertop stated
in a notice filed with the Court on that same day that it had
complied with the March 31, 2023 Memorandum Order by
virtue of this production. No. 22-572, D.I. 36 at 2; No. 22-573,
D.I. 39 at 2.

In another notice also filed on May 9, Backertop "inform[ed]
the Court that Ms. Lori LaPray is unavailable to attend the
June 8, 2023 hearing in-person and is unavailable to travel
to Delaware for the foreseeable future." No. 22-572, D.I.
35 at 2; No. 22-573, D.I. 38 at 2. In a sworn declaration
filed with this notice, Ms. LaPray stated that she "will be
out of town and traveling between June 8, 2023 and June
15, 2023," that "[o]utside of such dates, [she], as a paralegal
for [the] firm, Holmes Firm PC, ha[s] a number of trials
and hearing[s] throughout the entire summer that require
[her] physical presence [somewhere other than Delaware],"
that her "children are now out of school for the summer
and [her] parental obligations require [her] physical presence
[somewhere other than Delaware]," and that "[b]ecause of at
least these reasons, [she] do[es] not have the ability to travel
to Delaware for this hearing in the foreseeable future." No.
22-572, D.I. 35-1 at 2; No. 22-573, D.I. 38-1 at 2. Ms. LaPray
provided no further details or documentation to support these
assertions.

APPX9

**\*2** Ms. LaPray also stated in her declaration that Backertop's "position" with respect to Mr. Chong's motion to withdraw and Mr. Burns's email to the clerk's office "is simply that [Backertop] cannot be left without counsel to represent [it] in these matters." No. 22-572, D.I. 35-1 at 2; No. 22-573, D.I. 38-1 at 2.

Finally, Ms. LaPray requested in her affidavit that she be permitted to "appear telephonically" at the June 8 hearing. No. 22-572, D.I. 35-1 at 2; No. 22-573, D.I. 38-1 at 2.

## II.

I will deny the request for Ms. LaPray to participate by telephone in the June 8 hearing for three reasons.

First, Judicial Conference policy generally prohibits the broadcasting of proceedings in federal district courts. *See Guide to Judiciary Policy*, Vol. 10, Ch. 4, § 410.10(a). That policy was temporarily changed during the COVID-19 pandemic to allow for remote public access to civil proceedings. James C. Duff, *March 31, 2020 Memorandum*, Administrative Office of the United States Courts, https:// jnet.ao.dcn/sites/default/files/pdf/DIR20-054.pdf. Although this temporary policy has expired, the Judicial Conference has authorized a grace period for remote public access to civil proceedings through September 21, 2023. Roslynn R. Mauskopf, *May 8, 2023 Memorandum*, Administrative Office of the United States Courts, https://infoweb.ao.dcn/bcastpdf/ DIR23-051.pdf. Nonetheless, during the grace period, remote hearings remain the exception, not the rule. And in this case, the circumstances are not so exceptional as to justify a remote hearing.

Second, given the representations and positions of counsel and Ms. LaPray and the apparent lack of communication between counsel and among counsel and Ms. LaPray, Mr. Chong's motion to withdraw is unusual to say the least. My previous description of the situation as a "morass" remains accurate, and to sort through that morass it may be necessary to assess the credibility of counsel and of Ms. LaPray. Credibility assessments are difficult to make over the phone.

Third, I have now had a chance to review Backertop's May 9 document production, and I have questions for Ms. LaPray about the production that also require her physical presence in court so that I can assess her credibility.

I will, however, excuse Ms. LaPray from having to appear at the June 8 hearing. Reading her declaration generously and in the light most possibly favorable to her, I will presume that she made her June 8–15 travel plans before I set the hearing date and that it would be costly and burdensome for her to change those travel plans. But I will not cancel the hearing. Instead, on June 8, I will question and hear from Messrs. Chong and Burns, who remain required to attend the hearing in person.

I will also schedule a new hearing for July 20, 2023 at 1:00 p.m. to question and hear from Ms. LaPray about Mr. Chong's motion as well as the document production Backertop submitted in response to the March 31, 2023 Memorandum Order. I will require Ms. LaPray to attend this hearing in person. July 20 is almost two months from today. That gives Ms. LaPray ample time to make any necessary arrangements for childcare and her job. If a hearing on that date presents exceptional difficulties for Ms. LaPray, then she needs to submit to the Court no later than June 7, 2023 affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates in July for a hearing.

**\*3** I assume that Ms. LaPray's statement that she is unavailable to appear in this Court "at any time in the foreseeable future" was made without the benefit of input from counsel and was not intended to suggest that she does not take the Court's orders and proceedings seriously. *See generally United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947) ("The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril."). As it appears that Ms. LaPray may not currently be in communication with Backertop's counsel of record in these cases and because Ms. LaPray specifically cited her obligations as a paralegal for the Holmes Firm PC as one of the "reasons[ ] [she] do[es] not have the ability to travel to Delaware for this hearing in the foreseeable future," No. 22-572, D.I. 35-1 at 2; No. 22-573, D.I. 38-1 at 2, I will also provide Ronald L. Holmes, Esquire, the managing partner of the Holmes Firm, with a copy of this Memorandum Order and, to explain the situation at hand, copies of *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022) and the Memorandum Opinion and Order I issued on May 1 (No. 22-572, D.I. 32, 33; No. 22-573, D.I. 34, 35). Doing so will ensure that Ms. LaPray receives notice of this Memorandum Order; and I suspect that Mr. Holmes will explain to Ms. LaPray that,

**APPX10**

contrary to the assertions in her declaration, his firm does not in fact "require [her] physical presence" somewhere other than Delaware "throughout the entire summer" such that she cannot attend a hearing before this Court.

\* \* \* \*

NOW THEREFORE, at Wilmington on this Thirty-first Day of May in 2023, **IT IS HEREBY ORDERED** that:

1. Backertop's request for Lori LaPray to participate by telephone in the June 8, 2023 hearing (No. 22-572, D.I. 35 at 2; No. 22-573, D.I. 38 at 2) is **DENIED**;

2. Ms. LaPray is **EXCUSED** from attending the June 8, 2023 hearing;

3. The Court will **CONVENE A HEARING** in Courtroom 4B on July 20, 2023 at 1:00 p.m. to address at least Mr. Chong's motion to withdraw (No. 22-572, D.I. 29; No. 22-573, D.I. 31) and the document production made by Backertop on May 9; and

4. Ms. LaPray **SHALL ATTEND THE JULY 20, 2023 HEARING IN PERSON**.

**All Citations**

Slip Copy, 2023 WL 3736766

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.    3

Exhibit C

2023 WL 4420467
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

BACKERTOP LICENSING LLC, Plaintiff,

v.

CANARY CONNECT, INC., Defendant.
Backertop Licensing LLC, Plaintiff,

v.

August Home, Inc., Defendant.

Civil Action No. 22-572-CFC,
Civil Action No. 22-573-CFC
|
Signed July 10, 2023

**Attorneys and Law Firms**

Jimmy C. Chong, CHONG LAW FIRM, PA, Wilmington, Delaware; Ronald W. Burns, Frisco, Texas, Counsel for Plaintiff Backertop Licensing LLC

Alan Richard Silverstein, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Mark K. Suri, HINSHAW & CULBERTSON LLP, Chicago, Illinois, Counsel for Defendant Canary Connect, Inc.

Jeremy Douglas Anderson, FISH & RICHARDSON, P.C., Wilmington, Delaware; Ricardo J. Bonilla, FISH & RICHARDSON, P.C., Dallas, Texas, Counsel for Defendant August Home, Inc.

## <u>MEMORANDUM OPINION</u>

COLM F. CONNOLLY, CHIEF JUDGE

**\*1** Pending before me is Plaintiff Backertop Licensing LLC's Motion for Reconsideration of the Court's May 31, 2023 Memorandum Order and Leave for Ms. Lori LaPray to Appear at the Court's July 20, 2023 Hearing via Videoconference (No. 22-572, D.I. 40; No. 22-573, D.I. 43).

### I.

In the May 31, 2023 Memorandum Order (No. 22-572, D.I. 37; No. 22-573, D.I. 40), I denied Backertop's request to allow Ms. LaPray to participate by telephone in a hearing I

convened on June 8, 2023; excused her from appearing in person at that hearing; and ordered her to appear in person at a hearing on July 20, 2023. I also stated in the Memorandum Order that "[i]f a hearing on [July 20] presents exceptional difficulties for Ms. LaPray, then she needs to submit to the Court no later than June 7, 2023 affidavits and supporting documentation demonstrating exactly why that is the case and propose a range of alternative dates in July for a hearing." No. 22-572, D.I. 37 at 6; No. 22-573, D.I. 40 at 6.

On June 7, Backertop filed the pending motion. *See* No. 22-572, D.I. 40; No. 22-573, D.I. 43.

### II.

The legal standard that governs motions for reconsideration is well established in the Third Circuit. "A proper [motion for reconsideration]... must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

In its briefing, Backertop does not mention this legal standard, let alone discuss how it has demonstrated any of the three requisite grounds to warrant reconsideration of the Memorandum Order. Backertop's principal argument appears to be that the May 31, 2023 Memorandum Order rests on a clear error of law. I say this because Backertop devotes the bulk of its briefing to its contentions that "[t]he Court can order Ms. LaPray to testify only pursuant to a subpoena" issued under Federal Rule of Civil Procedure 45(c); and that, under Rule 45(c)(1)(B)(i), "a subpoena compelling her attendance at a hearing must compel her to attend a hearing in the State of Texas" because Ms. LaPray is a nonparty corporate officer who "resides in Texas, is employed in Texas, and only transacts business in person in Texas." No. 22-572, D.I. 40-1 at 11–12 (some capitalization removed); No. 22-573, D.I. 43-1 at 11–12 (same). Backertop did not raise this argument in its request for Ms. LaPray to participate by telephone in the June 8 hearing and therefore forfeited the argument. *See* *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010) ("[Motions for reconsideration] are granted for compelling reasons, such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier." (internal

APPX12

quotation marks and citation omitted)). But in any event, the argument fails on the merits for two reasons.

**\*2** First, I did not rely on Rule 45—or any other Federal Rule of Civil Procedure—when I ordered Ms. LaPray to attend the July 20 hearing in person. Instead, for the reasons outlined in *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022), and *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 3182084 (D. Del. May 1, 2023), both of which I incorporate here, I relied on the Court's inherent powers. As the Supreme Court explained in *Chambers v. NASCO, Inc.*, "[t]hese powers are 'governed *not by rule* or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " 501 U.S. 32, 43 (1991) (emphasis added) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

These inherent powers extend to nonparties. *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness —the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a nonparty as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices."); *Jones v. Bank of Santa Fe* (*In re Courtesy Inns, Ltd., Inc.*), 40 F.3d 1084, 1089–90 (10th Cir. 1994) (upholding a bankruptcy judge's imposition of sanctions against nonparty president of debtor corporation as an appropriate exercise of "the inherent power recognized by the Supreme Court in *Chambers*"); *Caldwell v. Unified Capital Corp.* (*In re Rainbow Magazine, Inc.*), 77 F.3d 278, 282–83 (9th Cir. 1996) (upholding a bankruptcy judge's imposition of a $250,000 sanction against a nonparty individual whose corporate entity was the debtor as an appropriate exercise of a court's "inherent authority to sanction" under *Chambers)', American Trust v. Sabino*, 2000 WL 1478372, at \*1 (6th Cir. Sept. 28, 2000) (affirming costs sanction imposed personally against trustee of plaintiff trust because, under *Chambers*, "[a] federal court has the inherent power to impose sanctions against a party or nonparty who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."). And they empower a court to order a nonparty representative of a corporate party to attend court proceedings. *See, e.g.*, *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 650, 656–57 (7th Cir. 1989)

(en banc) (holding that a district court has the inherent power and authority to order a corporate party's representative to attend in person a pretrial conference to discuss settlement of the case and to impose sanctions for failure to comply with that order); *In re Novak*, 932 F.2d 1397, 1407 (11th Cir. 1991) ("the power to direct parties to produce individuals with full settlement authority at pretrial settlement conferences is inherent in the district courts").

Second, Rule 45 has no bearing on the circumstances at hand. Backertop argues that Rule 45(c) requires a court to issue a subpoena in order to compel a person's attendance at a hearing. No. 22-572, D.I. 40-1 at 11–12 ("As a non-party to the case, under the Federal Rules of Civil Procedure—which apply as equally to the Court as it does parties—a subpoena is required to compel attendance at a hearing." (citing FED. R. CIV. P. 45(c))); No. 22-573, D.I. 43-1 at 11–12 (same). But nothing in Rule 45(c) or any other part of Rule 45 requires a district judge to issue a subpoena to compel a person's attendance in court. And, more to the point here: Nothing in Rule 45 prohibits a district judge from issuing an order to compel a person's attendance in court.

**\*3** Rule 45(c) merely prescribes geographic limits on subpoenas issued pursuant to Rule 45(a). Under Rule 45(c) (1)(B)(i), for example, a subpoena issued under Rule 45(a) to a party or a party's officer "may command a person to attend a trial, hearing, or deposition only ... within the state where the person resides, is employed, or regularly transacts business in person." Rule 45(a), for its part, authorizes the clerk of the court and attorneys authorized to practice in the court—but not the court itself—to issue subpoenas. *See* FED. R. CIV. P. 45(a)(3) ("*Issued by Whom*. The clerk must issue a subpoena, signed but otherwise in blank, to a party who requests it. That party must complete it before service. An attorney also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court." (emphasis in original)). While subpoenas issue *from* the court where the action is pending, they are neither issued nor instigated *by* the court. *Compare* FED. R. CIV. P. 45(a)(2) ("*Issuing Court*. A subpoena must issue *from* the court where the action is pending." (second emphasis added)) *with* FED. R. CIV. P. 45(a)(3). Thus, Rule 45 does not limit in any way the inherent power of a district judge to issue *sua sponte* an order compelling the attendance of a witness at a hearing; it limits only the power of a court to enforce a subpoena that was issued either by the clerk of the court at the request of a party or by an attorney authorized to practice in that court.

**APPX13**

Backertop's reading of Rule 45 is not only at odds with the Rule's text, but in countless cases it would also severely hamper if not nullify a court's inherent powers—"powers which cannot be dispensed with in a Court," *Chambers*, 501 U.S. at 43 (internal quotation marks and citations omitted). A corporate party can act only through natural persons. But under Backertop's theory, if no representative of a corporate party lives, works, or conducts in-person business in the state where the court is located, then the judge has no power to call into court a natural person to speak for that party on any topic, including alleged litigation misconduct by the corporate party.

The facts of these cases illustrate the absurdity of Backertop's position. According to Ms. LaPray, Backertop has no employees, no bank accounts, and no assets other than the patents asserted in these cases. No. 22-572, D.I. 24 at 33:13–14 (no employees), 32:8–9 (no bank account), 16:18–19, 32:8–33:24, 39:3–5 (no assets other than the patents); No. 22-573, D.I. 27 at 33:13–14 (same), 32:8–9 (same), 16:18–19, 32:8–33:24, 39:3–5 (same). Ms. LaPray also says that she is Backertop's sole owner and managing member. No. 22-572, D.I. 23-1 ¶ 1; No. 22-573, D.I. 26-1 ¶ 1. Last year, Backertop filed at least 12 patent infringement cases in United States District Courts. [1] Three of those cases were filed in Texas. The nine remaining cases were filed in district courts located in Delaware, New York, Colorado, and California; but under Backertop's theory, Ms. LaPray can never be compelled to attend a hearing in these district courts even though she is the only natural person through whom Backertop can act.

To sum up: The May 31, 2023 Memorandum Order was properly issued pursuant to the Court's inherent powers and was not infected by a clear error of law. Rule 45 does not foreclose a court from ordering the sole representative of a corporate party to attend a court hearing. I will therefore deny the motion for reconsideration.


III.

**\*4** Backertop also asks me to reconsider, based on Ms. LaPray's willingness and availability to appear by videoconference, whether Ms. LaPray must attend the July 20 hearing in person. As I explained in the May 31, 2023 Memorandum Order, I denied Ms. LaPray's earlier request to participate in the June 8 hearing by telephone for three reasons:

First, Judicial Conference policy generally prohibits the broadcasting of proceedings in federal district courts. *See Guide to Judiciary Policy*, Vol. 10, Ch. 4, § 410.10(a). That policy was temporarily changed during the COVID-19 pandemic to allow for remote public access to civil proceedings. James C. Duff, *March 31, 2020 Memorandum*, Administrative Office of the United States Courts, https://jnet.ao.dcn/sites/default/files/pdf/DIR20-054.pdf. Although this temporary policy has expired, the Judicial Conference has authorized a grace period for remote public access to civil proceedings through September 21, 2023. Roslynn R. Mauskopf, *May 8, 2023 Memorandum*, Administrative Office of the United States Courts, https://infoweb.ao.dcn/bcastpdf/DIR23-051.pdf. Nonetheless, during the grace period, remote hearings remain the exception, not the rule. And in this case, the circumstances are not so exceptional as to justify a remote hearing.

Second, given the representations and positions of counsel and Ms. LaPray and the apparent lack of communication between counsel and among counsel and Ms. LaPray, Mr. Chong's motion to withdraw is unusual to say the least. My previous description of the situation as a "morass" remains accurate, and to sort through that morass it may be necessary to assess the credibility of counsel and of Ms. LaPray. Credibility assessments are difficult to make over the phone.

Third, I have now had a chance to review Backertop's May 9 document production, and I have questions for Ms. LaPray about the production that also require her physical presence in court so that I can assess her credibility.

No. 22-572, D.I. 37 at 4–5; No. 22-573, D.I. 40 at 4–5. Even though a streamed video may be better than a phone call for assessing credibility, these factors apply equally to Ms. LaPray's request to appear by videoconference instead of in person at the July 20 hearing. Live, in-person testimony remains the best means of ascertaining the truth. And two facts that emerged after May 31 make it even more critical for me to be in the best position I can to assess Ms. LaPray's credibility. First, during the June 8 hearing, Backertop's two counsel of record, Messrs. Chong and Burns, gave seemingly irreconcilable accounts of the events that led to their respective requests (opposed by Backertop) to withdraw as counsel. *See* Tr. of June 8 Hr'g 9:3–10:9, 11:6–11, 14:11–16:7; No. 22-572, D.I. 40-3 ¶ 14; No. 22-573, D.I. 43-3 ¶ 14; No. 22-572, D.I. 35-1 ¶ 10; No. 22-573, D.I. 38-1 ¶ 10. [2]

APPX14

Second, as I explained at the June 8 hearing, it does not appear that Backertop's May 9 document production fully complied with the Court's March 31, 2023 Memorandum Order (No. 22-572, D.I. 25; No. 22-573, D.I. 28). *See, e.g.*, Tr. 7:16–23, 17:19–23, 29:1–6, 31:7–18, 94:9–16.

Backertop insists that "the Court routinely holds hearings telephonically and through videoconference." No. 22-572, D.I. 40-1 at 15; No. 22-573, D.I. 43-1 at 15. But the exhibit it filed and cites in support of that assertion—a copy of the Court's calendar for the period May 22, 2023 through June 16, 2023—proves otherwise. *See* No. 22-572, D.I. 40-2; No. 22-573, D.I. 43-2.[3] As the calendar and applicable docket sheets show, 23 of the 24 proceedings I held during this time frame were in person. The sole exception was a scheduling teleconference I held by telephone because there were no material disputes between the parties. Thus, my insistence on holding an in-person hearing in these cases is entirely consistent with my practice in all my cases and entirely consistent with the Judicial Conference's policies.

 **\*5**  Backertop also says that Ms. LaPray is "unavailable" to attend the July 20 hearing because she is a working mother with two young children; she "is responsible for taking her seven (7) year old child to soccer practice"; her husband's new job makes it "not possible for him to take over Ms. LaPray's daily family obligations concerning dropping off and picking up the children to/from day care, nor to take the seven (7) year old child to soccer practice"; and it is "a substantial financial hardship to ... travel from Texas to Delaware ... to appear in-person, including flights, hotels, car rental, etc." No. 22-572, D.I. 40-1 at 13–14; No. 22-573, D.I. 43-1 at 13–14. Contrary to the May 31, 2023 Memorandum Order's explicit directives, Ms. LaPray neither submitted documentation to support these assertions nor offered alternative dates for her to appear in person.

While I am sympathetic to the childcare burdens that business-and court-related travel can impose on working parents, Ms. LaPray should have given due consideration to those matters before she agreed to serve as the sole natural person affiliated with Backertop and before Backertop filed the dozen patent infringement suits it did last year in district courts across the country, including four suits in Delaware.

With respect to Ms. LaPray's assertion that traveling to and from the July 20 hearing would cause her "a substantial financial hardship," internet searches by my staff on July 6, 2023 on Expedia.com and the Uber application suggest

otherwise for an individual of Ms. LaPray's apparent means. The hearing is scheduled for 1:00 p.m.; and those searches show that it is possible to buy for less than $160 a ticket for a roundtrip flight on July 20 between Dallas (where Ms. LaPray resides) and the Philadelphia Airport (less than 22 miles from the Courthouse) that would enable Ms. LaPray to leave home that morning, attend the hearing, and return home that evening. *See* EXPEDIA, https://www.expedia.com (under "flights" search Dallas, TX to Philadelphia, PA departing July 20 and returning July 20).[4] Round trip transport between the Philadelphia Airport and the Courthouse can be reserved for July 20 using Uber for about $140. *See* UBER, https://www.uber.com (log in to your account or create a free account, and under "Ride" select "Schedule for later," and enter the relevant time and location to be picked up at the airport; repeat this process to schedule a ride back to the airport). Thus, the total cost for Ms. LaPray to travel to the July 20 hearing looks to be in the neighborhood of $300.

Ms. LaPray has not demonstrated that costs of this amount would impose a substantial financial burden on her or Backertop. Record evidence and public filings indicate that it would not. Ms. LaPray testified at the November 10 hearing, for example, that even though Backertop earns only 5% of the settlements obtained from patent litigation pursued under its name, it had already earned $2,000 from settlements in related cases it filed in 2022. No. 22-572, D.I. 24 at 35:3–19, 41:6–10; No. 22-573, D.I. 27 at 35:3–19, 41:6–10.[5] And, as detailed in the Appendix attached hereto and based on public records filed with the United States Patent & Trademark Office (PTO), the State of Texas, and the federal courts' filing system (CM/ECF), it appears that Ms. LaPray has also profited financially from her role as the managing member of at least six other LLCs, at least three of which appear, like Backertop, to be linked to IP Edge and Mavexar. (Ms. LaPray testified at the November 10 hearing that an IP Edge affiliate called Mavexar formed Backertop and offered her the opportunity to own it. When I asked Ms. LaPray if Mavexar "create[d] any other LLCs for [her]," she replied, "I do have a few more LLCs," but she was unable to recall the names of them. No. 22-572, D.I. 24 at 14:21–16:2; No. 22-573, D.I. 27 at 14:21–16:2.) Five of those LLCs filed at least 97 patent infringement cases in at least 13 different United States District Courts from 2016 through 2021. The administrative fees alone paid by the LLCs to file those cases—more than $38,000[6]—vastly exceed what it would cost for Ms. LaPray to travel to Delaware on July 20.

**\*6** Finally, in considering Backertop's arguments concerning the childcare and financial burdens Ms. LaPray says she will suffer if compelled to attend the July 20 hearing in person, I am struck by the fact that Backertop has demanded jury trials in these actions. *See* No. 22-572, D.I. 1; No. 22-573, D.I. 1. Almost every week in this Courthouse we require ordinary citizens to make alternative childcare arrangements, put aside their family and job obligations, and forgo their daily wages to serve as jurors for the paltry sum of $50 per day (i.e., less than $10 per hour). *See* 28 U.S.C. § 1871. We do so because litigants in this Court have a constitutional right to a jury trial—a central tenet of our judicial system. Backertop's business model is to file or threaten to file suits in that judicial system. I think it neither unfair nor unduly burdensome to require the sole natural person affiliated with Backertop to incur $300 in travel costs and make alternative childcare arrangements for a single day to attend a court hearing in cases Backertop initiated in this Court.

For these reasons, I will not reconsider the decision to require Ms. LaPray to appear in person at the July 20 hearing and I will deny her request for leave to appear by videoconference.

## IV.

Backertop also cries foul that I "ha[ve] not articulated any basis for [the Court's] fraud allegation that was sprung on Backertop after the Court questioned [Ms. LaPray] at the [November 10, 2022] hearing" and for taking four months after Ms. LaPray testified at the November 10 hearing to issue an order requiring the production of documents. No. 22-572, D.I. 40-1 at 14; No. 22-573, D.I. 43-1 at 14.

As an initial matter, I have never alleged that Backertop— or any other entity or person associated with these cases or the other IP Edge-and Mavexar-related cases before me— committed fraud. I do, however, have serious concerns that Backertop may have made inaccurate statements in filings with the Court; that Backertop's counsel may have failed to comply with the Rules of Professional Conduct; that real parties in interest, such as IP Edge and Mavexar, may have been hidden from the Court and the defendants; and that those real parties in interest may have perpetrated a fraud on the court by fraudulently conveying the patents asserted in this Court to a shell LLC and filing fictious patent assignments with the PTO, all designed to shield the real parties in interest from the potential liability they would otherwise face by asserting in litigation the patents in question. I discussed

these concerns generally and briefly at both a November 4, 2022 hearing for other Mavexar-related cases attended by Mr. Chong and the November 10, 2022 hearing attended by Messrs. Chong and Burns and Ms. LaPray. I explained my concerns more fulsomely in *Nimitz*, 2022 WL 17338396, and *Backertop*, 2023 WL 3182084, and will not repeat those explanations here.

Backertop also takes issue with the fact that I did not order it to produce documents related to these stated concerns until four months after the November 10 hearing. *See* No. 22-572, D.I. 40-1 at 14 ("*Four (4) months* [after the November 10 hearing], the Court issued an order requiring the production of documents." (emphasis in original)); No. 22-573, D.I. 43-1 at 14 (same). There is irony in this criticism. As I explained in *Backertop*, I had stated during the November 10 hearing that I would issue a document production order, but I refrained from doing so when Nimitz—another LLC created by IP Edge and/or Mavexar—filed on November 16 a petition with the Federal Circuit for a writ of mandamus to vacate a document production order identical in all material respects to the order I was about to issue (and ultimately issued) in these cases. 2023 WL 3182084, at \*3–4. I thought at the time, and remain of the view, that it was appropriate not to issue the production order in these cases until after the Federal Circuit denied both Nimitz's petition for a writ of mandamus and its motion to stay the issuance of the mandate pending an appeal to the Supreme Court.

## V.

**\*7** Finally, Backertop criticizes this passage from the May 31, 2023 Memorandum Order:

> As it appears that Ms. LaPray may not currently be in communication with Backertop's counsel of record in these cases and because Ms. LaPray specifically cited her obligations as a paralegal for the Holmes Firm PC as one of the "reasons[ ] [she] do[es] not have the ability to travel to Delaware for this hearing in the foreseeable future," No. 22-572, D.I. 35-1 at 2; No. 22-573, D.I. 38-1 at 2, I will also provide Ronald L. Holmes, Esquire, the managing partner of the Holmes Firm, with a copy of this Memorandum Order and, to explain the situation at hand, copies of *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022) and the Memorandum Opinion and Order I issued on May 1 (No. 22-572, D.I. 32, 33; No. 22-573, D.I. 34, 35). Doing so will ensure that Ms.

LaPray receives notice of this Memorandum Order; and I suspect that Mr. Holmes will explain to Ms. LaPray that, contrary to the assertions in her declaration, his firm does not in fact "require [her] physical presence" somewhere other than Delaware "throughout the entire summer" such that she cannot attend a hearing before this Court.

No. 22-572, D.I. 37 at 6–7 (alterations in original); No. 22-573, D.I. 40 at 6–7 (same).

The record, however, fully supports this decision. Mr. Chong had represented to the Court that good cause existed to permit him to withdraw as counsel because he had been "unable to effectively communicate with Client in a manner consistent with good attorney-client relations." No. 22-572, D.I. 29 at 1–2; No. 22-573, D.I. 31 at 1–2. Backertop's other counsel of record, Mr. Burns, had told the clerk of the court that he "cannot represent the plaintiff any longer," and, further, that he "cannot get a response from" Mr. Chong. No. 22-572, D.I. 31 at 1; No. 22-573, D.I. 33 at 1. I inferred from these representations and the fact that Backertop opposed counsels' withdrawal requests that Ms. LaPray may not have been in communication with counsel. And, since Ms. LaPray specifically cited her law firm obligations as one of the reasons she was unavailable "for the foreseeable future," I deemed it appropriate to send copies of the May 31, 2023 Memorandum Order and related opinions and orders to Ms. LaPray's law firm to ensure that she received the Memorandum Order and, to the extent the firm was responsible for her unavailability, inform her firm of the situation so that it might make arrangements that would allow Ms. LaPray to attend a court hearing in these matters.

## VI.

At Mavexar's request, Ms. LaPray agreed to act as the sole owner and managing member of the LLC that filed these actions. She is the only natural person through whom that LLC can act. Filings in this Court by that LLC and other LLCs created by IP Edge and/or Mavexar and the conduct of counsel and persons associated with those LLCs and with IP Edge and/or Mavexar have given rise to numerous concerns, including whether statements in the filings are accurate, whether counsel for the LLCs complied with their ethical and professional obligations, whether real parties in interest may have been hidden from the Court and defendants, and whether the real parties in interest may have perpetrated frauds on the Court, the PTO, and certain defendants. The Federal Circuit

has ruled that these concerns "[a]ll ... relate[ ] to potential legal issues in the[se] case[s], subject to the principle of party presentation," and that I have not sought information related to those concerns "in order to serve an interest in public awareness, independent of the adjudicatory and court-functioning interests reflected in the stated concerns." *In re Nimitz Techs. LLC*, 2022 WL 17494845, at *2 (Fed. Cir. Dec. 8, 2022) (internal quotation marks and citation omitted).

**\*8** My May 31, 2023 Memorandum Order requires Ms. LaPray to attend a hearing on July 20, 2023 to address issues related to these concerns. Backertop has not demonstrated that that Memorandum Order rests on a clear error of law. Nor has it demonstrated that requiring Ms. LaPray to attend that hearing in person would be unfair or cause her undue hardship.

Accordingly, I will deny Backertop's motion for reconsideration and its request for leave to have Ms. LaPray appear by videoconference at the July 20, 2023 hearing.

The Court will enter an Order consistent with this Memorandum Opinion.

## APPENDIX

Ms. LaPray is identified in filings with the PTO as the managing member of at least six other LLCs—Bartonfalls LLC, Magnolia Licensing LLC, Mirage IP LLC, Burbank Technologies LLC, Sapphire Crossing LLC, and Tekvoke LLC. *See* No. 22-572, D.I. 44 at 3, D.I. 44-1 at 4, D.I. 44-2 at 3, D.I. 44-3 at 29, D.I. 44-4 at 7, D.I. 44-5 at 19, D.I. 44-6 at 4, D.I. 44-7 at 2; No. 22-573, D.I. 48 at 3, D.I. 48-1 at 4, D.I. 48-2 at 3, D.I. 48-3 at 29, D.I. 48-4 at 7, D.I. 48-5 at 19, D.I. 48-6 at 4, D.I. 48-7 at 2. These filings are available on and were downloaded from the PTO's online Patent Assignment Search Database, which "contains all recorded Patent Assignment information from August 1980 to the present." *See* Patent Assignment Search, USPTO, https://assignment.uspto.gov/patent/index.html#/patent/search (Under the "Quick Lookup" tab, choose to "Look up by" Assignee name, enter each LLC's name into the box labelled "Enter name or number," press search, click on the hyperlinked option under "Assignee name," and then click on the pdf image under the heading "Conveyance") (emphasis omitted). Ms. LaPray is also identified by name on each LLC's Public Information Report, which is available through the "Taxable Entity Search" on the Texas Comptroller of Public Accounts website.

2023 WL 4420467

*See* Taxable Entity Search, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, https://mycpa.cpa.state.tx.us/coa/search.do (enter each LLC's name in the "Entity Name" prompt, press search, click on the "details" link, and then go to the "Public Information Report" tab to see Ms. LaPray's name).

At least three of these LLCs appear to be affiliated with IP Edge and Mavexar. Backertop's patent assignment agreement was submitted to the PTO under the name Lori LaPray with an email address of linhd@ip-edge.com. No. 22-572, D.I. 44 at 1; No. 22-573, D.I. 48 at 1. This email address belongs to an IP Edge and/or Mavexar employee named Linh Deitz. *See* No. 22-572, D.I. 41 at 30:2–14, 55:10–21; No. 22-573, D.I. 44 at 30:2–14, 55:10–21; *Nimitz Techs. LLC v. CNET Media, Inc.*, 2022 WL 17338396, at *6, *11, *14–16, *18–20 (D. Del. Nov. 30, 2022). Magnolia's, Burbank's, and Tekvoke's patent assignment agreements were likewise submitted to the PTO under the name Lori LaPray with an email address of linhd@ip-edge.com. No. 22-572, D.I. 44-2 at 1, D.I. 44-3 at 24, D.I. 44-4 at 2, D.I. 44-7 at 1; No. 22-573, D.I. 48-2 at 1, D.I. 48-3 at 24, D.I. 48-4 at 2, D.I. 48-7 at 1.

A search for cases filed by these six LLCs in the United States Courts' CM/ECF system identified the following 97 patent infringement cases:

1. *Bartonfalls LLC v. Frontier Comm'ns Corp.*, No. 17-1836 (D. Del. filed Dec. 20, 2017).

2. *Bartonfalls LLC v.American Broad. Cos., Inc.*, No. 16-1126 (E.D. Tex. filed Oct. 11, 2016).

3. *Bartonfalls LLC v. Allrecipes.com, Inc.*, No. 16-1127 (E.D. Tex. filed Oct. 11, 2016).

**\*9** 4. *Bartonfalls LLC v. Bloomberg, L.P.*, No. 16-1128 (E.D. Tex. filed Oct. 11, 2016).

5. *Bartonfalls LLC v. CBS Interactive Inc.*, No. 16-1129 (E.D. Tex. filed Oct. 11, 2016).

6. *Bartonfalls LLC v. Turner Broad. Sys., Inc.*, No. 16-1130 (E.D. Tex. filed Oct. 11, 2016).

7. *Bartonfalls LLC v. Consumers Union ofUnited States, Inc.*, No. 16-1131 (E.D. Tex. filed Oct. 11, 2016).

8. *Bartonfalls LLC v. Discovery Comm'ns, Inc.*, No. 16-1132 (E.D. Tex. filed Oct. 11, 2016).

9. *Bartonfalls LLC v. Forbes, Inc.*, No. 16-1133 (E.D. Tex. filed Oct. 11, 2016).

10. *Bartonfalls LLC v. Advance Publ'ns, Inc.*, No. 16-1134 (E.D. Tex. filed Oct. 11, 2016).

11. *Bartonfalls LLC v. Scripps Networks Interactive, Inc.*, No. 16-1135 (E.D. Tex. filed Oct. 11, 2016).

12. *Bartonfalls LLC v. NBCUniversal MediaLLC*, No. 16-1136 (E.D. Tex. filed Oct. 11, 2016).

13. *Bartonfalls LLC v. Viacom, Inc.*, No. 16-1137 (E.D. Tex. filed Oct. 11, 2016).

14. *Bartonfalls LLC v. New York Times Co.*, No. 16-1138 (E.D. Tex. filed Oct. 11, 2016).

15. *Bartonfalls LLC v. Ziff-Davis LLC*, No. 16-1139 (E.D. Tex. filed Oct. 11, 2016).

16. *Bartonfalls LLC v. Armstrong Tel Co.*, No. 17-8596 (S.D.N.Y. filed Nov. 6, 2017).

17. *Bartonfalls LLC v. RCN Telecom Servs. LLC*, No. 17-11349 (D.N.J. filed Nov. 6, 2017).

18. *Mirage IP LLC v. AngioDynamics Inc.*, No. 17-377 (E.D. Tex. filed May 2, 2017).

19. *Mirage IP LLC v. Biotronik, Inc.*, No. 17-378 (E.D. Tex. filed May 2, 2017).

20. *Mirage IP LLC v. Cook Med. Techs., LLC*, No. 17-379 (E.D. Tex. filed May 2, 2017).

21. *Mirage IP LLC v. MicroVention, Inc.*, No. 17-380 (E.D. Tex. filed May 2, 2017).

22. *Mirage IP LLC v. Oscor Inc.*, No. 17-381 (E.D. Tex. filed May 2, 2017).

23. *Mirage IP LLC v. Spectranetics Corp.*, No. 17-382 (E.D. Tex. filed May 2, 2017).

24. *Mirage IP LLC v. St. Jude Med., Inc.*, No. 17-383 (E.D. Tex. filed May 2, 2017).

25. *Mirage IP LLC v. Stryker Corp.*, No. 17-384 (E.D. Tex. filed May 2, 2017).

26. *Burbank Techs. LLC v. CenTrak, Inc*, No. 21-1391 (D. Del. filed Sept. 29, 2021).

**APPX18**

27. *Burbank Techs. LLC v. Phyton, Inc.*, No. 21-1392 (D. Del. filed Sept. 29, 2021).

28. *Burbank Techs. LLC v. Abaco Sys., Inc.*, No. 21-1516 (D. Del. filed Oct. 27, 2021).

29. *Burbank Techs. LLC v. Dialog Semiconductor Inc.*, No. 21-1518 (D. Del. filed Oct. 27, 2021).

30. *Sapphire Crossing LLC v. Citizens Fin. Grp., Inc.*, No. 18-513 (D. Del. filed Apr. 4, 2018).

31. *Sapphire Crossing LLC v. Great W. Bancorp, Inc.*, No. 18-514 (D. Del. filed Apr. 4, 2018).

32. *Sapphire Crossing LLC v. Ibotta, Inc.*, No. 18-1716 (D. Del. filed Oct. 31, 2018).

33. *Sapphire Crossing LLC v. Robinhood Mkts., Inc.*, No. 18-1717 (D. Del. filed Oct. 31, 2018).

34. *Sapphire Crossing LLC v. Intuit Inc.*, No. 18-1856 (D. Del. filed Nov. 21, 2018).

35. *Sapphire Crossing LLC v. HealthEquity, Inc.*, No. 18-2072 (D. Del. filed Dec. 28, 2018).

36. *Sapphire Crossing LLC v. Kimberly-Clark Corp.*, No. 18-2073 (D. Del. filed Dec. 28, 2018).

37. *Sapphire Crossing LLC v. Visa Inc.*, No. 18-2074 (D. Del. filed Dec. 28, 2018).

38. *Sapphire Crossing LLC v. WEX Health, Inc.*, No. 18-2075 (D. Del. filed Dec. 28, 2018).

**\*10** 39. *Sapphire Crossing LLC v. Xero, Inc.*, No. 18-2076 (D. Del. filed Dec. 28, 2018).

40. *Sapphire Crossing LLC v. Kellogg Co.*, No. 19-415 (D. Del. filed Feb. 28, 2019).

41. *Sapphire Crossing LLC v Wage Works, Inc.*, No. 19-416 (D. Del. filed Feb 28, 2019).

42. *Sapphire Crossing LLC v. Netsmart Techs., Inc.*, No. 19-1401 (D. Del. filed July 29, 2019).

43. *Sapphire Crossing LLC v. Robinhood Mkts., Inc.*, No. 19-1402 (D. Del. filed July 29, 2019).

44. *Sapphire Crossing LLC v. Kofax, Inc.*, No. 20-149 (D. Del. filed Jan. 30, 2020).

45. *Sapphire Crossing LLC v. Expensify, Inc.*, No. 20-726 (D. Del. filed May 29, 2020).

46. *Sapphire Crossing LLC v. HubSpot, Inc*, No. 20-1134 (D. Del. filed Aug. 27, 2020).

47. *Sapphire Crossing LLC v. Infusion Software, Inc.*, No. 20-1135 (D. Del. filed Aug. 27, 2020).

48. *Sapphire Crossing LLC v. Sanson, Inc.*, No. 20-1136 (D. Del. filed Aug 27, 2020).

49. *Sapphire Crossing LLC v. Receipt Bank Ltd.*, No. 20-1308 (D. Del. filed Sept. 29, 2020).

50. *Sapphire Crossing LLC v. Neat Co., Inc.*, No. 20-1309 (D. Del. filed Sept. 29, 2020).

51. *Sapphire Crossing LLC v. Rydoo Inc.*, No. 21-296 (D. Del. filed Feb. 26, 2021).

52. *Sapphire Crossing LLC v. Shoeboxed Inc.*, No. 21-297 (D. Del. filed Feb 26, 2021).

53. *Sapphire Crossing LLC v. Wave Fin. USA Inc.*, No. 21-474 (D. Del. filed Mar. 30, 2021).

54. *Sapphire Crossing LLC v. Workday, Inc.*, No. 21-479 (D. Del. filed Mar. 31, 2021).

55. *Sapphire Crossing LLC v. Acumatica, Inc.*, No. 21-602 (D. Del. filed Apr. 28, 2021).

56. *Sapphire Crossing LLC v. Contacts Plus LLC*, No. 21-606 (D. Del. filed Apr. 29, 2021).

57. *Sapphire Crossing LLC v. Nagarro, Inc.*, No. 21-2781 (S.D.N.Y filed Mar. 31, 2021).

58. *Sapphire Crossing LLC v. Algoworks Sols., Inc.*, No. 19-4368 (N.D. Cal. filed July 30, 2019).

59. *Sapphire Crossing LLC v. Abbyy Prod. LLC*, No. 20-3590 (N.D. Cal. filed May 29, 2020).

60. *Sapphire Crossing LLC v. Evernote Corp.*, No. 20-3593 (N.D. Cal. filed May 29, 2020).

61. *Sapphire Crossing LLC v. Idatix Corp.*, No. 20-228 (M.D. Fla. filed Jan. 29, 2020).

62. *Sapphire Crossing LLC v. London Comput. Sys., Inc.*, No. 20-407 (S.D. Ohio filed May 21, 2020).

63. *Sapphire Crossing LLC v. Groupon, Inc.*, No. 18-7277 (N.D. Ill. filed Oct. 31, 2018).

64. *Sapphire Crossing LLC v. Concur Techs., Inc.*, No. 19-1442 (N.D. Ill. filed Feb. 28, 2019).

65. *Sapphire Crossing LLC v. Invs. Bancorp, Inc.*, No. 18-5527 (D.N.J. filed Apr. 5, 2018).

66. *Sapphire Crossing LLC v. Lakeland Bancorp, Inc.*, No. 18-5528 (D.N.J. filed Apr. 5, 2018).

67. *Sapphire Crossing LLC v. ValleyNat'l Bancorp*, No. 18-5529 (D.N.J. filed Apr. 5, 2018).

68. *Sapphire Crossing, LLC v. NPD Grp, Inc.*, No. 18-7263 (E.D.N.Y. filed Dec. 20, 2018).

69. *Sapphire Crossing LLC v. Blackhawk Bancorp, Inc.*, No. 18-291 (W.D. Wis. filed Apr. 23, 2018).

70. *Sapphire Crossing LLC v. Woodford Bancshares, Inc.*, No. 18-293 (W.D. Wis. filed Apr. 23, 2018).

71. *Tekvoke LLC v. Dialogtech Inc.*, No. 20-452 (D. Del. filed Mar. 31, 2020).

72. *Tekvoke LLC v. Fuze, Inc.*, No. 20-453 (D. Del. filed Mar. 31, 2020).

73. *Tekvoke LLC v. Grandstream Networks, Inc.*, No. 20-454 (D. Del. filed Mar. 31, 2020).

**\*11** 74. *Tekvoke LLC v. Voyant Comm'ns, LLC*, No. 20-455 (D. Del. filed Mar. 31, 2020).

75. *Tekvoke LLC v. Cable One, Inc.*, No. 21-440 (D. Del. filed Mar. 25, 2021).

76. *Tekvoke LLC v. Jive Software, Inc.*, No. 21-487 (D. Del. filed Mar. 31, 2021).

77. *Tekvoke LLC v. Essensys, Inc.*, No. 21-1100 (D. Del. filed July 29, 2021).

78. *Tekvoke LLC v. FirstLight Fiber, Inc.*, No. 21-1101 (D. Del. filed July 29, 2021).

79. *Tekvoke, LLC v. Digium, Inc.*, No. 19-2205 (D. Del. filed Nov. 26, 2019).

80. *Tekvoke, LLC v. Vonage Holdings Corp.*, No. 19-2206 (D. Del. filed Nov. 26, 2019).

81. *Tekvoke, LLC v. Syndeo,LLC*, No. 20-1475 (D. Del. filed Oct. 29, 2020).

82. *Tekvoke, LLC v. WindstreamHoldings, Inc.*, No. 20-1476 (D. Del. filed Oct. 29, 2020).

83. *Tekvoke, LLC v Yeastar USA, Inc.*, No. 20-1477 (D. Del. filed Oct. 29, 2020).

84. *Tekvoke, LLC v. IDT Corp.*, No. 20-1772 (D. Del. filed Dec. 28, 2020).

85. *Tekvoke, LLC v. AireSpring, Inc.*, No. 21-259 (D. Del. filed Feb. 23, 2021).

86. *Tekvoke, LLC v. Intrado Corp.*, No. 21-260 (D. Del. filed Feb. 23, 2021).

87. *Tekvoke LLC v. Teo Comm'nsInc*, No. 21-1018 (W.D. Wash. filed July 29, 2021).

88. *Tekvoke LLC v. Cincinnati Bell Tech. Sols. LLC*, No. 21-344 (S.D. Ohio filed May 20, 2021).

89. *Tekvoke LLC v. Block Comm'ns, Inc.*, No. 21-422 (N.D. Ohio filed Feb. 23, 2021).

90. *Tekvoke LLC v. Genesys Telecomms. Lab'ys., Inc.*, No. 20-7645 (N.D. Cal. filed Oct. 30, 2020).

91. *Tekvoke, LLC v. Brekeke Software, Inc.*, No. 20-9482 (N.D. Cal. filed Dec. 31, 2020).

92. *Tekvoke, LLC v. Dialpad, Inc.*, No. 19-7733 (N.D. Cal. filed Nov. 24, 2019).

93. *Tekvoke, LLC v. 8×8, Inc.*, No. 19-7734 (N.D. Cal. filed Nov. 24, 2019).

94. *Tekvoke, LLC v. RingCentral, Inc.*, No. 19-7735 (N.D. Cal. filed Nov. 24, 2019).

95. *Tekvoke LLC v. Nextiva Inc.*, No. 20-2473 (Arizona filed Dec. 23, 2020).

96. *Tekvoke, LLC v. 3CX USA Corp.*, No. 20-721 (M.D. Fla. filed Mar. 27, 2020).

97. *Tekvoke, LLC v. PayG, LLC*, No. 20-722 (M.D. Fla. filed Mar. 27, 2020).

Backertop Licensing LLC v. Canary Connect, Inc., Slip Copy (2023)

2023 WL 4420467

**All Citations**

Slip Copy, 2023 WL 4420467

## Footnotes

1    *Backertop Licensing LLC v. BlackBerry Corp.*, No. 22-1013 (W.D. Tex. filed Sept. 29, 2022); *Backertop Licensing LLC v. JAMF Software LLC*, No. 22-1015 (W.D. Tex. filed Sept. 29, 2022); *Backertop Licensing LLC v. Lightspeed Sols., LLC*, No. 22-1018 (W.D. Tex. filed Sept. 29, 2022); *Backertop Licensing LLC v. Wyze Labs, Inc.*, No. 22-570 (D. Del. filed Apr. 28, 2022); *Backertop Licensing LLC v. Canary Connect, Inc*, No. 22-572 (D. Del. filed Apr. 28, 2022); *Backertop Licensing LLC v. August Home, Inc.*, No. 22-573 (D. Del. filed Apr. 28, 2022); *Backertop Licensing LLC v. Hampton Prods. Int'l Corp.*, No. 22-574 (D. Del. filed Apr. 28, 2022); *Backertop Licensing LLC v. Condeco Software, Inc.*, No. 22-10141 (S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing LLC v. Justworks, Inc.*, No. 22-10142 (S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing LLC v. Cortado, Inc.*, No. 22-2550 (D. Colo. filed Sept. 30, 2022); *Backertop Licensing, LLC v. Exaktime Innovations, Inc.*, No. 22-8571 (C.D. Cal. filed Nov. 23, 2022); *Backertop Licensing, LLC v. Fantasia Trading LLC*, No. 22-2081 (C.D. Cal. filed Nov. 23, 2022).

2    The transcript of the June 8 hearing can be found at: No. 22-572, D.I. 41; No. 22-573, D.I. 44.

3    Though titled "May 22, 2023 to June 19, 2023," the exhibit lists proceedings that occurred from May 22 through June 16.

4    The arriving flight is Spirit Airlines 263, and the returning flight is Spirit Airlines 262. The full URL is: https://www.expedia.com/Flight-Information? journeyContinuationId=AQrrAQrVAXY1LXNvcy0wNCc1ZTdkOTA4ZDk3ZTAyNDY5NTE3NWE1MzU5ZjY0C0wLTAtM QVFvQ0NBRVNCd2pVQkJBQkdkdBRW9BbGddDY0FBfkFRb2*/DaUFJenBZQkVnTXIOak1ZbzdFQklPOVpLT1hCc2dJd3I4 %3D.

5    Four of Backertop's 12 known patent infringement cases were not filed until after the November 10 hearing. *See Backertop Licensing LLC v. Condeco Software, Inc.*, No. 22-10141 (S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing LLC v. Justworks, Inc.*, No. 22-10142 (S.D.N.Y. filed Nov. 29, 2022); *Backertop Licensing, LLC v. Exaktime Innovations, Inc.*, No. 22-8571 (C.D. Cal. filed Nov. 23, 2022); *Backertop Licensing, LLC v. Fantasia Trading LLC*, No. 22-2081 (C.D. Cal. filed Nov. 23, 2022). As of November 10, 2022, two of the four cases Backertop filed in this Court had settled. *See Backertop Licensing LLC v. Wyze Labs, Inc.*, No. 22-570 (D. Del. closed Aug. 23, 2022); *Backertop Licensing LLC v. Hampton Prods. Int'l Corp.*, No. 22-574 (D. Del. closed Aug. 8, 2022).

6    The filing fee for a non-habeas civil action brought in a federal district court is $350, 28 U.S.C. § 1914(a) and the administration fee is $52, *District Court Miscellaneous Fee Schedule*, United States Courts (Dec. 1, 2020), https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BACKERTOP LICENSING LLC,          )
                                  )
            Plaintiff,            )
                                  )
      v.                          )     Civil Action No. 22-572-CFC
                                  )
CANARY CONNECT, INC.,             )
                                  )
            Defendant.            )

---

BACKERTOP LICENSING LLC,          )
                                  )
            Plaintiff,            )
                                  )
      v.                          )     Civil Action No. 22-573-CFC
                                  )
AUGUST HOME, INC.,                )
                                  )
            Defendant.            )

---

**<u>ORDER</u>**

At Wilmington on this Tenth day of July in 2023:

For the reasons set forth in the Memorandum Opinion issued this day, it is

**HEREBY ORDERED** that Plaintiff's Motion for Reconsideration of the Court's

May 31, 2023 Order and Leave for Ms. Lori LaPray to Appear at the Court's July

20, 2023 Hearing via Videoconference (No. 22-572, D.I. 40; No. 22-573, D.I. 43) is

**DENIED**.

_____
CHIEF JUDGE

2

**APPX23**

Exhibit D

2023 WL 5348827
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.

BACKERTOP LICENSING LLC, Plaintiff,

v.

CANARY CONNECT, INC., Defendant.
Backertop Licensing LLC, Plaintiff,

v.

August Home, Inc., Defendant.

Civil Action No. 22-572-CFC,
Civil Action No. 22-573-CFC
|
Signed August 21, 2023

**Attorneys and Law Firms**

David L. Finger, FINGER & SLANINA, LLC, Wilmington, Delaware; Jimmy C. Chong, CHONG LAW FIRM, PA, Wilmington, Delaware; Ronald W. Burns, Frisco, Texas, Counsel for Plaintiff Backertop Licensing LLC

David L. Finger, FINGER & SLANINA, LLC, Wilmington, Delaware, Counsel for Lori LaPray

Alan Richard Silverstein, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Mark K. Suri, HINSHAW & CULBERTSON LLP, Chicago, Illinois, Counsel for Defendant Canary Connect, Inc.

Jeremy Douglas Anderson, FISH & RICHARDSON, P.C., Wilmington, Delaware; Ricardo J. Bonilla, FISH & RICHARDSON, P.C., Dallas, Texas, Counsel for Defendant August Home, Inc.

**MEMORANDUM OPINION**

COLM F. CONNOLLY, CHIEF JUDGE

**\*1** I held on August 1, 2023 a hearing to provide Plaintiff Backertop Licensing LLC and its sole member and owner, Ms. Lori LaPray, an opportunity to show cause as to why Ms. LaPray should not be held in civil contempt for refusing to comply with a May 31, 2023 Memorandum Order requiring Ms. LaPray to appear at a hearing held on July 20, 2023 and for what Backertop and Ms. LaPray characterize as their "declin[ing] to participate further" in these proceedings, No.

22-572, D.I. 48 at 19; No. 22-573, D.I. 52 at 19.[1] I had ordered Ms. LaPray to appear on July 20 "to address at least Mr. Chong's motion to withdraw [as counsel for Backertop] and the document production made by Backertop on May 9[, 2023]." D.I. 37 at 8 (citations omitted). The reasons that gave rise to that order are set forth in detail in my May 1, 2023 Memorandum Opinion;[2] May 31, 2023 Memorandum Order;[3] July 10, 2023 Memorandum Opinion;[4] and *Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396 (D. Del. Nov. 30, 2022), all of which I incorporate herein.

Ms. LaPray did not appear at the August 1 hearing. D.I. 55 at 4:2–5. Backertop's newly added counsel, Mr. David Finger, stated at that hearing that "these proceedings should not be going forward" and that Backertop and Ms. LaPray would "stand on" the arguments set forth in the Motion to Dismiss Contempt Proceeding (the Motion) they filed on July 28, 2023 (D.I. 54). D.I. 55 at 3:8–4:1.

I.

None of the arguments made in the Motion provides good cause for Ms. LaPray's refusal to comply with the May 31, 2023 Memorandum Order and to participate further in these proceedings.

**\*2** The principal argument of the Motion is that I "lack[ ] authority to pursue this contempt proceeding" because "the underlying proceedings are moot" due to "Backertop voluntarily dismiss[ing] its complaints in September 2022, and Backertop and the Defendants fil[ing] joint stipulations of dismissal in April 2023 and June 2023." D.I. 54 at 1–4 (some capitalization omitted) (footnote omitted). Although a "nonparty witness may defend against a civil contempt adjudication by challenging the subject-matter jurisdiction of the district court," *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 74 (1988), I already rejected Backertop and Ms. LaPray's mootness argument in the May 1, 2023 Memorandum Opinion. As I explained in relevant part there:

"It is well established that a federal court may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)....

The Court specifically held in *Cooter* that a voluntary dismissal under Rule 41(a)(1) does not deprive a district

court of jurisdiction over a Rule 11 motion. *Id.* at 398. But as the Third Circuit (whose law governs this Court's exercise of its inherent powers) recognized in *Haviland v. Specter*, 561 F. App'x 146, 150 (3d Cir. 2014), there is no "principled reason why the Court's decision [in *Cooter*] would not apply equally to sanctions imposed pursuant to a district court's inherent authority."

What I said in *Nimitz* bears repeating here:

> "It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.' " *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.' " *Id.* (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).
>
> The Supreme Court has expressly held that a federal court's inherent powers include the powers I have exercised here: "the power to control admission to its bar and to discipline attorneys who appear before it," *id.*, the power to enforce compliance with court orders, *see id.*, and "the power to conduct an independent investigation in order to determine whether [the court] has been the victim of fraud." *Id.* at 44. These powers extend to nonparties. *See Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) ("No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct."); *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) ("[E]ven in the absence of statutory authority, a court may impose attorney's fees against a nonparty as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices." (citations omitted)).

*Nimitz*, 2022 WL at 17338396 (alterations in the original).

It makes no sense that a party could deprive a court of its inherent powers simply by filing a notice (or stipulation) of dismissal. *Haviland*, 561 F. App'x at 150. To hold otherwise would render district courts impotent to manage their cases

in an orderly fashion and would foster abuse of our judicial system by unethical litigants and their attorneys.

*Backertop*, 2023 WL 3182084, at *4–5 (D. Del. May 1, 2023) (all but first alteration in original) (footnote omitted).

Backertop and Ms. LaPray insist in their Motion that civil contempt is "meant to benefit the complainant," and they seem to suggest that a court lacks the authority to impose *sua sponte* civil contempt sanctions. D.I. 54 at 1–2. But as the Supreme Court held in *Shillitani v. United States*, 384 U.S. 364 (1966):

> There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt. And it is essential that courts be able to compel the appearance and testimony of witnesses.... Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance. The conditional nature of the imprisonment —based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury, provided that the usual due process requirements are met.

*Id.* at 370–71 (citations and footnotes omitted). Thus, "it is ... not necessary that a party—as opposed to the court—raise the concerns that necessitate the exercise of the court's inherent powers." *Backertop*, 2023 WL 3182084, at *6 (D. Del. May 1, 2023). "As the Supreme Court held in the seminal case, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944), 'it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants.' " *Id.*

**\*3** Backertop and Ms. LaPray also argue that the order compelling Ms. LaPray to attend the July 20 hearing is invalid and that "[c]ourt orders that are transparently invalid ... need not be obeyed and can be challenged in a contempt

**APPX25**

2023 WL 5348827

proceeding." D.I. 54 at 4. On the contrary, as the Supreme Court held in *Maggio v. Zeitz*, 333 U.S. 56 (1948):

> It would be a disservice to the law if we were to depart from the long-standing rule that a [civil[6]] contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy. The procedure to enforce a court's order commanding or forbidding an act should not be so inconclusive as to foster experimentation with disobedience. Every precaution should be taken that orders issue ... only after legal grounds are shown and only when it appears that obedience is within the power of the party being coerced by the order. But when it has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place.

*Id.* at 69 (citations omitted); *see also Marshak v. Treadwell*, 595 F.3d 478, 486 (3d Cir. 2009) ("As we have frequently stated, a party who is alleged to be in contempt of a court order may not challenge the substantive merits of that order within contempt proceedings."); *Harris v. City of Philadelphia*, 47 F.3d 1311, 1326 (3d Cir. 1995) ("The validity of the underlying order is not open to consideration" in a civil contempt proceeding.). As made clear in the May 1, 2023 Memorandum Opinion; the May 31, 2023 Memorandum Order; the July 10, 2023 Memorandum Opinion; and *Nimitz*, I took "every precaution" in the instant actions to ensure that I had jurisdiction and sufficient legal grounds to order Ms. LaPray to attend the July 20, 2023 hearing. Accordingly, that order's "alleged infirmities cannot be relitigated or corrected in a subsequent contempt proceeding." *Maggio*, 333 U.S. at 69.

Backertop and Ms. LaPray also argue that "failure to vacate the proceedings would violate Backertop and Ms. LaPray's due process rights." D.I. 54 at 3. But they do not cite any legal authority in support of this assertion or explain why

compelling Ms. LaPray to attend a hearing deprives her or Backertop of due process.

Backertop and Ms. LaPray insinuate that I violated their Fifth Amendment due process rights by not apprising them of their "rights as regards to criminal proceedings." I say this because they fault me for "rais[ing] the possibility of fraud on the court, a criminal offense, without first advising either Backertop or Ms. LaPray of her [sic] rights as regards to criminal proceedings." D.I. 54 at 6; *see also* D.I. 54 at 8 ("This Court has been compelling Backertop and Ms. LaPray to provide testimonial and documentary evidence without advising them *of their* [sic] rights in the face of a possible criminal prosecution." (emphasis added)). Backertop and Ms. LaPray do not identify what "rights as regards to criminal proceedings" they have in mind. The only "advice of rights" obligation that comes to my mind is the requirement under *Miranda v. Arizona* that law enforcement officers inform the subject of a custodial interrogation of the subject's Fifth Amendment privilege against self-incrimination and the right to have an attorney present during the interrogation. 384 U.S. 436, 444 (1966). Putting aside the fact that Backertop, as a corporate entity, does not enjoy a Fifth Amendment right against compelled self-incrimination, *Braswell v. United States*, 487 U.S. 99, 104 (1988), "*Miranda* warnings are not required in civil court proceedings," *United States v. Rodriguez*, 70 F.3d 121, 121 (9th Cir. 1995); *see also United States v. Kilgroe*, 959 F.2d 802, 805 (9th Cir. 1992) ("[E]xcept in the context of custodial interrogation, *Miranda* leaves the responsibility for keeping a citizen informed of his constitutional rights with the preeminent guardian of those rights: the citizen himself."). In any event, even *if Miranda* were somehow violated here (as silly as it sounds to say that), "a violation of *Miranda* is not itself a violation of the Fifth Amendment," *Vega v. Tekoh*, 142 S. Ct. 2095, 2108 (2022), and the sole remedy for a *Miranda* violation is the suppression of the defendant's statements and the fruits thereof in criminal cases.

**\*4** Backertop and Ms. LaPray's "failure to advise" argument is also moot. Because, as I have previously stated, I am concerned about who the real parties in interest are in these cases and who actually controls Backertop, I had planned on informing Ms. LaPray before questioning her at the July 20 hearing and will inform Ms. LaPray before questioning her at any future hearing that she has a right to have an attorney represent her personally (as opposed to Backertop) in these matters. And because, as I have previously stated, I am concerned about the possibility that real parties in interest

such as Mavexar and IP Edge may have perpetrated a fraud on the court, I had also planned on telling Ms. LaPray at the July 20 hearing and will tell her before questioning her at any future hearing that she has a Fifth Amendment right to refuse to answer any question if she " 'reasonably believes' her testimony 'could be used in a criminal prosecution or could lead to other evidence that might be so used.' " *United States v. Morton*, 993 F.3d 198, 203 (3d Cir. 2021) (quoting *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972)). [6]

Finally, Backertop and Ms. LaPray argue that "[i]f the hearing is to go forward, it must be with another judge" because I "cannot serve as both investigator and judge." D.I. 54 at 10–11 (emphasis omitted). In support of this contention, they cite *In re Murchison*, 349 U.S. 133 (1955), for the proposition that "[t]here is a presumption of bias when a judicial decision maker has the dual role of investigating and adjudicating disputes and complaints." D.I. 54 at 10. *Murchison*, however, does not stand for this broad conclusion. Instead, "its holding, as opposed to dicta, is confined to the basic constitutional principle of prohibiting a judge from adjudicating a case where he was also *an investigator for the government*" *Johnson v. Carroll*, 369 F.3d 253, 260 (3d Cir. 2004) (emphasis added). I am, of course, not acting as an investigator for the government.

*Murchison* is also not relevant here because it addressed criminal contempt, not civil contempt. The Court held in *Murchison* that a state judge, empowered under Michigan law to sit as a "one-man grand jury" and to compel witnesses to testify before him in secret about possible crimes, violated the due process clause of the Fourteenth Amendment when he "charged two such witnesses with criminal contempt, one for perjury and the other for refusing to answer certain questions, and then himself tried and convicted them." *Withrow v. Larkin*, 421 U.S. 35, 53 (1975) (citing *Murchison*, 349 U.S. at 138). Unlike criminal contempt proceedings, "civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994).

**\*5** This proceeding is a civil contempt proceeding because its purpose is to coerce Ms. LaPray into complying with an order to appear in person and answer questions related to Mr. Chong's withdrawal motion and Backertop's document production. *See* D.I. 53 at 8:22–25. As the Third Circuit explained in *United States v. Harris*, 582 F.3d 512 (3d Cir. 2009):

Civil contempt orders are intended to be coercive or compensatory in nature, and do not require, *inter alia*, a jury trial. Rather, civil contempt is imposed by the judge upon a finding that one has failed to comply with a valid court order. *See Shillitani v. United States*, 384 U.S. 364, 370–71, 86 S. Ct. 1531, 16 L.Ed.2d 622 (1966) ("The conditional nature of the imprisonment— based entirely upon the contemnor's continued defiance —justifies holding civil contempt proceedings absent the safeguards of indictment and jury, provided that the usual due process requirements are met.") (internal citations and quotations omitted); *Bagwell*, 512 U.S. at 827, 114 S. Ct. 2552 ("[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required.").

With civil contempt, the contemnor will be released subject to compliance with some condition. He is thus understood, in a by-now familiar observation, to "carr[y] the keys of his prison in his own pocket." *Bagwell*, 512 U.S. at 828, 114 S. Ct. 2552 (internal citations and quotations omitted).

*Id.* at 514–15 (alterations in original).

To sum up, then: Backertop and Ms. LaPray have not demonstrated good cause to justify Ms. LaPray's refusal to attend the July 20 hearing and future hearings. And, as it is undisputed that Ms. LaPray was given notice of the August 1 show-cause hearing and an opportunity to be heard, I will find her in civil contempt. *See Bagwell*, 512 U.S. at 827 (Civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."); *Harris v. City of Philadelphia*, 47 F.3d 1311, 1322 (3d Cir. 1995) ("For an indirect contempt, such as failure to obey a court order, it is appropriate to give notice by an order to show cause and to hold a hearing.").

## II.

Courts are given wide discretion to craft appropriate sanctions for civil contempt. *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992). "The paradigmatic coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command ....' " *Bagwell*, 512 U.S. at

828 (citations omitted). But another appropriate sanction is a fine that can be avoided if the contemnor performs the act required by the court. *Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990). In exercising its discretion, the Court must "inevitably ... engage in a fair amount of 'judgment calling' based upon its experience with the case." *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989).

At this stage, I believe a fine is the appropriate sanction, as I am hopeful the avoidance of having to pay a fine will provide sufficient motivation for Ms. LaPray to change her mind and comply with the order to appear in this Court for questioning. A fine also comports with the principle that "in contempt proceedings courts should never exercise more than 'the least possible power adequate to the end proposed.' " *United States v. United Mine Workers of Am.*, 330 U.S. 258, 332 (1947) (Black, J., concurring in part and dissenting in part) (quoting *Anderson v. Dunn*, 6 Wheat. 204, 231 (1821); *In re Michael*, 326 U.S. 224, 227 (1945)).

"[I]n fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, [a court should] consider the amount of [the contemnor's] financial resources and the consequent seriousness of the burden to that particular [contemnor]." *United Mine Workers*, 330 U.S. at 304. The record here offers little evidence with respect to Ms. LaPray's financial resources. When I asked Backertop's counsel at the August 1 hearing about Ms. LaPray's finances and salary, he said he could only "glean" that she was "not of great means." D.I. 55 at 4:10–24. We know from the record that Ms. LaPray is a full-time paralegal in Dallas, Texas. D.I. 40-3 ¶¶ 4, 6. It appears that paralegal salaries in Dallas, Texas range from $44,795 to $118,286 with an average salary between $67,715 and $88,521.[9] As of November 10, 2022, approximately $2,000 of the proceeds from Backertop's lawsuits had been deposited into Ms. LaPray's personal bank account. D.I. 24 at 35:3–19. Ms. LaPray may or may not earn additional income from her work as the chairwoman of the Dallas GOP. D.I. 24 at 12:19–22. Her husband is a lawyer, and he also works to support their family. D.I. 40-3 ¶ 7; D.I. 24 at 13:10–14:10.

**\*6** Given these circumstances, I find that a $200 per day fine is appropriate and will impose that fine against Ms. LaPray starting August 23, 2023. Beginning on that date, Ms. LaPray will be fined $200 every day that the Court is open and Ms. LaPray does not appear in court. Ms. LaPray can purge her contempt by notifying the Court that she is prepared to appear

at a hearing and then attending that hearing in person. (After Ms. LaPray notifies the Court that she is prepared to appear in person at a hearing, the Court will endeavor to promptly schedule that hearing.)

### III.

As noted above, an alleged contemnor cannot challenge the validity of the underlying order within the civil contempt proceeding. Nonetheless, most of the arguments set forth in Backertop and Ms. LaPray's Motion focus on the validity of the underlying order. Because these arguments are irrelevant to the issue before me, I have largely ignored them. But I think it prudent to address two of the more misleading arguments Backertop and Ms. LaPray make with respect to the validity of the underlying order.

First, Backertop and Ms. LaPray purport to quote from *Kisor v. Wilkie*, 139 S. Ct. 2400, 2413 (2019), the statement that "[c]ourts cannot conduct factual investigations." *See* D.I. 54 at 5. There is, however, no such statement in *Kisor*. What Justice Kagan actually wrote on page 2413 of *Kisor* is: "Agencies (unlike courts) can conduct factual investigations, can consult with affected parties, can consider how their experts have handled similar issues over the long course of administering a regulatory program." 139 S. Ct. at 2413 (plurality opinion). Putting aside the fact that Justice Kagan was not writing for a majority of the Court when she wrote this sentence, Justice Kagan was speaking here of "factual investigations" in the context of policy-driven fact finding that federal agencies (and not courts) engage in before promulgating regulations. As she noted in the immediately preceding sentences in her opinion: "Congress ... is attuned to the comparative advantages of agencies over courts in making such policy judgments. Agencies (unlike courts) have unique expertise, often of a scientific or technical nature, relevant to applying a regulation to complex or changing circumstances." *Id.* (internal quotation marks and citations omitted). To be clear, Justice Kagan was not saying in her plurality opinion in *Kisor* that courts are prohibited from conducting factual inquiries. And in any event, a majority of the Supreme Court explicitly held in *Chambers v. NASCO, Inc.* that "a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." 501 U.S. 32, 44 (1991).

Second, Backertop and Ms. LaPray accuse me of improperly reading in open court from "documents Backertop had

classified as subject to the attorney-client privilege." D.I. 54 at 7. In an earlier filing, incorporated by reference in the Motion, Backertop and Ms. LaPray made the same accusation and further stated that my reading of the documents was "in direct contradiction to the Court's representations to the Federal Circuit that it would keep such documents *in camera*" and had "den[ied] Backertop the opportunity to appeal a ruling on privilege prior to such public disclosure." D.I. 48 at 17.

 *7 As an initial matter, none of the documents from which I read in open court on June 8 and July 20 are privileged. Second, I read from the documents in the presence of, and—except for one instance—without objection from, Backertop's counsel. [8] *See* D.I. 41 at 13–28 (June 8 hearing exhibit 1 discussion), 28–41, 43–52 (exhibit 2), 41–43, 46–47 (exhibit 3), 54–63 (exhibit 4), 62–74 (exhibit 5), D.I. 53 at 12:3–15:24 (July 20 hearing document discussion). The only time counsel objected to the reading in open court of a document occurred during the July 20 hearing when I questioned counsel about documents that appeared to be missing from Backertop's production:

> THE COURT: So, for instance, there is, in the document production that we just got from you within the last hour. I realize you may have filed it yesterday or instructed deliverers yesterday, but we didn't get it until a few minutes ago. But just quickly looking at it, there's at least two instances I saw that have a link to a lockbox of documents that apparently were provided to Ms. LaPray by Mavexar-type people. I didn't see the contents of the lockbox in here.

> MR. CHONG: Lockbox?

> THE COURT: Yeah. Did I say lockbox? That's my, sorry, my age showing. A Dropbox.

> MR. CHONG: Oh, a Dropbox.

> THE COURT: Let me give you another example. You've got — and you've designated this confidential. The very first document is the agreement between your law firm, right, and Backertop. You've produced these same agreements during hearings with no assertion of privilege, how is that privileged here?

> MR. CHONG: They were produced — when they were previously produced — and I have to go back and check the records — my understanding was that we were producing everything under privilege, and that's why they were not filed.

> THE COURT: But you've introduced this at a hearing in front of me. Right. You actually put up the letter. And there was no objection. No?

> MR. CHONG: I would have to recall that. I mean, I would like to go back and look into that. I believe — I don't — I don't recall off the top of my head.

> THE COURT: Okay, then let's tackle this. Then I've got a copy of an engagement letter. There is no cover e-mail. There is nothing that you would expect to see as to how this document got transported between your law firm and Ms. LaPray, how signatures got on it, right. In your production, there's nothing attached to that. I mean, do you remember how you ended up getting in Ms. LaPray's hands an engagement letter, how it was executed by her, how you got it back? Do you remember anything about that?

> MR. CHONG: I don't. I mean, I produced everything — I went through my search on my e-mail, and everything that was on my search, I produced. I don't recall specifically. I don't, Your Honor.

> THE COURT: All right. Well, then, you know, when I look at — do you have this production in front of you by any chance?

> MR. CHONG: Yes, Your Honor.

> THE COURT: So, like, if you turn to Page 26. There's an e-mail there from you to Mr. Burns. It says, "attachment image 1, image 2." I don't see them in here. At least I don't think I do.

> MR. CHONG: I think that's just his — his firm logo.

> THE COURT: Okay.

> MR. CHONG: That's the attachment is his firm logo.

> THE COURT: All right. Then turn to the next page, Page 28, here's the Dropbox, right? Folks from IP Edge are informing Mr. Burns that here's the link to the Dropbox that Backertop has with –

> MR. CHONG: I guess, so this information, I think — I believe this is attorney/client privilege, and I think at this point, if we were to discuss this, I think if we could seal the courtroom, and we could –

> THE COURT: I'm not going to seal the courtroom. I haven't discussed anything that could reasonably be characterized

APPX29

as attorney/client privilege. All I'm talking about is a link to a Dropbox. That's it. I'm not asking about the content of the Dropbox, and I'm not going to seal the courtroom. All I want to know is, can you tell me where the documents located in the Dropbox are? Were they produced? That's all I'm looking for.

MR. CHONG: I guess I would have to go and see if that link is still active. I don't know.

THE COURT: So you don't know. So it doesn't sound like you're in a position to say that you really have done anything other than obtain oral confirmation from Ms. LaPray that Backertop's document production is complete; is that fair?

MR. CHONG: From Ms. LaPray, Mr. Burns, Mavexar. And I had, you know, went through the attachments as of the last hearing and produced the attachments from my e-mails that I had in my possession. And other than that, I don't have access to their Internet system, so I cannot access their Internet system, so I can just only produce what I have and ask them.

THE COURT: All right. But you've produced all the attachments to the e-mails that you've produced; is that fair?

MR. CHONG: Yes, that is correct.

D.I. 53 at 12:3–15:24. Clearly, there was no disclosure of privileged communications during this colloquy with counsel.

**8** Third, I never "represent[ed] to the Federal Circuit that [I] would keep [documents produced by Backertop or any other entity] *in camera*." D.I. 48 at 17.

Fourth, and finally, I did not "deny[ ] Backertop the opportunity to appeal a ruling on privilege prior to" reading from its documents in court. D.I. 48 at 17. But in any event, a party is not entitled to appeal an adverse ruling on privilege before a district court makes public documents or testimony that are manifestly not privileged. If a party were so entitled, then the judicial system would grind to a halt, as discovery, depositions, trials, and hearings would be put on hold every time a court overruled a privilege objection. I recognize that in certain circumstances—such as where the privilege determination is a close call or a matter of first impression— a stay may be appropriate to allow a party to seek mandamus review of a privilege ruling. But I have yet to be presented with such circumstances in these cases.

### IV.

For the reasons discussed above, I will find Ms. LaPray in civil contempt of court and sanction her to a $200 per day fine until Ms. LaPray appears in person in court.

The Court will enter an appropriate order.

**All Citations**

Slip Copy, 2023 WL 5348827

### Footnotes

1    Backertop's filings are identical in both actions. Unless otherwise noted, all citations to Backertop's filings that follow are from Civil Action No. 22-572.

2    D.I. 32 (also found at *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 3182084 (D. Del. May 1, 2023)).

3    D.I. 37 (also found at *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 3736766, at *1 (D. Del. May 31, 2023), *reconsideration denied*, 2023 WL 4420467 (D. Del. July 10, 2023)).

4    D.I. 45 (also found at *Backertop Licensing LLC v. Canary Connect, Inc.*, 2023 WL 4420467, at * 1 (D. Del. July 10, 2023)).

APPX30

2023 WL 5348827

6    The Court expressly stated in *Maggio* that the matter before it was a "civil contempt proceeding to coerce obedience." 333 U.S. at 67.

6    Under Third Circuit law, a witness cannot make a blanket invocation of the Fifth Amendment privilege but must instead assert the privilege on a question-by-question basis so that the court can assess the propriety of invoking the privilege against specific circumstances and questions. *Nat'l Life Ins. Co. v. Hartford Accident & Indem. Co.*, 615 F.2d 595, 596 (3d Cir. 1980).

9    *See Paralegal Salary in Dallas*, TX, Salary.com, https://www.salary.com/research/salary/general/paralegal-sdary/dallas-tx (range from $58,766 to $118,286 with an average of $88,521); *Paralegal Salary in Dallas, TX*, Indeed.com, https://www.indeed.com/career/paralegal/salaries/Dallas—TX (range from $44,795 to $102,362 with an average of $67,715).

8    Exhibit 5 from the June 8 hearing came from Mellaconic IP LLC's document production. Mr. Chong is also counsel of record for Mellaconic. *See Mellaconic IP LLC v. TimeClock Plus*, LLC, No. 22-244; *Mellaconic IP LLC v. Deputy, Inc.*, No. 22-541. At the June 8 hearing, I repeatedly noted that Backertop's document production was inadequate, *see* D.I. 41 at 7, 17, 29, 31, 94, 98, and I stated that "there seems to be documents produced in other cases that you would have expected to see in the production in this case," D.I. 41 at 7:16–23. An example of the latter is Exhibit 5, which consists of communications involving Mr. Burns (who is counsel of record for Backertop but not for Mellaconic) and appears to be responsive to the document production order. Exhibit 5 was produced by Mellaconic but not by Backertop.

---

**End of Document**                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BACKERTOP LICENSING LLC,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 22-572-CFC
                                    )
CANARY CONNECT, INC.,               )
                                    )
            Defendant.              )
_____
BACKERTOP LICENSING LLC,           )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 22-573-CFC
                                    )
AUGUST HOME, INC.,                  )
                                    )
            Defendant.              )
_____

## **ORDER**

At Wilmington this Twenty-first day of August in 2023:

For the reasons set forth in the Memorandum Opinion issued this day, **IT IS**

**HEREBY ORDERED** that:

1. Ms. Lori LaPray is deemed in civil contempt of court for failing to

comply with the Court's May 31, 2023 Memorandum Order (No. 22-572,

D.I. 37; No. 22-573, D.I. 40) and July 10, 2023 Order (No. 22-572, D.I. 46;

No. 22-573, D.I. 50) and refusing to participate further in these proceedings;

APPX32

2. Beginning August 23, 2023, Ms. LaPray is hereby **FINED** $200 for each day that the Court is open and Ms. LaPray does not appear in Court for a hearing;

3. Backertop Licensing LLC's "Motion to Dismiss Contempt Proceeding" (No. 22-572, D.I. 54; No. 22-573, D.I. 58) is **DENIED**.


_____
CHIEF JUDGE