Nos. 23-2367, 23-2368, 24-1016, 24-1017 (Cons.)

IN THE

# United States Court of Appeals
# for the Federal Circuit

BACKERTOP LICENSING,

*Plaintiff-Appellant,*

LORI LAPRAY,

*Movant-Appellant,*

v.

CANARY CONNECT, INC.,

*Defendant*

BACKERTOP LICENSING,

*Plaintiff-Appellant,*

LORI LAPRAY,

*Movant-Appellant,*

v.

AUGUST HOME, INC.,

*Defendant*

On Appeals from the United States District Court for the District of Delaware in Nos. 1:22-cv-00572-CFC and 1:22-cv-00573-CFC, Chief Judge Colm F. Connolly.

**BRIEF OF COURT-APPOINTED AMICUS CURIAE COUNSEL IN SUPPORT OF THE DISTRICT COURT'S ACTIONS**

W. David Maxwell
Abby Walter Gray
Paget C. Barranco
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-3218
david.maxwell@hoganlovells.com

January 16, 2024

*Court-Appointed Amicus Curiae Counsel*

# CERTIFICATE OF INTEREST

Amicus curiae counsel in support of the District Court's actions certifies the following pursuant to Federal Circuit Rule 47.4:

1. Represented Entities (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

   **Not applicable.**

2. Real Party in Interest (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

   **Not Applicable.**

3. Parent Corporations and Stockholders (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **Not Applicable.**

4. Legal Representatives – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

**The undersigned attorneys have already entered an appearance in this Court.**

5.  Related Cases – Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir. R. 47.5(b).

    **Related appeals in this Court, Nos. 23-2368, 24-1016, and 24-1017, have all been consolidated with this appeal No. 23-2367.**

6.  Organizational Victims and Bankruptcy Cases – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

    **Not Applicable.**

Dated: January 16, 2024

<div style="text-align:right">

*/s/ W. David Maxwell*

W. David Maxwell
HOGAN LOVELLS U.S. LLP
555 Thirteenth Street NW
Washington, D.C. 20004
202-637-3218
david.maxwell@hoganlovells.com

</div>

*Court-Appointed Amicus Curiae
Counsel*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ............................................................... ii

STATEMENT OF RELATED CASES .................................................... 1

STATEMENT OF INTEREST ................................................................ 1

JURISDICTIONAL STATEMENT ........................................................ 1

INTRODUCTION .................................................................................... 2

STATEMENT OF THE ISSUES ............................................................ 4

STATEMENT OF THE CASE ................................................................ 5

    A.  The District Court Holds an Initial Hearing to Address its Concerns ..... 8

    B.  Backertop's Counsel's Motions to Withdraw and Backertop's Document Production Heighten the District Court's Concerns .............. 10

    C.  The District Court Accommodates Ms. LaPray's Specific Conflicts But Maintains that Her In-Person Testimony Is Warranted. .................. 12

    D.  The District Court Holds Ms. LaPray in Contempt. ............................... 14

SUMMARY OF THE ARGUMENT ..................................................... 15

STANDARD OF REVIEW .................................................................... 17

ARGUMENT .......................................................................................... 18

    I.    This Court May Review The District Court's Contempt Order And Order To Appear…………………………………………………...18

    A.  The Court Has Jurisdiction to Review the Contempt Order. .................. 18

    B.  On Appeal from the Civil Contempt Order, This Court May Review the District Court's Order to Appear ..................................................... 22

        1.  The order to appear may be reviewed on appeal from a civil contempt order because it is interlocutory and

v

          directed to a non-party. ...........................................................22

      2.  The collateral bar rule does not preclude review......................24

      3.  Appellants' Rule 45 argument should be considered regardless of waiver because the District Court already addressed its merits. ...............................................................25

II.    The District Court's Order To Appear Was Not An Abuse Of Discretion.............................................................................................26

    A.    Only Express Limitations in the Federal Rules of Civil Procedure Constrain the District Court's Inherent Powers..............27

    B.    Rule 45 Does Not Expressly Limit The District Court's Inherent Power to Investigate Potential Misconduct, Including by Exercising its Inherent Power to Compel Witnesses to Appear. ..........................30

      1.  The text of Rule 45 makes clear that it only applies to party-driven subpoenas………………………..………………………31

      2.  The requirements for party-driven subpoenas in Rule 45 do not apply to the District Court's order merely because it also compels appearance .........................................................34

    C.    The District Court's Order Was a Reasonable Exercise of Its Inherent Powers to Investigate Potential Attorney and Party Misconduct.........................................................................38

CONCLUSION ....................................................................................................40

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page

CASES:

*Alexander v. U.S.*,
201 U.S. 117 (1906)...........................................................19, 24

*Backertop Licensing LLC v. August Home, Inc.*,
No. 22-574 (D. Del. filed Apr. 28, 2022) ...........................5

*Backertop Licensing LLC v. Canary Connect, Inc.*,
No. 22-572 (D. Del. filed Apr. 28, 2022) ...................*passim*

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)...........................................*passim*

*Chen v. Aschcroft*,
112 F. App'x 201 (3rd Cir. 2004)............................39

*Cobbledick v. U.S.*,
309 U.S. 323 (1940)...........................................22

*Connaught Lab'ys, Inc. v. SmithKline Beecham P.L.C.*,
165 F.3d 1368 (Fed. Cir. 1999) .............................22

*Constr. Drilling, Inc. v. Chusid*,
90 F. App'x 630 (3d Cir. 2004) ............................18

*Corder v. Howard Johnson & Co.*,
53 F.3d 225 (9th Cir. 1994) ...............................29

*David v. Hooker, Ltd.*,
560 F.2d 412 (9th Cir. 1977) ..............................20

*DeMasi v. Weiss*,
669 F.2d 114 (3d Cir. 1982) ..............................22

*Dietz v. Bouldin*,
579 U.S. 40 (2016)...........................................*passim*

*E. Maico Distribs., Inc. v. Maico Fahrzeugfabrik, G.m.b.H.*,
658 F.2d 944 (3d Cir. 1981) ..............................*passim*

*ePlus, Inc. v. Lawson Software, Inc.*,
  789 F.3d 1349 (Fed. Cir. 2015) ........................................................... 25

*In re Establishment Inspection of Hern Iron Works, Inc.*,
  881 F.2d 722 (9th Cir. 1989) ........................................................ 24, 25

*In re Flat Glass Antitrust Litig.*,
  288 F.3d 83 (3d Cir. 2002) .................................................... 2, 19, 22

*G. Heileman Brewing Co. v. Joseph Oat Corp.*,
  871 F.2d 648 (7th Cir. 1989) (en banc) ........................................ 28, 36

*Halderman v. Pennhurst State Sch. & Hosp.*,
  673 F.2d 628 (3d Cir. 1982) .................................................................. 18

*Hanna v. Plumer*,
  380 U.S. 460 (1965) .............................................................................. 27

*Harris v. City of Phila.*,
  47 F.3d 1333 (3d Cir. 1995) ........................................................... 22, 23

*Holland v. New Jersey Dep't of Corrections*,
  246 F.3d 267 (3d Cir. 2001) .................................................................. 18

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) .............................................................................. 18

*In re Imerys Talc Am., Inc.*,
  38 F.4th 361 (3d Cir. 2022) .................................................................. 26

*Jones v. Bank of Santa Fe* (*In re Courtesy Inns, Ltd., Inc.*),
  40 F.3d 1084 (10th Cir. 1994) .............................................................. 29

*Keenan v. City of Phila.*,
  983 F.2d 459 (3d Cir. 1992) .................................................................. 26

*Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*,
  545 F.2d 1336 (3d Cir. 1976) ................................................................ 25

*Lewis v. Univ. of Pa.*,
  779 F. App'x 920 (3d Cir. 2019) ........................................................... 26

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962)..........................................................................4, 27, 29, 35

*Maggio v. Zeitz*,
    333 U.S. 56 (1948)..........................................................................................23

*Manez v. Bridgestone Firestone N. Am. Tire, LLC*,
    533 F.3d 578 (7th Cir. 2008) ..........................................................................27

*Marshak v. Treadwell*,
    595 F.3d 478 (3d Cir. 2009) ............................................................................23

*Micro Motion Inc. v. Exac Corp.*,
    876 F.2d 1574 (Fed. Cir. 1989) .......................................................................24

*In re Nimitz Technologies LLC*,
    2022 WL 17494845 (Fed. Cir. 2022) ............................................................2, 6

*Nimitz Technologies LLC v. CNET Media, Inc.*,
    2022 WL 17338396 (D. Del. Nov. 30, 2020)............................................5, 6, 8

*Nimitz Technologies LLC v. CNET Media, Inc.*,
    2023 WL 8187441 (D. Del. Nov. 27, 2023)........................................................7

*In re Novak*,
    932 F.2d 1397 (11th Cir. 1991) .......................................................................28

*Roe v. Operation Rescue*,
    919 F.2d 857 .....................................................................................................24

*Sears v. Mooney*,
    2019 WL 461961 (M.D. Pa. Feb. 6, 2019)........................................................30

*U.S. v. Pearce*,
    792 F.2d 397 (3d Cir. 1986) ................................................................22, 23, 24

*U.S. v. Sarbello*,
    985 F.2d 716 (3d Cir. 1993) ............................................................................17

*U.S. v. Sciarra*,
    851 F.2d 621 (3d Cir. 1988) .....................................................................19, 21

*U.S. v. United Mine Workers of Am.*,
330 U.S. 258 (1947)...................................................................................25

*U.S. v. Wheeling-Pittsburgh Steel Corp.*,
818 F.2d 1077 (3d Cir. 1987) ...............................................................23

*U.S. v. Wright*,
913 F.3d 364 (3d Cir. 2019) ..................................................................17

*Universal Oil Prods. Co. v. Root Refining Co.*,
328 U.S. 575 (1946).............................................................................28, 29

*Wallace v. Kmart Corp.*,
687 F.3d 86 (3d Cir. 2012) .............................................................1, 19, 20

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
442 F.3d 1322 (Fed. Cir. 2006) .............................................................17

## RULES:

Fed. R. Civ. P. 17(a)(1) ...........................................................................6

Fed. R. Civ. P. 45(a) ..........................................................................32, 38

Fed. R. Civ. P. 45(b)(1) .........................................................................32

Fed. R. Civ. P. 45(d)(1).................................................................31, 32, 33

Fed. R. Civ. P. 45(g) ..............................................................................34

Federal Rule of Appellate Procedure 29(a)(4)(E).....................................1

Fed. R. Civ. P. 45(c)(1)........................................................................3, 32

Fed. R. Civ. P. Rule 11 .......................................................................4, 36

Fed. R. Civ. P. 16(a) ...............................................................................36

Fed. R. Civ. P. 37(b) ...............................................................................19

Fed. R. Civ. P. 41(a)(1) ...........................................................................11

Fed. R. Civ. P. 41(b) ..........................................................................4, 35

Fed. R. Civ. P. 45 .............................................................................*passim*

Fed. R. Civ. P. 45(a)(2) ............................................................32

Fed. R. Civ. P. 45(a)(3) .............................................................3

Fed. R. Civ. P. 45(c) ...........................................................37, 38

Fed. R. Civ. P. 83(b) ................................................................7

Rule of Civil Procedure for the District Courts of the United States
    45(a), 1934 Edition U.S.C. Supplement 5 874 (1939) .......................................32

## STATEMENT OF RELATED CASES

Amicus Curiae Counsel agrees with Appellants' statement of related cases.

## STATEMENT OF INTEREST

After Defendants declined to participate in this appeal, the Court appointed the undersigned Amicus Curiae Counsel in support of the District Court's actions "so that this [C]ourt might have [the] benefit of adversarial presentation of the issues." *See* Order at *2, ECF No. 23.[1]

## JURISDICTIONAL STATEMENT

Amicus Curiae Counsel agrees with Appellants that this Court has jurisdiction to review both the District Court's civil contempt order and its underlying order requiring Appellant Lori LaPray to attend a hearing in person, though for additional reasons not fully discussed in Appellants' brief. *See infra* Argument, Section I. In short, non-parties have a right to appeal immediately a finding of civil contempt, *e.g.*, *Wallace v. Kmart Corp.*, 687 F.3d 86, 89 (3d Cir. 2012), and under the circumstances here, Ms. LaPray should be considered a non-party. *See infra* Argument, Section I.A. Further, on appeal from a civil contempt order, this Court may review the underlying order to appear, because it was an interlocutory order

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E): Amicus Curiae Counsel authored the brief in whole; no party or a party's counsel contributed money intended to fund preparing or submitting this brief; and no person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

directed to a non-party that was not previously appealable. *E.g.*, *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 89–90 (3d Cir. 2002); *see infra* Argument, Section I.B.

## INTRODUCTION

Lori LaPray is the sole owner of Backertop Licensing, LLC, an entity associated with IP Edge, a patent monetization firm. Backertop is the plaintiff in at least a dozen patent infringement cases filed across the country. Last year, the District Court ordered Ms. LaPray to attend a hearing in Delaware, where four of Backertop's cases were brought. The District Court convened the hearing as part of an investigation into potential professional misconduct by Backertop's attorneys, potentially false statements concealing IP Edge and related entities as the real parties in interest or third-party funders in Backertop's cases, and potential fraud on the court. Ms. LaPray refused to appear, despite the District Court's accommodation for her specific scheduling conflicts. After a show-cause hearing, the District Court found Ms. LaPray in civil contempt of court. The District Court's careful, considered actions, explained in thorough memoranda at every step, were well within its discretion and the scope of its inherent powers.

In this appeal, Ms. LaPray and Backertop do not challenge the District Court's inherent power to investigate potential attorney misconduct, litigation abuses, and fraud on the court. Indeed, this Court recognized in a related case that the District Court's inquiries fall squarely within its inherent powers. *See In re Nimitz*

2

*Technologies LLC*, 2022 WL 17494845, at *3 (Fed. Cir. 2022).  Nor do Appellants argue that the District Court abused its discretion in finding that Ms. LaPray's in-person testimony was warranted.  Rather, Appellants' only argument for reversal is that the District Court's order requiring Ms. LaPray, a Texas resident, to appear in Delaware exceeded the geographic limit for subpoenas under Federal Rule of Civil Procedure 45(c)(1).

Rule 45, however, governs subpoenas issued by a party or attorney; it does not limit the District Court's inherent power to order a witness to appear *sua sponte*, as part of its own investigation.  The Supreme Court has repeatedly emphasized that a district court's inherent powers are preserved absent an "*express* grant of or limitation on the district court's power contained in a rule or statute."  *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016) (emphasis added).  And Rule 45 never mentions *sua sponte* court orders to appear—much less any express limits on them.  It only addresses subpoenas issued by "[a]n attorney" or by the clerk "to a party who requests it."  Rule 45(a)(3).  Rule 45's requirements, including its geographic limit, therefore do not constrain the District Court's inherent power to call witnesses on its own.

As Appellants point out, Rule 45 subpoenas and *sua sponte* orders to appear may overlap.  *See* Appellant Br. p. 17.  Both require a witness to appear and testify.  But the Supreme Court has made clear that overlap alone is not enough to conclude

3

that the Federal Rules of Civil Procedure ("Rules") limit a district court's inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991) (courts may exercise their inherent power to sanction "even if procedural rules [including Rule 11] exist which sanction the same conduct"); *Link v. Wabash R. Co.*, 370 U.S. 626, 629–32 (1962) (courts may exercise inherent power to dismiss a case for non-prosecution *sua sponte*, without advanced notice to the plaintiff, even though Rule 41(b) allows dismissal for non-prosecution on motion of a defendant and with advanced notice to the plaintiff). There must be an express limit. And here, that is plainly missing.

The District Court therefore did not abuse its discretion when it ordered Ms. LaPray to appear outside of Rule 45's geographic limits. Because Appellants do not challenge any other aspect of the District Court's order to appear or civil contempt order, both orders should be affirmed.

## STATEMENT OF THE ISSUES

1.     Did the District Court abuse its discretion by issuing a *sua sponte* order requiring Ms. LaPray to appear in person in Delaware, as part of the District Court's investigation into potential misconduct by Backertop and its attorneys, where the geographic limit in Federal Rule of Civil Procedure 45 does not expressly apply to *sua sponte* court orders?

2.     Did the District Court abuse its discretion in holding Ms. LaPray in civil contempt for failing to comply with the District Court's order to appear in person?

## STATEMENT OF THE CASE

Over the past year and a half, Chief Judge Connolly of the District of Delaware has identified potential attorney and party misconduct in dozens of related patent cases, including the *Backertop* cases.[2]  The plaintiffs in these cases are limited liability companies ("Plaintiff LLCs") associated with IP Edge, a patent monetization firm, and Mavexar, an affiliated consulting shop.  *See Nimitz Technologies LLC v. CNET Media, Inc.*, 2022 WL 17338396, at *10–12 (D. Del. Nov. 30, 2020).[3]  As the District Court explained in a detailed memorandum, IP Edge and Mavexar appear to have established each of the Plaintiff LLCs; recruited outside individuals to serve as their sole owners; purported to assign patents to the Plaintiff LLCs for little or no consideration; retained the rights to the vast majority of royalties and settlement proceeds; and reported a complete assignment to the United States Patent and Trademark Office ("PTO"), without disclosing IP Edge's ongoing rights.  *See id.* at *16–25.  IP Edge and Mavexar then directed infringement litigation asserting those patents—including managing the attorneys and agreeing to settlements—with little or no input from the Plaintiff LLC owners.  *Id.* at *18–25.

---

[2] *Backertop Licensing LLC v. Canary Connect, Inc.*, No. 22-572 (D. Del. filed Apr. 28, 2022); *Backertop Licensing LLC v. August Home, Inc.*, No. 22-574 (D. Del. filed Apr. 28, 2022).

[3] The District Court incorporated its November 30, 2022 memorandum in *Nimitz* into the orders at issue in the *Backertop* cases.  *See, e.g.*, Appx4, Appx24.

The District Court developed concerns that this scheme may conceal from the court the real parties in interest: IP Edge and Mavexar. *Id.* at \*26; *see also* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). It was also concerned that "those real parties in interest perpetuated a fraud on the court by fraudulently conveying to a shell LLC [the patents] and filing a fictitious patent assignment with the PTO designed to shield those parties from potential liability they would otherwise face in asserting [the patents] in litigation." *Nimitz*, 2022 WL 17338396, at \*26. Further, the Plaintiff LLCs and their counsel may have violated local disclosure rules by failing to disclose IP Edge or Mavexar's funding for the litigation. *Id.* Finally, the Plaintiff LLC's attorneys may have violated the Rules of Professional Conduct by filing, settling, and dismissing litigation at the direction of Mavexar, a non-legal consulting firm, without the informed consent of the Plaintiff LLC owners. *Id.*

The District Court held evidentiary hearings to gather more information about its concerns. Appx1. After the hearings, the District Court also ordered the Plaintiff LLCs and their counsel to provide relevant documents. *See* Appx2. One of the Plaintiff LLCs challenged these inquiries in a petition for mandamus. *See In re Nimitz Technologies LLC*, 2022 WL 17494845, at \*1 (Fed. Cir. Dec. 8, 2022). This Court denied the petition, confirming that the District Court has inherent authority to seek information related to its concerns. *See id.* at \*3 (the District Court's

concerns "[a]ll are related to potential legal issues in the case, subject to the 'principle of party presentation' . . . or to aspects of proper practice before the court, over which district courts have a range of authority preserved by the Federal Rules of Civil Procedure") (citing Fed. R. Civ. P. 83(b); *Chambers*, 501 U.S. at 32).

The *Backertop* cases, and the orders that are the subject of this appeal, are part of the District Court's inquiry. Appellant Lori LaPray is the sole owner of Backertop Licensing LLC. Appx68. In 2022, Backertop filed 12 patent infringement cases in federal district courts in California, Colorado, New York, Texas, and Delaware. *See* Appx14, Appx21 (collecting cases). Ms. LaPray is also the managing member of six other LLCs that have filed at least 97 patent infringement cases in federal district courts. *See* Appx17–20 (collecting cases as of July 2023). The District Court identified in the *Backertop* cases the same pattern of potential misconduct seen in the other IP Edge- and Mavexar-linked cases.[4]

---

[4] In the Plaintiff LLC cases other than the *Backertop* cases, the District Court concluded its investigation on November 27, 2023. *See Nimitz Technologies LLC v. CNET Media, Inc.*, 2023 WL 8187441 (D. Del. Nov. 27, 2023). Based on evidence of misconduct, including testimony and document productions, the District Court decided to refer the attorneys representing the Plaintiff LLCs and certain attorneys working at Mavexar to state bar authorities, and to refer to the PTO and Department of Justice the matter of IP Edge's potentially fraudulent patent assignment filings at the PTO. *See Nimitz Technologies LLC v. CNET Media, Inc.*, 2023 WL 8187441 (D. Del. Nov. 27, 2023).

**A.    The District Court Holds an Initial Hearing to Address its Concerns.**

On September 12, 2022, the District Court set an evidentiary hearing in the *Backertop* cases for November 10, 2022.  Appx2.  As Appellants observe, the District Court's initial concern was that Backertop had failed to comply with local rules requiring disclosure of non-recourse third-party funding.  Appx64–65; *see also* Appx37–39.  The District Court had reason to believe that Backertop was connected to IP Edge, but had not disclosed IP Edge's interest.  *See Nimitz*, 2022 WL 17338396, at *11–12.

By the time of the *Backertop* hearing, however, the District Court's concerns had multiplied.  Six days before the hearing, one of Backertop's attorneys, Mr. Chong, testified in related cases that Mavexar, the IP Edge consulting shop, directed the Plaintiff LLC patent litigations and managed nearly all communications with litigation counsel.  *Id.* at *12–13.  The District Court explained that it "was now as concerned, if not more concerned, about whether Mr. Chong had acted consistent with the Rules of Professional Conduct and whether Mavexar—an entity I had never heard of—was the real party in interest in [the Plaintiff LLC's] cases."  *Id.* at *13; *see also id.* at *15–19.

 Accordingly, during the November 10, 2022 hearing in *Backertop*, the District Court explored not only third-party funding, but also potential professional

misconduct and undisclosed real parties in interest.[5]  Ms. LaPray testified, and her

experience generally mirrored that of other Plaintiff LLC owners.  *See* Appx81–116.

She testified that Mavexar formed Backertop Licensing LLC; that she did not "sign

any paperwork to form it"; and that "Mavexar upfronted [th]e fees."  Appx83–84.

She stated that Mavexar retained the attorneys to bring Backertop's patent

infringement cases.  Appx89.  Ms. LaPray had no direct communication with the

attorneys until "about a month and a half" before the November 10 hearing,

Appx89–90—that is, several months after the *Backertop* cases were filed.

Ms. LaPray testified that Mavexar paid for her flight to attend the hearing.

Appx104.  She also acknowledged that "all of the sources of funding that Backertop

has for anything" come from Mavexar, Appx116, including funding for attorneys'

fees and costs in the patent infringement cases, *see* Appx105–06.  On their faces,

Backertop's agreements with Mavexar indicate that Mavexar's funding is partly on

a recourse basis:  They state that Backertop could be liable for attorneys' fees and

costs if a court sanctions Backertop or if the patent cases do not succeed.  Appx105,

Appx107.  But in practice, Mavexar's funding may have operated on a non-recourse

basis.  Ms. LaPray testified that Backertop has no bank account.  Appx101.

Backertop had no assets other than the patents transferred to it.  Appx16.  And Ms.

---

[5] Contrary to Appellants' suggestion, Appellant Br. p. 5, the scope of the hearing could not have been a surprise to Ms. LaPray or Backertop, whose counsel, Mr. Chong, sat through the hearing covering similar topics six days earlier.

LaPray would not be personally liable for fees or costs assessed against Backertop. Appx100. When asked how Backertop would pay for attorneys' fees or costs if needed, Ms. LaPray stated, "I'm not sure." Appx108.

At the end of the hearing, the District Court invited Backertop or its attorneys "to submit any briefing" on the concerns that it had expressed, noting that Ms. LaPray's testimony thus far "ha[d] only added to the concerns" previously expressed in "parallel hearings." Appx122.

### B.     Backertop's Counsel's Motions to Withdraw and Backertop's Document Production Heighten the District Court's Concerns.

In March 2023, after this Court denied the mandamus petition challenging the production orders in *Nimitz*, the District Court ordered each of Backertop, Ms. LaPray, and Backertop's attorneys to produce documents and communications relating to the District Court's concerns. *See* Appx125–29; *see also* Appx3 (explaining that the District Court refrained from issuing the document production order in *Backertop* while the *Nimitz* mandamus petition was pending). The District Court also ordered Ms. LaPray to submit a declaration identifying any and all assets owned by Backertop. Appx129.

In response, on April 3, 2023, Backertop moved to set aside the document production order, arguing that it is overly broad, seeks privileged information, and exceeds the court's jurisdiction. *See* Appx4–5. A couple of weeks later, Backertop filed a stipulation of dismissal. Appx130. Four days after that, Backertop's local

counsel, Mr. Chong, filed a motion to withdraw as counsel, explaining that he "is unable to effectively communicate with [Backertop] in a manner consistent with good attorney-client relations." Appx6. Backertop opposed the motion to withdraw. Appx6. The same day, Backertop's other attorney, Mr. Burns, emailed the District Court seeking to withdraw as counsel. Appx6. Mr. Burns sent an email, instead of filing on the docket, "due to the fact that [he] cannot get a response from my local counsel," Mr. Chong. Appx6. Mr. Burns explained that he had "started a new job" and "cannot represent the plaintiff any longer." Appx6.

On May 1, 2023, the District Court ordered a hearing "[t]o sort through this morass." Appx6. Given Backertop's opposition to its attorney's motion to withdraw, and the apparent conflict between Mr. Chong and Mr. Burns, the District Court ordered Ms. LaPray, Mr. Chong, and Mr. Burns to attend the hearing in person. Appx6. The District Court also denied Backertop's motion to set aside the production order, citing Supreme Court and Third Circuit precedent confirming that voluntary dismissal under Rule 41(a)(1) does not deprive the District Court of jurisdiction to exercise its inherent powers. Appx4–5.[6]

---

[6] In response to Backertop's objection that the production order required production of privileged documents, the District Court also found that the involvement of a non-legal entity, Mavexar, or the crime-fraud exception may defeat Backertop's claim that some documents are privileged; and that in any event, potential privilege is no basis for refusing production of documents to the court. Appx5–6. The District Court also overruled Backertop's overbreadth objection. Appx5.

On May 9, 2023, Backertop produced documents to the Court.  *See* Appx132–33.  As the District Court later observed, however, several of the documents had clearly missing attachments or cover letters.  Appx190, Appx268.  The content of the documents produced, moreover, raised further questions relating to the District Court's concerns about potential attorney and party misconduct.  *See, e.g.*, Appx268 (questioning whether Ms. LaPray did, "in fact, sign the documents or authorize the signature of the documents contemporaneously with the date of the documents"); Appx216, Appx247 (discussing documents indicating that Mavexar retained attorneys to assert a patent portfolio even before Backertop was created, suggesting Mavexar is the principal behind the litigation).

The District Court therefore advised that it has "questions for Ms. LaPray about the production that require her physical presence in court" to "assess her credibility." Appx10.   The District Court also reiterated that it needed Ms. LaPray's testimony to sort through the attorneys' motions to withdraw, which were "unusual to say the least."  Appx10.

## C.    The District Court Accommodates Ms. LaPray's Specific Conflicts But Maintains that Her In-Person Testimony Is Warranted.

Ms. LaPray notified the Court that she was unable to attend a hearing in person on June 8, 2023, as initially ordered.  Appx134–38.  Ms. LaPray stated that she had preexisting travel from June 8 to June 15, 2023.  Appx138.  She also stated that she is a paralegal and had "a number of trials and hearing through the entire summer,"

12

though did not specify dates, and that parental obligations make travel difficult. Appx138. LaPray stated that she could not travel to Delaware "for the foreseeable future" and requested permission to appear telephonically. Appx138.

To accommodate Ms. LaPray's specific conflict from June 8 to June 15, 2023, the District Court set a new hearing for July 20, 2023. Appx10.[7] The District Court advised that if a hearing on that date "presents exceptional difficulties for Ms. LaPray," she may submit "affidavits and supporting documentation demonstrating why exactly that is the case and propose a range of alternative dates." Appx10. The District Court denied Ms. LaPray's request to appear telephonically, because "[c]redibility assessments are difficult to make over the phone." Appx10. Further, remote hearings "are the exception, not the rule." Appx10. The District Court sent a copy of its decision to Ms. LaPray's employer, because Backertop's attorneys had indicated in their motions to withdraw that they were not in contact with Ms. LaPray. *See* Appx17; Appx279–80.

Ms. LaPray and Backertop moved for reconsideration. *See* Appx140–72. They again asserted that Ms. LaPray's daily family obligations would make travel to Delaware for a hearing difficult and requested a videoconference hearing. *See*

---

[7] The District Court also later excused one of Backertop's attorneys from a July 20 hearing based on a "preplanned family vacation." Appx204–05; *see also* Appx268 (noting "[t]hat's precisely the kind of excuse, I think, [that] deserves to excuse a participant in a hearing").

Appx141.  In denying the motion, the District Court noted that it was "sympathetic to the childcare burdens that business- and court-related travel can impose on working parents," but observed that Ms. LaPray had voluntarily agreed "to serve as the sole natural person affiliated with Backertop" and to file "the dozen patent infringements suits it did last year in district courts across the country, including in Delaware."  Appx15.  The District Court also denied the request to participate by videoconference, explaining that "[l]ive, in-person testimony remains the best means of ascertaining the truth."  Appx14.

For the first time, Backertop also argued in its motion for reconsideration that the Rule 45's geographic limit precludes the Court's order requiring Ms. LaPray to appear in Delaware.  *See* Appx12–13.  After noting that the argument had been waived, the District Court rejected it on the merits.  Appx13–14.  The District Court stated that its order to appear was based on its inherent power, not Rule 45.  Appx13.  And Rule 45 "has no bearing on the circumstances at hand," because it only imposes geographic limits on subpoenas issued by an attorney or the clerk at a party's request.  Appx13.  The District Court therefore concluded that Rule 45 does not restrict its inherent power to order Ms. LaPray to appear on its own.  Appx14.

### D.    The District Court Holds Ms. LaPray in Contempt.

After Ms. LaPray refused to attend the July 20, 2023 hearing, the District Court held a hearing on August 1, 2023 to provide Ms. LaPray with an opportunity

14

to show cause why she should not be held in civil contempt. *See* Appx24. Ms. LaPray did not appear at the show cause hearing. Appx24. Her attorney noted that Ms. LaPray would stand on arguments made in a motion to dismiss the contempt proceeding, Appx24, including the Rule 45 argument, *see* Mot. to Dismiss Contempt Proceeding at 9–10, *Backertop Licensing LLC v. Canary Connect, Inc.*, No. 22-572 (D. Del. July 28, 2023), ECF No. 54. In yet another lengthy memorandum, the District Court rejected Ms. LaPray's arguments. *See* Appx24–30.[8] The District Court found Ms. LaPray in contempt of court and imposed a fine of $200 per day until Ms. LaPray appears in person in court. Appx30.

## SUMMARY OF THE ARGUMENT

I.      This Court has appellate jurisdiction to review both the District Court's contempt order and the underlying order for Ms. LaPray to appear in person.

A.      Non-parties may immediately appeal contempt orders, and Ms. LaPray should be treated as a non-party here.

B.      This Court may review an interlocutory order—including an order to appear—that a non-party was in held in civil contempt for violating. The collateral

---

[8] The Court also addressed, again, Backertop's contention that the District Court revealed privileged documents in open court, which Backertop raises again here. *See* Appellant Br. p. 10, 13–14. The District Court explained that the documents were not privileged and that Backertop's attorneys did not timely object. Appx28–30; *see also* Appx266–67 (explaining that communications including Mavexar, a non-legal entity, are not privileged or are subject to the crime-fraud exception, and that counsel must create a privilege log to specifically assert any claim of privilege).

bar doctrine is inapplicable here and does not prevent review. While the District Court suggested that the order to appear was not reviewable in a contempt proceeding, and that Appellants waived their argument about the validity of the order, Appx12, Appx25–26, the District Court nonetheless presented its view of Appellants' argument in detail. Accordingly, remand is not necessary and this Court may affirm based on the merits of the District Court's orders.

II.    The District Court's order to appear was not an abuse of discretion.

A.    The Supreme Court has long recognized the specific inherent powers the District Court exercised here, including the power to compel a non-party's appearance and to investigate misconduct and fraud. A court's exercise of these inherent powers (1) may not contradict an express limitation on its powers contained in a rule or statute; and (2) must be a reasonable response to the circumstances.

B.    The District Court correctly concluded that Rule 45 does not expressly limit its inherent power to order Ms. LaPray's appearance as part of its investigation into potential attorney and party misconduct. On its face, Rule 45 only applies to subpoenas issued by a clerk to a party or by an attorney—not to *sua sponte* orders. While the District Court's *sua sponte* order (like a Rule 45 subpoena) compelled someone's appearance, as the Supreme Court recognizes, overlap alone is not enough for Rule 45 to expressly limit a court's powers.

16

C.    The District Court reasonably ordered Ms. LaPray's appearance to further investigate potential misconduct involving a corporate party of which she is the sole representative and which filed several lawsuits in Delaware.  The District Court thoroughly considered the concerns Ms. LaPray raised and reasonably required in-person testimony.

## STANDARD OF REVIEW

Because this appeal involves "procedural matters that are not unique to patent issues," the law of the regional circuit court—here, the Third Circuit—applies. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1325–26 (Fed. Cir. 2006).  Contempt orders are reviewed for abuse of discretion.  *U.S. v. Sarbello*, 985 F.2d 716, 727 (3d Cir. 1993).  An abuse of discretion requires either "an error of law or clearly erroneous judgment or finding of fact." *Id.*  Contempt findings must be based on clear and convincing evidence.  *Id.*  The District Court's exercise of inherent powers is also reviewed for abuse of discretion.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) ("We review a court's imposition of sanctions under its inherent power for abuse of discretion."); *U.S. v. Wright*, 913 F.3d 364, 369 (3d Cir. 2019) (reviewing dismissal of an indictment "based on the Court's inherent power for abuse of discretion").  Whether the District Court possesses a particular inherent power, however, is a question of law reviewed de

novo. *Holland v. New Jersey Dep't of Corrections*, 246 F.3d 267, 280 (3d Cir. 2001).

## ARGUMENT

## I.   This Court May Review The District Court's Contempt Order And Order to Appear.

This Court has jurisdiction to review the District Court's contempt order and, as part of that review, the underlying order requiring Ms. LaPray to appear at a hearing in person.

### A.   The Court Has Jurisdiction to Review the Contempt Order.

Ms. LaPray's appeal of the civil contempt order is proper because she is best characterized as a non-party.

Civil contempt orders are interlocutory and, therefore, parties may not appeal civil contempt orders "except incident to an appeal from a judgment otherwise appealable." *Halderman v. Pennhurst State Sch. & Hosp.*, 673 F.2d 628, 636 (3d Cir. 1982); *see also Constr. Drilling, Inc. v. Chusid*, 90 F. App'x 630, 632 (3d Cir. 2004) (same).[9]   For non-parties, however, the rule is different:   "[N]on-party witnesses who are held in contempt may immediately appeal the contempt order."

---

[9] While Backertop's appeal is arguably incident to Ms. LaPray's appeal, only Ms. LaPray was ordered to appear and held in contempt.  Backertop therefore was not injured and lacks Article III standing appeal the District Court's orders.  *See Hollingsworth v. Perry*, 570 U.S. 693, 701, 705 (2013) (explaining standing requires a concrete and particularized injury and that appealing parties must have standing). This Court nevertheless has jurisdiction based on Ms. LaPray's right to appeal.

*Wallace v. Kmart Corp.*, 687 F.3d 86, 89 (3d Cir. 2012); *see also Alexander v. U.S.*, 201 U.S. 117, 121 (1906) ("Let the court go farther, and punish the witness for contempt of its order—then arrives a right of review."); *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 88 (3d Cir. 2002) ("An adjudication of contempt . . . provides the finality necessary to initiate an appeal."). The rationale for the non-party exception is twofold. First, non-parties may lose the incentive to appeal if forced to wait for an overall final judgment, long after they have produced documents or testimony or suffered contempt penalties. *See, e.g., E. Maico Distribs., Inc. v. Maico Fahrzeugfabrik, G.m.b.H.*, 658 F.2d 944, 949 n.7 (3d Cir. 1981) ("[O]nce the document or testimony is produced, the non-party has no inherent interest in the outcome of the case."). Second, a civil contempt order gives a non-party witness "a distinct and severable interest," separate from the parties' interests in the underlying litigation that must await a final judgment. *U.S. v. Sciarra*, 851 F.2d 621, 628 (3d Cir. 1988).

Here, Ms. LaPray is best characterized as a non-party for purposes of appealability. Ms. LaPray is an officer of Backertop. Appx2, Appx12. The Third Circuit has indicated that an officer of a party is generally considered a non-party. *See E. Maico Distribs.*, 658 F.2d at 949 ("In civil contempt proceedings or Rule 37(b) sanctions against a non-party, even against an attorney to or an officer of a party, an appeal generally need not wait until final judgment in the case as a

whole."). The Ninth Circuit agrees. *See, e.g.*, *David v. Hooker, Ltd.*, 560 F.2d 412, 417 (9th Cir. 1977) ([T]his court . . . rejected the contention that, in determining the finality of judgments for appeal, officers of corporate defendants must be considered as parties.").

The Third Circuit has also suggested, however, that a non-party could be treated as a party where there is a "congruence of interests" between the non-party and the party with respect to the order at issue. *See Wallace*, 687 F.3d at 89–90 (citing *Cunningham*, 527 U.S. at 207 ("The effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal.")). In *Wallace*, an attorney had filed a recusal motion and was held in contempt for resisting a subpoena seeking related information. *Id.* at 87. The Court found that the attorney had sufficiently separate interests from her client. *Id.* at 89–90. With respect to the contempt order, the attorney was more akin to a witness because she submitted a declaration with personal information, placed her credibility at issue, and resisted subpoenas unrelated to the core merits of the party's case. *Id.* at 90.

Ms. LaPray's interests are likewise sufficiently separate from those of Backertop with respect to the civil contempt order and underlying order to appear. Similar to the attorney in *Wallace*, Ms. LaPray submitted sworn declarations with personal information in response to District Court's order to appear. Appx9–10

20

(noting personal conflicts and difficulty traveling). The District Court also emphasized that Ms. LaPray's credibility as a witness was at issue. Appx10. And the District Court intended to question Ms. LaPray on her personal obligation to produce documents in response to the District Court's production order, among other things. Appx10 ("I have questions for Ms. LaPray about the production."). This is analogous to questioning a witness, invoking interests unique to Ms. LaPray.

Ms. LaPray and Backertop do have some entwined interests. The District Court's scrutiny of Backertop and its attorneys for potential misconduct, for example, entailed scrutiny of Ms. LaPray's role in the company and the litigation. *See, e.g.*, Appx2 (summarizing investigation). But the overlapping interest is no greater than the overlap between the attorney's and party's interests in recusing a potentially conflicted judge in *Wallace*. Moreover, the civil contempt order against Ms. LaPray gives her as much of a "distinct and severable interest"—facing personal fines—as any other non-party witness permitted to appeal. *Sciarra*, 851 F.2d at 628. The Court should therefore follow the Third Circuit's observation that party officers are generally considered non-parties in this context, *E. Maico Distribs.*, 658 F.2d at 949, and treat Ms. LaPray as a non-party for purposes of appealability.

**B.    On Appeal from the Civil Contempt Order, This Court May Review the District Court's Order to Appear.**

1.    <u>The order to appear may be reviewed on appeal from a civil contempt order because it is interlocutory and directed to a non-party.</u>

Interlocutory orders are generally not appealable. But once a non-party is held in contempt for violating an interlocutory order, the non-party has the right to review of the interlocutory order as part of the civil contempt appeal.[10]  *See In re Flat Glass Antitrust Litig.*, 288 F.3d at 89–90 ("If [non-parties] are found in contempt, they may appeal the citation and argue the discovery order was flawed."); *DeMasi v. Weiss*, 669 F.2d 114, 122 (3d Cir. 1982) ("The non-party witnesses therefore have a remedy by appeal, but that right must await their willingness to stand in contempt of the district court's order.").  *See also Connaught Lab'ys, Inc. v. SmithKline Beecham P.L.C.*, 165 F.3d 1368, 1370 (Fed. Cir. 1999) ("Nonparties may secure review of a

---

[10] Some Third Circuit cases suggest that the right to review also depends on whether compliance with an order would result in "irreparable harm."  *See U.S. v. Pearce*, 792 F.2d 397, 400 (3d Cir. 1986) (defendants can defy and challenge a non-appealable order in contempt proceedings if "compliance with it will bring irreparable harm"); *Harris v. City of Phila.*, 47 F.3d 1333, 1337 (3d Cir. 1995) (order reviewable where it "was not previously appealable and compliance would result in irreparable harm").  But Supreme Court cases addressing civil contempt appeals have not required irreparable harm. *See, e.g.*, *Cobbledick v. U.S.*, 309 U.S. 323, 328 (1940).  And an "irreparable harm" requirement does not appear to be followed in other circuits or applied uniformly in the Third Circuit.  If applicable here, it is probably satisfied.  Amicus Curiae Counsel is not aware of a mechanism to compensate Ms. LaPray for the time and burden of traveling to Delaware for a hearing to comply with the District Court's order.

discovery order by refusing to comply with it and appealing a consequent contempt order, which is considered final.").

The District Court suggested that, at least for purposes of civil contempt proceedings in the trial court, the order to appear could not be reviewed. Appx25–26. But the District Court relied on inapposite cases. *See* Appx26 (citing *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948); *Marshak v. Treadwell*, 595 F.3d 478, 486 (3d Cir. 2009); *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995)). In each of those cases, an individual was held in contempt for violating a final, appealable order. *See Maggio*, 333 U.S at 60, 68 (contempt for violating turnover order that was final and previously appealed to the circuit court); *Marshak*, 595 F.3d at 483 (concerning contempt of a permanent injunction affirmed on appeal); *Harris*, 47 F.3d at 1319–20 (summarizing the contempt order for violating a consent decree).[11] And as the Third Circuit has explained, "when an order is appealable, and one forgoes the appeal, he may not raise the validity of the order at a subsequent contempt trial." *U.S. v. Pearce*, 792 F.2d 397, 400 (3d Cir. 1986); *see also Maggio*, 333 U.S. at 68 ("[W]hen completed and terminated in a final order, [the order] becomes res judicata and not subject to collateral attack in the contempt proceeding."). In contrast, when the underlying order is interlocutory and non-appealable, there is no concern with

---

[11] Consent decrees are final orders. *U.S. v. Wheeling-Pittsburgh Steel Corp.*, 818 F.2d 1077, 1082 (3d Cir. 1987).

23

giving litigants a second bite at the apple. The order's validity may therefore be raised during contempt proceedings. *Pearce*, 792 F.2d at 400.[12]

Here, the District Court's order to appear was interlocutory and non-appealable. *See Micro Motion Inc. v. Exac Corp.*, 876 F.2d 1574, 1576 (Fed. Cir. 1989) ("The nonappealability of orders requiring the production of evidence from witnesses has long been established.") (citing *U.S. v. Alexander*, 201 U.S. 117, 121–22 (1906)); *see also id.* at 1577 (collecting cases from other circuits). This Court may therefore review the order to appear in the context of Ms. LaPray's appeal from the District Court's contempt order.

### 2.    The collateral bar rule does not preclude review.

Appellants also raise the collateral bar rule, Appellant Br. p. 24, though the District Court did not mention that rule in its orders. "The collateral bar rule permits a judicial order to be enforced through criminal contempt even though the underlying decision may be incorrect and even unconstitutional." *See In re Establishment Inspection of Hern Iron Works, Inc.*, 881 F.2d 722, 725–26, 26 n.11 (9th Cir. 1989)

---

[12] The Third Circuit once suggested that even interlocutory orders may not be reviewable on appeal from a civil contempt order. *See Roe v. Operation Rescue*, 919 F.2d 857, 871 (the validity of a temporary restraining order "may not be collaterally challenged in a contempt proceeding"). The only case that Third Circuit cited for that proposition, however, was one in which the court declined to review *final* order on appeal from a *criminal* contempt charge. *Id.* (citing *U.S. v. Stine*, 646 F.2d 839, 845 (3d Cir. 1981)). Moreover, the Third Circuit in *Roe* went on to review the merits of the interlocutory TRO. *See id.*

(citing *U.S. v. United Mine Workers of Am.*, 330 U.S. 258 (1947)). The Supreme Court and Third Circuit have held that the collateral bar rule does not apply in civil contempt cases. *See, e.g.*, *United Mine Workers*, 330 U.S. at 295 (setting aside civil contempt because the underlying injunction was invalid, but affirming criminal contempt judgment); *Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1342 (3d Cir. 1976) (holding that civil contempt judgments fall when the underlying order is invalid); *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1357 n.8 (Fed. Cir. 2015) (quoting *Latrobe Steel* and the same proposition). Because the District Court only held Ms. LaPray in civil contempt, Appx30, the collateral bar rule does not prevent this court from considering the underlying order.

Appellants cite to the transparent invalidity doctrine as additional grounds to support this court's review of the underlying order. Appellant Br. p. 20. However, the doctrine is an exception to the collateral bar rule, *Hern Iron Works*, 881 F.2d at 727, and is thus inapplicable here.

### 3. Appellants' Rule 45 argument should be considered regardless of waiver because the District Court already addressed its merits.

This Court may address Appellants' Rule 45 argument regardless of whether it was initially waived in the District Court. The District Court stated in its denial of Backertop's motion for reconsideration of the order requiring Ms. LaPray to appear that Backertop had waived its Rule 45 argument, but the District Court nonetheless addressed the argument on the merits. Appx12–13. That is enough to preserve the

25

issue for appeal in this Court. *See In re Imerys Talc Am., Inc.*, 38 F.4th 361, 373 (3d Cir. 2022) (reviewing the appeal of insurers in part because the bankruptcy court "on its own initiative addressed the merits of the Insurers' objection" despite the district court finding waiver); *Lewis v. Univ. of Pa.*, 779 F. App'x 920, 932 n.3 (3d Cir. 2019) (summarizing how the district court addressed a claim on the merits during a motion for reconsideration despite acknowledging the claim was waived, and stating that the court would consider the claim on appeal). Further, the argument was raised again by Backertop in its motion to dismiss contempt proceeding. Mot. to Dismiss Contempt Proceeding at 6, 10, *Backertop Licensing LLC v. Canary Connect, Inc.*, No. 22-572 (D. Del. July 28, 2023), ECF No. 54. The issue was thus preserved when Backertop appealed the civil contempt order. *See Keenan v. City of Phila.*, 983 F.2d 459, 471 (3d Cir. 1992) ("[T]he crucial question regarding waiver is whether defendants presented the argument with sufficient specificity to alert the district court.").

## II.     <u>The District Court's Order to Appear Was Not An Abuse of Discretion.</u>

The District Court's order requiring Ms. LaPray to appear at a hearing falls squarely within its inherent powers. Contrary to Appellants' arguments, the District Court's order did not conflict with Federal Rule of Civil Procedure 45, because that Rule does not expressly limit a court's *sua sponte* orders to appear. And the District

Court's order was not otherwise unreasonable or an abuse of discretion, as
Appellants concede.

### A.    Only Express Limitations in the Federal Rules of Civil Procedure Constrain the District Court's Inherent Powers.

The Supreme Court has long recognized "[c]ertain implied powers . . . which
cannot be dispensed with in a Court[.]"  *Chambers v. NASCO, Inc.*, 501 U.S. 32 43
(1991) (quoting *U.S. v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)).  These
inherent powers are "governed not by rule or statute" but flow instead from the
"control necessarily vested in courts to manage their own affairs so as to achieve the
orderly and expeditious disposition of cases."  *Chambers*, 501 U.S. at 43 (quoting
*Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)); *see also Hanna v. Plumer*,
380 U.S. 460, 472–73 (1965) (noting that federal courts exercise inherent powers
"completely aside from the powers Congress expressly conferred in the Rules");
*Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (recognizing that the Rules are "not all
encompassing" of the "powers of a federal district court").  In particular, "federal
courts have traditionally exerted strong inherent power" over "matters which relate
to the administration of legal proceedings."  *Hanna*, 380 U.S. at 472–73.

The Supreme Court has recognized the specific inherent powers relating to
the administration of legal proceedings that the District Court exercised here.  *See
Chambers*, 501 U.S. at 43–45.  Courts possess inherent power to investigate
suspected attorney misconduct and discipline attorneys.  *Id.* at 43; *Manez v.*

*Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008) (court has inherent power "to investigate the circumstances behind [an attorney's] filings and to impose sanctions for . . . misconduct." (citing *Chambers*, 501 U.S. at 46)). Courts also have inherent power to monitor and "fashion an appropriate sanction for conduct which abuses the judicial process," *Chambers*, 501 U.S. at 43–45 (collecting cases), a power that "extends to a full range of litigation abuses," *id.* at 46. And courts have "the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Id.* at 44 (citing *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946)).

Courts also have inherent power to compel a person's appearance. *See, e.g.*, *G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648, 656–57 (7th Cir. 1989) (en banc) (district court has inherent authority to order a corporate party's representative to attend in person a pretrial conference); *In re Novak*, 932 F.2d 1397, 1407 (11th Cir. 1991) ("[T]he power to direct parties to produce individuals with full settlement authority at pretrial settlement conferences is inherent in the district courts."). And courts can deploy this inherent power as part of an investigation of misconduct and fraud. As the Supreme Court has long held:

> The inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question . . . . The power to unearth such a fraud is the power to unearth it effectively. Accordingly, a federal court may bring before it by appropriate means all those who may be affected by the outcome of its investigations.

*Universal Oil Prods. Co.*, 328 U.S. at 580. Finally, courts may exercise these inherent powers over non-parties. *See, e.g.*, *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 232 (9th Cir. 1994) ("[A] court may impose attorney's fees against a non-party as an exercise of the court's inherent power to impose sanctions to curb abusive litigation practices."); *Jones v. Bank of Santa Fe* (*In re Courtesy Inns, Ltd., Inc.*), 40 F.3d 1084, 1089–90 (10th Cir. 1994) (upholding sanctions against non-party as an appropriate exercise of "the inherent power recognized by the Supreme Court in *Chambers*").

Though inherent powers are "governed not by rule or statute," *Chambers*, 501 U.S. at 43, a court's proper exercise of them must meet two requirements. *First*, a court's use of inherent powers "cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute," including the Rules. *Dietz*, 579 U.S. at 45–46; *see also Chambers*, 501 U.S. at 51 ("[A] district court could not rely on its supervisory power as a means of circumventing the *clear mandate* of a procedural rule." (emphasis added) (citing *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 254–55 (1988)). In assessing whether a contradiction exists, courts should "not lightly assume that Congress has intended to depart from established principles such as the scope of a court's inherent power." *Chambers*, 501 U.S. at 47 (quotation omitted); *see also Link*, 370 U.S. at 631 (declining to find that federal rule abrogates the court's inherent power to dismiss *sua sponte* for non-prosecution

29

absent "a much clearer expression of purpose" to do so). The Rules are not "all encompassing" of a federal court's powers, *Dietz*, 579 U.S. at 4, and the inherent powers must, "[a]t the very least . . . continue to exist to fill in the interstices," *Chambers*, 501 U.S. at 46.

*Second*, a court's use of inherent powers must be a "'reasonable response to the problems and needs' confronting the court's fair administration of justice." *Dietz*, 579 U.S. at 45 (quoting *Degen v. U.S.*, 517 U.S. 820, 823–24 (1996)); *Sears v. Mooney*, 2019 WL 461961, at *2 (M.D. Pa. Feb. 6, 2019) (requiring that a court's exercise of inherent powers in the sanctions context be "tailored to address the harm identified" (citation omitted)).

Here, the District Court did not abuse its discretion because (1) Rule 45 does not expressly limit its inherent power to order a witness to appear *sua sponte*; and (2) its order compelling Ms. LaPray's appearance was a reasonable exercise of that power.

**B.**   **Rule 45 Does Not Expressly Limit The District Court's Inherent Power to Investigate Potential Misconduct, Including by Exercising its Inherent Power to Compel Witnesses to Appear.**

The District Court's order to appear did not contradict any express requirement in the Rules, which do not address a federal court's ability to compel *sua sponte* a person to appear in court as part of an investigation into potential attorney misconduct, fraud on the court, and other litigation abuses.

1.     <u>The text of Rule 45 makes clear that it only applies to party-driven subpoenas.</u>

On its face, Rule 45 only applies to a party or attorney's efforts to subpoena a person to attend a trial, hearing, or deposition.  It states:

(a) IN GENERAL [ . . . ]

> (3) *Issued by Whom*. The **clerk** must issue a subpoena, signed but otherwise in blank, to a **party** who requests it.  That **party** must complete it before service.  An **attorney** also may issue and sign a subpoena if the attorney is authorized to practice in the issuing court. [ . . . ]

Fed. R. Civ. P. 45 (emphasis added).  Elsewhere, Rule 45 confirms that "[a] party or attorney" is "responsible for issuing and serving a subpoena" under the Rule.  Fed. R. Civ. P. 45(d)(1).  It is therefore up to "[a] party or attorney" to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  *Id.*  Nowhere does Rule 45 mention the court's own orders to appear, issued without a request from a party or attorney.  Given this silence, the District Court's *sua sponte* order compelling Ms. LaPray to appear cannot be "contrary to any express grant of or limitation on the district court's power contained in a rule or statute."  *Dietz*, 579 U.S. at 45–46.

Indeed, many of the Rule 45 requirements would make no sense if applied to a court's own orders.  For instance, a court would be required "to impose an appropriate sanction" on itself should the court fail to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R.

Civ. P. 45(d)(1). Rule 45(a)(2) also requires that the subpoena "must issue from the court where the action is pending"—a rather redundant and self-evident requirement, if applied to a court's own order to compel appearance. And while federal agencies are explicitly exempt from the Rule 45 requirement to "tender the fees for 1 day's attendance and the mileage allowed by law" when serving a subpoena, federal courts would be required to pay those fees. Fed. R. Civ. P. 45(b)(1). Of course, none of these requirements apply to a court's own order compelling a witness to appear. Neither do the geographic limitations in Rule 45(c)(1), contrary to Appellants' arguments. Rule 45 governs party- and attorney-initiated subpoenas only.

The absence of an express limit on *sua sponte* court orders in Rule 45 alone is dispositive. *See Dietz*, 579 U.S. at 45–46. While not necessary to affirm the District Court, it is worth noting that the distinction between party-initiated subpoenas and *sua sponte* court orders is also consistent with the historical context of Rule 45. Since its inception, Rule 45—with similar geographic limits—expressly applied to subpoenas that parties requested and served without initial court oversight. *See* Rule of Civil Procedure for the District Courts of the United States 45(a), 1934 Edition U.S.C. Supplement 5 874 (1939) ("The clerk shall issue a subpoena . . . signed and sealed but otherwise in blank, to a party requesting it, who shall fill it in before service."), 45(e)(1) ("A subpoena requiring the attendance of a witness . . . may be served at any place within the district, or at any place without the district that

is within 100 miles . . . .").  In 1991, Rule 45 was amended to allow attorneys themselves to issue a subpoena, again without initial court oversight.  *See* Notes of Advisory Comm. On Rules—1991 Amendment.  Without upfront court supervision, and given the high volume of subpoena practice in federal courts, it makes sense that the Rules would impose bright-line rules on the scope of party- and attorney-initiated subpoenas—as well as specific mechanisms to hold parties and attorneys accountable.  *See id.* ("[A]ccompanying the evolution of this power of the lawyer as officer of the court is the development of increased responsibility and liability for the misuse of this power."); *see also* Fed. R. Civ. P. 45(d)(1) (party or attorney must "take reasonable steps to avoid imposing undue burden or expense" on subpoena recipients and face sanctions if they fail to do so).  These guardrails protect non-parties before they have to incur the time and expense of appearing to challenge a party- or attorney-initiated subpoena in court.

A court's *sua sponte* order to appear does not raise the same concerns.  Such orders necessarily involve court oversight at the outset.  In other words, the court itself will know who is receiving the subpoena and will have weighed the need for the testimony against the potential burden on that person.  It therefore makes sense that Rule 45 only expressly addresses attorney- and party-initiated subpoenas, leaving district courts' own orders to appear to their sound discretion.

33

2.     <u>The requirements for party-driven subpoenas in Rule 45 do not apply to the District Court's order merely because it also compels appearance.</u>

Appellants argue that Rule 45 should apply because a Rule 45 subpoena is no different from the District Court's order to appear; both are court orders requiring a witness to testify.  *See* Appellant Br. p. 17.  True, there is overlap between Rule 45 subpoenas and *sua sponte* orders to appear.  But that is not the test set forth by the Supreme Court.  The test is whether Rule 45 expressly limits a court's ability to order a witness to testify on its own.  *See, e.g.*, *Dietz*, 579 U.S. at 45–46.  As discussed, Rule 45 makes no mention of *sua sponte* court orders.  Moreover, the Supreme Court has recognized that overlap alone is not enough.  Courts may still invoke their inherent power "even if procedural rules exist which sanctions the same conduct" at issue.  *Chambers*, 501 U.S. at 49.[13]

---

[13] Appellants' cited authority on this point does not counsel otherwise.  *See* Appellants Br. p. 17.  In *U.S. v. Grooms*, the court observed that "[a] subpoena is a court order—not merely a demand of a party to litigation—and may not be circumvented by a local law enforcement agency."  6 F. App'x. 377, 381 (7th Cir. 2001).  This statement stands only for the uncontroversial notion that once a party does execute a subpoena pursuant to Rule 45, it is then enforced by the court.  *See* Fed. R. Civ. P. 45(g).  *Palmer v. Ellsworth*, another unpublished opinion, then elaborates on this point, further underscoring that Rule 45 explicitly contemplates party involvement: "Although a subpoena is a court order, once a person objects to the subpoena, *the party seeking to enforce the subpoena must seek a court order directing compliance*."  1993 WL 498010, at *5 (9th Cir. 1993) (emphasis added).

The Court considered a similar argument in *Link v. Wabash R. Co.*, 370 U.S. 626 (1962).  There, the district court dismissed a case *sua sponte* for failure to prosecute, relying on its inherent powers to sanction.  *Id.* at 629.  On appeal, the petitioner argued that because Rule 41(b) allowed a defendant to move to dismiss an action for failure to prosecute, providing notice to the plaintiff, by "negative implication," the court could not do so *sua sponte* absent a motion from defendant and notice to the plaintiff.  *Id.* at 630–32.  The Court "[did] not read Rule 41(b) as implying any such restriction."  *Id.*  Instead, "[n]either the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative."  *Id.* at 630–31; *see also Chambers*, 501 U.S. at 49 (describing *Link*'s holding that "a federal district court has the inherent power to dismiss a case *sua sponte* . . . even though the language of [Rule] 41(b) appeared to require a motion from a party").  The same analysis applies here.  While Rule 45 permits party- or attorney-initiated subpoenas, there is no indication that the purpose of Rule 45 was to abrogate the courts' inherent power to order witnesses to appear, acting on their own initiative, or to require courts to follow the requirements of Rule 45 before doing so.

Courts have found that the exercise of inherent power did not contradict overlapping Rules in other analogous circumstances.  In *Chambers*, the Supreme

Court upheld a district court's reliance on its inherent powers to impose sanctions even though the sanctions imposed overlapped with, and went beyond, those contemplated in Rule 11 and in a statutory sanctioning scheme. 501 U.S. at 50. It reasoned that the statutory scheme "allowing an assessment of fees against an attorney says nothing about a court's power to assess fees against a party" and that Rule 11 did "not repeal or modify existing authority of federal courts to deal with abuses . . . under the court's inherent power." *Id.* at 48–49 (citations and quotation marks omitted). The Supreme Court emphasized that federal courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id.* at 50. Similarly, in *G. Heileman Brewing Co. v. Joseph Oat Corp.*, the Seventh Circuit sitting *en banc* held that though Rule 16(a) states only that a court may direct a party's *attorneys* to attend a pre-trial settlement conference, a court still possesses the inherent power to order party representatives to appear. 871 F.2d 648, 650–63 (7th Cir. 1989). Rule 16(a) does not "proscribe[] or specifically address[]" the court's inherent authority to order litigants to appear. *Id.* at 653.

Likewise, here, Rule 45 states only that party- and attorney-driven subpoenas must meet certain criteria; it says nothing about a court's power to compel witnesses *sua sponte*. And the fact that Rule 45 subpoenas may also be sued to compel a

witness to appear does not mean courts lose their inherent powers to order appearance on their own. *See Chambers*, 510 U.S. at 50.

The cases Appellants cite support, rather than refute, the notion that Rule 45's restrictions apply only to subpoenas initiated by a party. *See* Appellant Br. p. 19. Appellants' cases each concern a party's desire to compel a witness's attendance, and a party's attempt to enlist the court to do so—instead of doing so itself. To rely on inherent powers in these circumstances would directly contradict the procedures set forth in Rule 45. By contrast, the district court's order to compel Ms. LaPray's appearance was not issued in furtherance of a party's suit nor in response to a party or attorney's request. Instead, it was issued *sua sponte* by the court, and for a purpose not encompassed by Rule 45: to investigate fraud on the court and ethics violations.

Appellants cite *Racher v. Lusk*, where plaintiffs sought to compel Lusk, the sole witness to the allegedly fraudulent transfers at issue, to attend trial. 2016 WL 67799, at *1 (W.D. Okla. Jan. 5, 2016). Because plaintiffs could not subpoena Lusk, who lived more than 100 miles away, they moved the court to enter an order compelling his attendance pursuant to its inherent powers. *Id.* The court refused to grant the party's requested order, reasoning that "doing so would directly contravene the plain language of" Rule 45(c). *Id.* at *2. Similarly, in *McGill v. Duckworth*, the plaintiff learned that three defendants were not planning to attend trial. 944 F.2d

344, 353 (7th Cir. 1991). Though the court invited plaintiff (who was represented by counsel) to issue subpoenas, he declined, preferring to ask the court to compel attendance instead. *Id.* The Seventh Circuit affirmed the district judge's refusal to do so. *Id.* at 353–54. It noted that "Fed. R. Civ. P. 45(a) provides a simple procedure: a litigant asks the clerk of the district court (*not* the district judge) to command someone to attend trial and give testimony." *Id.* at 353. For a party to circumvent this procedure and instead appeal to a court's "inherent powers" to compel attendance "would make the restrictions in Rule 45(c) meaningless." *Id.* at 354. And in *Riff v. Police Chief Elmer Clawges*, defendants refused to issue a subpoena under Rule 45 and instead moved the court to compel plaintiff to produce a non-party for a deposition. 158 F.R.D. 357, 358 (E.D. Pa. 1994). The court declined to do so, reasoning that it would "render Rule 45 meaningless" and was "no abuse of discretion to refuse to compel attendance of a witness when the party refuses to follow proper procedures." *Id.*

### C. The District Court's Order Was a Reasonable Exercise of Its Inherent Powers to Investigate Potential Attorney and Party Misconduct.

Appellants focus on the alleged conflict between the District Court's order to appear and Rule 45. They do not argue that the District Court's order to appear was otherwise unreasonable or an abuse of discretion. Nor could they. The District Court's order was a "'reasonable response to the problems and needs' confronting

the court's fair administration of justice." *Dietz*, 579 U.S. at 45 (quoting *Degen v. U.S.*, 517 U.S. 820, 823–24 (1996)).

The District Court's order to compel Ms. LaPray's attendance was an appropriate means to investigate potential misconduct involving a corporate party of which she is the sole representative. More specifically, the District Court's stated concerns include that Backertop may have hidden from the Court certain non-recourse third-party funding and the real parties in interest, that those real parties in interest may have perpetrated a fraud on the court, and that Backertop's counsel may have failed to comply with the Rules of Professional Conduct. *See* Appx16. Further, Backertop's counsel's motions to withdraw and Backertop's document production compounded the District Court's concerns. *See* Appx10.

In light of this purpose, compelling Ms. LaPray's attendance was not an abuse of discretion. The District Court stated that Ms. LaPray's attendance in person was required to assess her credibility given (1) "the representations and positions of counsel and Ms. LaPray" and their apparent lack of communication, especially in light of counsel's motion to withdraw; and (2) "questions for LaPray regarding document production." *Id.* at *4. As the Third Circuit recognizes, it is particularly important to observe witnesses in person when making credibility determinations. *See Chen v. Aschcroft*, 112 F. App'x 201, 205 (3rd Cir. 2004). While another district court may have found that a telephonic or videoconference hearing was sufficient, it

was reasonable for the District Court here to require in-person testimony, in furtherance of its ability to investigate attorney and party misconduct. Moreover, the District Court had already rescheduled the hearing once to accommodate Ms. LaPray's preexisting travel and expressed willingness to accommodate similar specific conflicts, with proposed alternative dates. Appx10. Ms. LaPray never identified other specific conflicts, other than ongoing childcare obligations making travel at any time difficult, or proposed alternative dates, instead choosing to move for reconsideration. *See* Appx140–72. Under these circumstances, it was not an abuse of discretion to compel Ms. LaPray's attendance at the July 20 hearing.

## CONCLUSION

Because the District Court's order requiring Ms. LaPray to appear was not an abuse of discretion, this Court should affirm that order and the District Court's order holding Ms. LaPray in contempt based on her refusal to appear.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ W. David Maxwell
W. David Maxwell
Abby Walter Gray
Paget C. Barranco
555 Thirteenth Street, N.W.
Washington, D.C. 20001
(202) 637-3218
david.maxwell@hoganlovells.com

</div>

January 16, 2024

<div style="margin-left: 50%;">

*Court-Appointed Amicus Curiae Counsel*

</div>

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing with the United States Court of Appeals for the Federal Circuit through the CM/ECF system on January 16, 2024. All case participants are registered CM/ECF users, and the Notice of Docketing Activity generated by this filing constitutes service under Fed. Cir. R. 25(e)(1).

/s/ W. David Maxwell

W. David Maxwell
HOGAN LOVELLS U.S. LLP
555 Thirteenth Street NW
Washington, D.C. 20004
202-637-3218
david.maxwell@hoganlovells.com

*Court-Appointed Amicus Curiae Counsel*

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and the Federal Circuit Rules because it meets the following:

1. The filing has been prepared using a proportionally-spaced typeface and includes 10,088 words.

2. This brief has been prepared in 14-point Times New Roman font per Fed. R. App. P. 27(d)(E), 32(a)(5), and 32(a)(6). As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ W. David Maxwell

W. David Maxwell
HOGAN LOVELLS U.S. LLP
555 Thirteenth Street NW
Washington, D.C. 20004
202-637-3218
david.maxwell@hoganlovells.com

*Court-Appointed Amicus Curiae Counsel*